**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

AMANDA SINFUEGO,

        Plaintiff,

v.                                         CV No. 15-563 CG/LAM

CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS, et al.,

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court upon *Defendant Lance Pyle's Motion for Summary Judgment and Qualified Immunity* (the "Motion for SJ"), (Doc. 69), filed November 28, 2016; *Plaintiff Amanda Sinfuego's Response to "Defendant Lance Pyle's Motion for Summary Judgment and Qualified Immunity" [Doc. 69]* (the "Response to the Motion for SJ"), (Doc. 77), filed December 18, 2016; and *Defendant Lance Pyle's Reply in Support of his Motion for Summary Judgment and Qualified Immunity* (the "Reply to the Motion for SJ"), (Doc. 82), filed January 5, 2017. Additionally before the Court is *Plaintiff's Motion to Strike Summary Judgment Affidavit of Lance Pyle in part [Doc. 69]* (the "Motion to Strike"), (Doc. 78), filed December 19, 2016; *Defendant Lance Pyle's Response to Plaintiff's Motion to Strike* (the "Response to the Motion to Strike"), (Doc. 81), filed January 5, 2017; and *Plaintiff Amanda Sinfuego's Reply to "Defendant Lance Pyle's Response to Plaintiff's Motion to Strike"* (the "Reply to the Motion to Strike"), (Doc. 84), filed January 10, 2017. The Court has considered the Motions, the Responses, the Replies, and relevant law. The Court will **GRANT IN PART AND DENY IN PART** Plaintiff's Motion to Strike and **GRANT** Defendant's Motion for SJ.

I.      **Factual and Procedural History**

This case arises from the firing of Plaintiff by Defendant Curry County Board of County Commissioners ("Defendant Curry County Commissioners"). Plaintiff was hired to work at the Curry County Detention Center ("Detention Center") in 2010. (Doc. 1 ¶ 11). In 2012, officers and employees at the Detention Center discussed forming a union. (Doc. 69 at 3, ¶ 1). On November 16, 2012, Plaintiff and other employees at the Detention Center prepared a letter "regarding the abhorrent and dangerous conditions for inmates[ ] and employees[ ] and the misuse of public funds." (Doc. 77 at 9 ¶ C). At the time, Plaintiff held a temporary position as the executive secretary to the Detention Center Administrator.[1] (Docs. 69 at 3 ¶ 2, 77 at 3 ¶ 2(i)). Plaintiff and another staff member, Officer Rene Garcia, spoke to Defendant Lance Pyle ("Defendant Pyle") on December 3, 2012 about issues with the Detention Center and the staff's discussions regarding forming a union and presented him with the letter that was composed on November 16, 2012. (Docs. 69 at 3 ¶ 3; 77 at 9 ¶ D). Defendant Pyle is and was at the time the Curry County Manager. (Doc. 1 ¶ 8). During the meeting, Defendant Pyle told Plaintiff that she was part of the managerial staff and could not be involved in union organization. (Doc. 69 at 3 ¶ 4). Defendant Pyle states that he never raised the issue of a union to Plaintiff again after this meeting. (Doc. 69 at 3 ¶ 5).[2]

In emails exchanged between Defendant Pyle and several Detention Center employees on December 6, 2012, Defendant Pyle reiterated that Plaintiff could not be a

---

[1] The parties dispute whether Plaintiff was an "interim" executive secretary or a "temporary" executive secretary. The Court does not find this dispute to be material to the case, but adopts Plaintiff's terminology as Plaintiff is the non-moving party. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[A] District Court must resolve any factual issues of controversy in favor of the non-moving party.").
[2] Plaintiff disputes this claim; however, none of Plaintiff's cited exhibits contradict this assertion by Defendant Pyle; therefore, the Court will deem it undisputed.

part of collective bargaining based on her position as the executive secretary. (Doc. 77 at 10 ¶ F). That same day, Plaintiff sent a text message to Detention Center employees about forming a union. (Doc. 77 at 10 ¶ G). In the text message, Plaintiff stated that Defendant was trying to "scare everyone" and "separate us and keep us from forming a union." (Doc. 77-5 at 7). Plaintiff was not disciplined by her supervisor, Detention Center Administrator Gerry Billy, for sending the text message. (Doc. 77 at 10 ¶ I). On December 10, 2012, Defendant Pyle accused Plaintiff of distributing "misleading and slanderous" material during work hours. (Docs. 77 at 10 ¶ H, 77-5 at 8).[3] Defendant Pyle was dissatisfied with Mr. Billy's handling of the text message situation. (Doc. 77 at 11 ¶ M).  After these events, Mr. Billy was fired. Plaintiff claims that Mr. Billy was fired in retaliation for not disciplining Plaintiff, while Defendant maintains that Mr. Billy's contract was not renewed. (Docs. 77 at 10 ¶ J, 78 at 5 ¶ J).

Following the text message and union organization efforts, Plaintiff claims that Defendant Pyle retaliated against her for her union activities by stripping her of her seniority, moving her to the night shift, taking her off the inmate extraction unit, taking away her job as property manager, removing her training officer status, and ostracizing her. (Doc. 77 at 11 ¶ O). Despite his alleged actions, Plaintiff continued to work to unionize the Detention Center employees through 2013. (Doc. 77 at 13 ¶ U).[4]

Defendant Pyle disputes that he retaliated against Plaintiff. (Doc. 78 at 6 ¶ O). According to Defendant Pyle, two events led to Plaintiff's termination. First, on November 12, 2013 Plaintiff participated in a conversation that Defendant Pyle

---

[3] Defendant Pyle disputes this fact as not properly supported, (Doc. 78 at 5 ¶H), but Plaintiff submitted Defendant Pyle's email regarding this allegation with her Response.
[4] Defendant Pyle disputes this fact as not properly supported. (Doc. 78 at 7 ¶ U). However, Plaintiff made these statements at her second post termination hearing; therefore, considering the events in the light most favorable to Plaintiff, the Court will consider this fact.

describes as "sexual in nature." (Docs. 69 at 3 ¶ 6). From the exhibits, it appears that Plaintiff used an administrative restroom during her shift and when she left the restroom, she commented to several colleagues about how dirty it was and stated that there was a "pubic hair on the toilet." (Doc. 77-18 at 88). This led one of the other officers to start an hour long conversation about his personal grooming habits and sex life. (Docs. 69-2 at 1-2, 69-3 at 1, 77-18 at 92). Plaintiff disputes that this conversation was "sexual in nature." (77 at 5 ¶ 6(i)-(v)).  On November 15, 2013, Plaintiff submitted a written statement detailing her concerns about the nature of the conversation. (Docs. 77 at 5 ¶ 6(iv), 77-19).

Second, Plaintiff attended a sexual harassment seminar with her colleagues on November 13, 2013. (Doc. 69 at 4 ¶ 7). During the seminar, Plaintiff drew male genitalia on a picture of one of her colleagues at the seminar and sent the picture to several colleagues.[5]  On December 3, 2013, Ms. Tori Sandoval, Curry County Detention Center Administrator, informed Plaintiff of her recommendation to terminate Plaintiff for violating Curry County's sexual harassment policy and notified Plaintiff of a pre-termination hearing that would be conducted by Defendant Pyle. (Doc. 69 at 4 ¶ 8).

Defendant Pyle states that he did not know anything about the underlying investigation into the incident or Ms. Sandoval's decision until Ms. Sandoval copied Defendant Pyle on her December 3, 2013 letter to Plaintiff.[6] (Doc. 69 at 4 ¶ 12). Defendant Pyle conducted the pre-termination hearing on December 30, 2013 and

---

[5] Plaintiff disputes this information, stating that she drew a "phallic symbol" on the picture of "a good friend and co-worker" and that it was an isolated incident that did not interfere with anyone's job performance and no one was offended. (Doc. 77 at 5 ¶ 7). However, in the materials Plaintiff cites to, she admitted that she drew male genitalia on a picture of a friend; therefore, the Court considers these facts to be undisputed.

[6] Plaintiff argues that this information is disputed; however none of her assertions or the exhibits she references contradicts the statement. Therefore, the Court considers this fact undisputed.

upheld the termination recommendation on January 7, 2014. (Docs. 1 ¶ 28, 69 at 4 ¶ 9). Defendant Pyle argues that his only involvement in this matter was to conduct the pre-determination hearing and accept Ms. Sandoval's recommendation to terminate Plaintiff. (Doc. 69 at 4 ¶ 15). Plaintiff argues that Defendant Pyle fired her for her union activities and the sexual harassment claim was simply pretext. (Doc. 77 at 7 ¶ 13(i)-(vi). After the pre-determination hearing, Plaintiff appealed the decision through a post-termination hearing. (Doc. 69 at 8 ¶ 18). The decision to terminate Plaintiff was upheld at two post-termination hearings.[7] (Docs. 69 at 8 ¶ 19, 69-2, 69-4).

Thereafter, on July 1, 2015, Plaintiff filed her *Civil Complaint for Violation of Civil Rights and the Whistleblower Protection Act* (the "Complaint"), alleging claims against several defendants. (Doc. 1). As relevant here, Plaintiff claims that Defendant Pyle violated her First Amendment right of free speech, right to associate, and right to petition for redress of grievances. (Doc. 1 at 10-13). Specifically, Plaintiff contends that she spoke publicly about forming a union, associated with the union, and complained about the detention center facilities. She further states that Defendant Pyle tried to intimidate and prevent the Detention Center employees from forming a union and terminated Plaintiff's employment based on her union activities. (Doc. 1 ¶¶ 32-33, 39-40, 46-50). Plaintiff also alleged that Defendant Pyle violated her rights under the Whistleblower Protection Act ("WPA"). (Doc. 1 at 13-15). As to the WPA claim, after a recent change in New Mexico law, Plaintiff admits that she cannot sue Defendant Pyle in an individual capacity under the WPA. (Doc. 77 at 23) (citing *Flores v. Herrera*, 2016-

---

[7] Plaintiff disputes these facts; however her reasoning is unclear as to why she disputes them and the exhibits clearly show that the termination was upheld at two post-termination hearings, so the Court deems these facts to be undisputed.

NMSC-033, 384 P.3d 1070 (N.M. 2016)). Therefore, Plaintiff agrees to dismiss her WPA claims against Defendant Pyle. (Doc. 77 at 23).

Currently before the Court is Defendant Pyle's Motion for SJ, which asks the Court to grant summary judgment on Plaintiff's claims against Defendant Pyle, or in the alternative, find that Defendant Pyle is eligible for qualified immunity. Additionally, Plaintiff asks the Court to strike certain paragraphs in Defendant Pyle's affidavit associated with the Motion for SJ.

## II.    Standard of Review

### A.  *Summary Judgment*

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant bears the burden of making a *prima facie* demonstration that there is no genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670-71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* If the moving party has demonstrated an absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotations omitted).

"[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts

so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (internal citations and quotation marks omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249.  The nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence, which the Court views in the light most favorable to her. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).  The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 671.

B.  *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is an entitlement not to stand trial or face the other burdens of litigation, and acts as immunity from suit rather than a mere defense to liability. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (internal citations omitted).

Where a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must meet a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). First, a plaintiff must establish that the defendant's actions violated a constitutional or statutory right. *Id.* (internal citations and

quotations omitted). A plaintiff must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* (internal citations and quotations omitted).

"If a plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Id.* (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). Thus, a court may consider either prong of the qualified immunity analysis.  *See Pearson*, 555 U.S. at 236. In other words, at the summary judgment stage, although a court "will review the evidence in the light most favorable to the nonmoving party, . . . the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise the defendants are entitled to qualified immunity." *Medina*, 252 F.3d at 1128 (citing *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)).

### C. Excluding Affidavit Testimony

At the summary judgment stage, evidence does not need to be submitted "in a form that would be admissible at trial." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 324) (internal quotation marks omitted). Parties may submit affidavits "despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form." *Id.* (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005)). However, "the content and substance of the evidence must be admissible." *Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)) (internal quotation marks omitted). Federal Rule of Civil Procedure 56 states that affidavits "must . . . set out facts that would be admissible in

evidence." FED. R. CIV. P. 56(c)(4). Therefore, hearsay statements in affidavits that would not be admissible at trial must be disregarded by the Court. *Id.*

### III.    Analysis

Defendant Pyle argues that he is entitled to summary judgment, or in the alternative, qualified immunity. (*See* Doc. 69). Specifically, Defendant Pyle argues that he is entitled to summary judgment because he had no personal participation in Plaintiff's termination. (Doc. 69 at 3). Defendant Pyle further argues that he is entitled to qualified immunity based on a lack of clearly established law that would have put him on notice that he was violating Plaintiff's rights. (Doc. 69 at 3).

Plaintiff responds that Defendant Pyle retaliated against her by terminating her employment on the basis of her union activities. (Doc. 77 at 2). Plaintiff contends that the termination proceedings were pre-textual. (Doc. 77 at 3). Finally, Plaintiff states that Defendant Pyle is not entitled to qualified immunity because there is a factual dispute as to the reason that Plaintiff was terminated. (Doc. 77 at 14-15).

Plaintiff also filed a Motion to Strike, arguing that portions of Defendant Pyle's affidavit are inadmissible. (*See* Doc. 78). The Court will address the Motion to Strike first and then turn to the Motion for SJ.

### A.  *Plaintiff's Motion to Strike*

Plaintiff asks the Court to strike ten paragraphs from Defendant Pyle's Affidavit to his Motion for SJ, arguing that they are inadmissible for various reasons. (Doc. 78 at 1-2). The Court will address each of Plaintiff's Objections.

> i.    *Inadmissible Hearsay*

Plaintiff argues that four paragraphs from Defendant Pyle's Affidavit contain

inadmissible hearsay. The paragraphs state:

> Paragraph 11: I was informed that Lindsey Schwebke, who was Personnel
> Coordinator at that time, had learned that Ms. Sinfuego had taken pictures of
> instructors who were giving a "Toxic Talk" seminar on November 13, 2013; the
> subject of the class included sexual harassment.

> Paragraph 12: Ms. Sinfuego had drawn pictures of penises on the faces of the
> instructor and/or her coworkers in a sexually suggestive way.

> Paragraph 13: Ms. Sinfuego had sent those pictures to three other employees
> who were attendees in the class.

> Paragraph 14: Based on the investigation, and Ms. Sinfuego's admissions, Ms.
> Schwebke and Ms. Sandoval proposed to terminate Ms. Sinfuego, after
> consulting with the County Attorney.

(Doc. 69-1, Ex. A ¶¶ 11-14).

Plaintiff also argues that there is no foundation for this information and Defendant

Pyle does not have personal knowledge of the events in paragraphs 11 to 13. (Doc. 83

at 2-3).

Defendant Pyle maintains that paragraph 11 is offered for its effect on him and to

explain his rationale in terminating Plaintiff. (Doc. 81 ¶ 11). "Statements offered not to

prove the truth of the statements, but rather 'offered for the effect on the listener . . . are

generally not hearsay.'" *United States v. Ballou*, 59 F. Supp. 3d 1038, 1058 (D.N.M.

2014) (quoting *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993)).

Defendant Pyle also argues that Plaintiff admitted the information in Paragraph 11.

(Doc. 81 ¶ 11). Defendant Pyle further argues that the information in paragraphs 12 and

13 is admissible at trial through documents. (Doc. 81 ¶¶ 12-13).

Ms. Sandoval copied Defendant Pyle on the letter sent to Plaintiff notifying Plaintiff of the County's intent to terminate her and describing the incident referenced in paragraphs 11 to 13. (Doc. 69-1, Ex. A ¶¶ 8, 9). Additionally, Defendant Pyle conducted the pre-determination hearing that affirmed Plaintiff's termination. (Doc. 69-1, Ex. A ¶ 10). As such, given that Defendant Pyle reviewed all of these documents, the Court disagrees with Plaintiff that Defendant Pyle would not have personal knowledge of this information. (*See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) (holding that after looking at documents, the Plaintiff's recitation of the information in the documents in her declaration was "based on . . . personal knowledge")).

As to the hearsay issue, although these paragraphs contain hearsay statements, Plaintiff admitted the information in paragraphs 11 to 13 in an interview with Lindsey Schwebke, the Personnel Coordinator, and it therefore falls into the hearsay exception of admission by a party opponent. FED. R. EVID. 801(d)(2)(A). Additionally, the information in the paragraphs is admissible at trial through documents, such as the post-termination hearing documents. (*See* Doc. 81-1, Ex. A at 1-2; Docs. 81-2, 3, & 4). Therefore, the Court will not strike these paragraphs and will consider them in its analysis. However, the Court will strike the clause in paragraph 12 that the male genitalia was drawn "in a sexually suggestive way" as this is a conclusion and not supported by the information in the record.

Plaintiff next argues that Defendant Pyle is speculating in paragraph 14 as to why Ms. Sandoval proposed to terminate Plaintiff. Because this information is available in other documents that are admissible at trial, including the post-termination hearing testimony, the Court will not strike this paragraph. (*See* Doc. 81-5, Ex. D at 22-23).

### ii.      Inconsistent with the Record

Plaintiff maintains that Paragraph 15 should be struck because it is inconsistent

with the record. (Doc. 78 at 2) (citing *Tellez v. City of Belen*, No. 13-2123, 560 Fed.

Appx. 812 (10th Cir. May 20, 2014) (unpublished)). The paragraph states:

> Paragraph 15: My involvement was solely to conduct the pre-determination
> hearing called for by the County Personnel Policy. During that hearing, Ms.
> Sinfuego admitted that her behavior was inappropriate.

(Doc. 69-1, Ex. A ¶ 15).

Defendant Pyle argues that paragraph 15 "accurately reflects the record." (Doc.

81 ¶ 15).

Plaintiff cites to *Tellez* for her argument. In *Tellez*, the Tenth Circuit stated that on

a motion for summary judgment, "[w]hen opposing parties tell different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it,

the court should not adopt that version of facts." *Tellez*, No. 13-2123, 560 Fed. Appx. at

814 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks

omitted). Defendant Pyle's statement is not "blatantly contradicted by the record," and

goes to Defendant Pyle's state of mind. FED. R. EVID. 803(3). Therefore, the Court will

consider paragraph 15.

### iii.      Self-Serving Argument

Plaintiff argues that four paragraphs from Defendant Pyle's affidavit are

conclusory and self-serving statements:

> Paragraph 18: None of my conduct or decisions were based on any union activity
> or union involvement by Ms. Sinfuego.
>
> Paragraph 19: None of my conduct or decisions were based on retaliation for
> complaints Ms. Sinfuego allegedly made about the condition of the detention
> center.

Paragraph 20: None of my conduct or decisions were based on anything other than the County's policy with respect to workplace harassment and sexual harassment and the conduct of Ms. Sinfuego in having sexually explicit conversations at work and drawing penises on pictures of her coworkers or instructor and sending them to County employees.

Paragraph 21: Ms. Sinfuego appealed my determination and was afforded two separate post dis[c]iplinary hearings. The first conducted by Anne Behl, a Human Resources Consultant with 26 years combined experience as a personnel hearing officer and human resources professional, and a subsequent hearing by Bruce Swingle, the Sierra County manager, with many years['] experience in the human resources profession, including county management. In both cases, my determination was upheld.

(Doc. 69-1, Ex. A ¶¶ 18-22).

Defendant Pyle does not respond to Plaintiff's argument that the paragraphs are conclusory or self-serving, but contends that paragraphs 18 and 19 express his state of mind during the pre-determination hearing and there is no basis to exclude the statements. (Doc. 81 at 3). Defendant Pyle states that paragraph 20 explains his rationale at the pre-determination hearing and is admissible at trial. (Doc. 81at 3).

However, "[c]onclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact." *Hook v. Regents of Univ. of Cal.*, 394 Fed. Appx. 522, 533 (10th Cir. Sept. 13, 2010) (unpublished) (quoting *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.3d 1007, 1011 (7th Cir. 1985)). Because the statements in paragraphs 18 through 20 are conclusory statements regarding Defendant Pyle's reasons for firing Plaintiff, the Court will strike these paragraphs.

In regard to paragraph 21, Plaintiff claims that Defendant Pyle does not state in the affidavit that the information is based on personal knowledge, and there is no foundation for the information. (Doc. 83 at 4). Defendant Pyle responds that he had

13

personal knowledge of this information from his participation in the post-termination administrative appeals. The Court agrees that as the Curry County Manager, Defendant Pyle would have access to the information in paragraph 21. In addition, this information is available in documents that would be admissible at trial, including the records of the post-termination hearings. (*See* Docs. 81-3; 81-6). Thus, the Court will consider paragraph 21.

      *iv.*    *Lack of Foundation*

Finally, Plaintiff requests that the Court strike paragraph 22 of Defendant Pyle's affidavit because it is conclusory and requires the opinion of an expert witness. The paragraph states:

> Paragraph 22: Ms. Sinfuego was provided all the process called for by the County Policy and has appealed her termination to the state court under the Rules governing administrative appeal.

(Doc. 69-1, Ex. A ¶ 22).

Defendant Pyle argues that this information is within his personal knowledge. (Doc. 81 at 3-4). Non-expert testimony in the form of "opinions or inferences must be '(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of the fact in issue, and (c) not based on scientific, technical, or other specialized knowledge.'" *Bryant*, 432 F.3d at 1123 (quoting FED. R. EVID. 701). Based on Defendant Pyle's job, this information would be available to him, the information is helpful to the Court to understand the factual issues in the case, and knowledge of Curry County Policy is not "scientific, technical, or other specialized knowledge." Although the bulk of the paragraph is factual

and not conclusory, the Court will strike the work "all" as conclusory. However, the Court will not strike the rest of the paragraph.

B. *Defendant's Motion for SJ*

A civil rights action under § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under § 1983, an injured person must allege a violation of a federally protected right and must show that the alleged deprivation was committed by an individual acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Plaintiff claims Defendant Pyle violated her First Amendment rights of speech, association, and right to petition for redress of grievances. As to her free speech rights, Plaintiff alleges that she spoke publicly about forming a union and this speech was a substantial, motivating factor in Defendant Pyle terminating her employment. (Doc 1 ¶¶ 31, 33). Plaintiff additionally claims that Defendant Pyle terminated her employment for Plaintiff's association with the union. (Doc. 1 ¶ 39). Finally, Plaintiff maintains that her right to petition redress of grievances was violated because her employment was terminated after she sent emails regarding the union and the conditions at the Detention Center. (Doc. 1 ¶¶ 46, 48-50).

Defendant Pyle contends that he is entitled to summary judgment because Plaintiff failed to demonstrate that he violated her First Amendment rights. (Doc. 69 at 7). Specifically, Defendant Pyle argues that his only involvement in Plaintiff's termination was to confirm the recommendation of Ms. Sandoval to terminate Plaintiff. (Doc. 69 at

8). Defendant Pyle further states that he is entitled to qualified immunity on all of Plaintiff's claims. The Court will consider each of Plaintiff's arguments separately.

> *i.*     *Free Speech Rights*

Plaintiff argues that Defendant Pyle violated her right to free speech by firing her for speaking out about the union. Defendant Pyle contends that he did not fire Plaintiff based on her speech about the union, but for violating the sexual harassment policy.

The State has significantly different interests in regulating the speech of its employees than in regulating the speech of the citizenry generally. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). As a government employee, a "citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). However, the First Amendment limits a public employer's ability "to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (internal quotation marks omitted). When a government employee speaks on a matter of public concern, her employer may only restrict her speech because it is necessary for the efficient and effective delivery of services. *Id.*

The Court must conduct a five-step inquiry in considering a plaintiff's freedom-of-speech retaliation claim, known as the "*Garcetti/Pickering*" analysis. *Id.* First, the Court asks whether the speech was made "pursuant to [the employee's] official duties." *Id.* (quoting *Garcetti*, 547 U.S. at 421 (internal quotation marks omitted)). If so, then the speech is not protected by the First Amendment because the restriction properly "reflects the exercise of employer control over what the employer itself has

commissioned or created." *Id.* (quoting *Garcetti*, 547 U.S. at 422) (internal quotation marks omitted).

If the employee's speech is outside of her official duties, then the Court should next determine whether the subject of the speech is a matter of public concern. *Id.* at 1202-03 (citing *Green v. Bd. Of Cnty. Commr's*, 472 F.3d 794, 798 (10th Cir. 2007). If it is not a matter of public concern then it is not constitutionally-protected speech. *Id.* at 1203. When an employee speaks upon matters of personal interest, that speech is unprotected. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1263 (10th Cir. 2005). However, if the speech is a matter of public concern, the Court should proceed to step three and decide "whether the employee's interest in commenting on the issue outweighs those of the state as the employer." *Brammer-Hoelter*, 492 F.3d at 1203 (quoting *Casey v. W. Las Vegas Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotation marks omitted)). While the first three steps in the *Garcetti/Pickering* analysis are questions of law for the Court to decide, *id.*, they may turn on resolution of a factual dispute by the jury. *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010).

If the employee's interest outweighs the employer's, then the Court proceeds to step four. At step four, "the employee must establish that [her] speech was a 'substantial factor or motivating factor in a detrimental employment decision.'" *Brammer-Hoelter*, 492 F.3d at 1203 (quoting *Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1338 (10th Cir. 2000)). If the employee establishes the speech was a substantial or motivating factor, at step five "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id.* (internal quotation marks omitted). The final two steps of the

inquiry should ordinarily be decided by a trier of fact. *Id.* (citing *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998)).

Defendant Pyle argues that the third, fourth, and fifth steps of this analysis are in his favor. (Doc. 69 at 10). In regard to the third step, Defendant Pyle argues that "the employer's interests in preventing sexual harassment and graphic depictions of staff and sexual harassment trainers outweighs any potential infringement on" Plaintiff's free speech rights. (Doc. 69 at 10). Defendant Pyle further maintains that Plaintiff cannot show that her protected speech was a substantial factor in Defendant Pyle accepting Ms. Sandoval's recommendation to terminate her employment, as required by the fourth element of the analysis. (Doc. 69 at 10). Finally, Defendant Pyle concludes that Plaintiff cannot meet the fifth element because she would have been terminated regardless of her union activities because she violated the sexual harassment policy. (Doc. 69 at 10).

Defendant Pyle seems to argue that Plaintiff is claiming her drawings of male genitalia and her union activities are protected speech. (*See* Doc. 69 at 10-11). In her response, Plaintiff does not identify the speech she claims is protected. (*See* Doc. 77 at 15-18). Plaintiff simply states that she was retaliated against for her union activities. (Doc. 77 at 15). The Court cannot, however, determine whether Plaintiff's free speech rights were violated in the abstract, but must "first 'identify the speech which resulted in the alleged retaliation.'" *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1277 (10th Cir. 2007).

Based on the filings and the evidence the parties submitted, the Court has identified two instances of speech: (1) the letter given to Defendant Pyle and statements made at the meeting with Defendant Pyle on December 3, 2012; and (2) the text

message sent by Plaintiff to her fellow Detention Center officers on December 6, 2012.
The Court will address each instance separately.

      a.   <u>December 3, 2012 Meeting</u>

On December 3, 2012, Plaintiff and Officer Garcia met with Defendant Pyle
regarding collective bargaining and the conditions at the Detention Center. (*See* Doc.
77-2). At the meeting Plaintiff presented Defendant Pyle with a letter signed by
Detention Center employees regarding work conditions. (*See* Doc. 77-4). Specifically,
the letter documented "the abhorrent and dangerous conditions for inmates[ ] and
employees[ ] and the misuse of public funds." (Doc. 77 at 9 ¶ C).

To determine if this speech is protected, the Court must first determine whether
Plaintiff spoke pursuant to her official duties. "[S]peech relating to tasks within an
employees's uncontested employment responsibilities is not protected from regulation."
*Brammer-Hoelter,* 492 F.3d at 1203 (citing *Casey*, 473 F.3d at 1329). "The ultimate
question is whether the employee speaks as a citizen or instead as a government
employee – an individual acting 'in his or her professional capacity.'" *Id.* (quoting
*Garcetti*, 547 U.S. at 422). In speaking to Defendant Pyle about forming a union and
conditions at the Detention Center, Plaintiff was not "performing an official duty" and the
speech did not "contribute[ ] to or facilitate[ ] [her] performance of [her] official duty;"
therefore, Plaintiff did not speak pursuant to her official duties and the Court will move to
the second step of the analysis. *Id.* (citing *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d
689, 693 (5th Cir. 2007)).

At the second step, the Court must determine whether the subject matter of the
speech is a matter of public concern. "Matters of public concern are 'those of interest to

the community, whether for social, political, or other reasons.'" *Id.* at 1205 (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000)). The Court "may consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'" *Id.* Speech is not a matter of public concern just because it is union related. *Torres v. Pueblo Bd. of Cty. Comm'rs*, No. 98-1412, 229 F.3d 1165, at *4 (10th Cir. Sept. 19, 2000) (unpublished) (citing *Boals v. Gray*, 775 F.3d 686, 693 (6th Cir. 1985)).

The chief complaints in both the letter presented to Defendant Pyle and at the meeting with Defendant Pyle were that the facility is understaffed and the officers are underpaid. (*See* Docs. 77-2, 77-4). These are not matters of public concern because they are "internal in scope and personal in nature." *Brammer-Hoelter*, 492 F.3d at 1206 (quoting *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996) (internal quotation marks omitted) (finding that staffing levels and salaries are matters of personal concern; and therefore, not protected speech)). Plaintiff's "concerns and union-related speech pertained specifically to the management and working conditions" of the Detention Center and the "union organizing effort was motivated by" the Detention Center officers' desire to change the working conditions. *Torres*, 229 F.3d at *5. Plaintiff did not intend to "bring to light actual or potential wrongdoing or [a] breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a government entity." *Denton v. Yancey*, No. 15-5114, 2016 WL 5720905, at *3 (10th Cir. Oct. 3, 2016) (unpublished) (quoting *Eisenhour v. Weber Cty.*, 744 F.3d 1220,

1228 (10th Cir. 2014)) (internal quotation marks removed).  As such, the speech is not protected.

However, based on the letter and the transcript from the December 3, 2012 meeting, it is clear that Plaintiff was also concerned about the conditions of the facility and the safety of staff and inmates. (*See* Docs. 77-4, 77-7). Unlike Plaintiff's complaints about staffing levels and salary, which were personal, complaints about conditions, safety, and the misuse of public funds are matters of public concern. Examining the evidence in the light most favorable to Plaintiff, this speech could be "calculated to disclose misconduct" or "to bring to light actual or potential wrongdoing." *Denton*, 2016 WL 5720905, at *3. Therefore, the Court will continue through the analysis with regard to Plaintiff's speech about the conditions of the facility and the safety of staff and inmates.

At the third step, the Court must weigh Plaintiff's interest in speaking against her employer's interest in regulating her speech. "The only public employer interest that outweighs the employee's free speech interest is 'avoiding direct disruption, *by the speech itself*, of the public employer's internal operations and employment relationships.'" *Trant v. Okla.*, 754 F.3d 1158, 1166 (10th Cir. 2014) (quoting *Brammer-Hoelter*, 492 F.3d at 1207) (emphasis in original). Important factors for the Court to consider are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)) (internal quotation marks omitted). Defendant

Pyle does not argue, and there is no evidence in the record, that Plaintiff's speech on December 3, 2012 was disruptive, thus the Court finds that Plaintiff's interest in speaking outweighs Defendant Pyle's interest.

Prior to proceeding to step four, the Court will first determine what adverse employment actions Defendant Pyle took against Plaintiff. Plaintiff complains that Defendant Pyle retaliated against her and terminated her employment. Specifically, Plaintiff argues that Defendant Pyle stripped her of her seniority, moved her to the night shift, took her off the inmate extraction unit, took away her job as property manager, removed her training officer status and ostracized her. (Doc. 77 at 11 ¶ O). An adverse action is one that "would be considered by a reasonable employee to be material and adverse, thereby dissuading them from making a complaint." *Somoza v. Univ. of Denver*, 513 F.3d 1206 (10th Cir. 2008). Even after the alleged retaliation by Defendant Pyle, Plaintiff states that she continued her union activities until she was fired. (Doc. 77 at 13 ¶ U).  As such, the Court cannot say that the actions, not including termination, would deter a reasonable employee. *See Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1242 (10th Cir. 2009) (citing *Somoza*, 513 F.3d at 1214) ("[T]he fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable.")). Therefore, the Court will only consider the termination as an adverse employment action.

Plaintiff must show that her speech was a substantial or motivating factor for her termination at step four of the analysis. Plaintiff claims that after speaking about conditions in the jail and forming the union, Defendant Pyle retaliated against her and

22

eventually fired her. Plaintiff claims that Defendant Pyle retaliated against her for her speech by stripping her of her seniority, moving her to the night shift, taking her off the inmate extraction unit, taking away her job as property manager, removing her training officer status and ostracizing her. (Doc. 77 at 11 ¶ O). The evidence shows that Defendant Pyle knew about Plaintiff's speech, as she met with him personally on December 3, 2012, and Defendant Pyle sent emails to different staff regarding Plaintiff's December 6, 2012 text message to other Detention Center employees. (*See* Docs. 77-2, 77-4, 77-5). Evidence submitted by Plaintiff shows that Defendant Pyle did not believe that a union was in the best interest of the Detention Center employees. (Doc. 77-12 at 2). Plaintiff also presented emails sent by Defendant Pyle in which Defendant Pyle appears frustrated that Plaintiff was never disciplined for sending the December 6, 2012 text message. (*See* Doc. 77-5).

By contrast, "[a]n inference of retaliatory motive may be undermined by 'a long delay between the employee's speech and [the] challenged conduct' or 'evidence of intervening events.'" *Deschenie*, 473 F.3d at 1278 (quoting *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)). Here, approximately a year passed between the union associations that Defendant Pyle clearly knew about and Plaintiff's termination. Although Plaintiff claims that she continued to associate with the union, there is no evidence in the record that Defendant Pyle knew about any further association. In addition, Plaintiff was found to have violated the Curry County sexual harassment policy. This is a fact confirmed by several individuals in addition to Defendant Pyle. Because Ms. Sandoval made the recommendation and two different arbitrators confirmed Defendant Pyle's decision, Plaintiff would need to establish that these other

individuals were also retaliating against her, which she has not done. *See Couch*, 587 F.3d at 1241 ("[B]ecause the decision-maker was a committee, [Plaintiff] would need to establish that a majority of the members . . . were biased or that a biased member was a substantial influence over the committee's ultimate action in order to satisfy his burden to establish causation."). The Court finds that Plaintiff cannot show that her union activity was a substantial factor in the termination of her employment; consequently the Court will grant Defendant Pyle summary judgment.

The Court would come to the same conclusion at the fifth step of the analysis. At the fifth step, Defendant Pyle must show that he would have reached the decision to terminate Plaintiff in the absence of her union activity. *Hook*, 394 Fed. Appx. at 534. The fifth step is to control for the fact that

> a 'rule of causation which focuses solely on whether protected conduct played a part' in an adverse employment decision 'could place an employee in a better position as a result of the exercise of constitutionally protected conduct that he would have occupied had he done nothing.'

*Trant*, 754 F.3d at 1167 (quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 285 (1977)) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional move and resulting harm, despite proof of some retaliatory animus in the official's mind.")). Thus, at step five, summary judgment is appropriate when "any reasonable jury would have found that the plaintiff would have been terminated even absent any desire on the Defendants' part to punish [her] in retaliation for [her] allegedly protected speech." *Id.* (quoting *Anemone v. Metro. Transp. Autho.*, 629 F.3d 97, 117 (2d Cir. 2011)).

Plaintiff was told that her employment was terminated based on the two incidences in 2013. In terminating Plaintiff, Curry County followed its disciplinary procedures. Ms. Schwebke investigated the incidences, Ms. Sandoval recommended that Plaintiff's employment be terminated, Defendant Pyle conducted a pre-determination hearing, Plaintiff appealed Defendant Pyle's decision, and Defendant Pyle's decision was upheld at two post-termination hearings.

Plaintiff argues that her actions did not amount to sexual harassment because no one was offended and the conversations did not interfere with anyone's work, and therefore were only pretext. (*See* Doc. 77). However, Plaintiff's argument is not compelling. Plaintiff's contention that her conversations and actions did not amount to sexual harassment does not undermine the decisions of Ms. Sandoval or the adjudicators at the pre-determination and post-termination hearings. According to the Curry County policy, "[i]f the County determines that harassment has occurred . . . it will take appropriate measure to correct the problem," and "[s]erious cases of harassment constitute cause for termination." (Doc. 77-21 at 3). It was entirely appropriate for these individuals to take action against Plaintiff once they determined that she violated the sexual harassment policy. Therefore, "[b]ecause 'the lawful reason alone would have sufficed to justify the firing,'" Plaintiff cannot succeed on her claim. *Trant*, 754 F.3d at 1168 (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359 (1995)).

Finally, Plaintiff maintains that the fourth and fifth steps in the analysis should be decided by the fact finder. (Doc. 77 17-18) (citing *Deutsch*, 618 F.3d 1098). However, in some cases, as here, "there may be no genuine issue of fact for the jury to resolve on

the last two" steps. *Deutsch*, 618 F.3d 1098. Therefore, the Court will dismiss Plaintiff's

free speech claim in regard to the December 3, 2012 meeting.

> b.  December 6, 2012 Text Message

The Court identified the second instance of Plaintiff's speech as the December 6,

2012, Plaintiff sent a text message to Detention Center employees. Because Plaintiff

claims that Defendant Pyle violated her right to free speech based on this text message,

the Court will use the five step "*Garcetti/Pickering*" analysis.

The text message stated:

> Hey everyone, it's Amanda just informing everyone about the union. If you
> do not want to receive information please inform me and I will [t]ake you
> off our texting list. Lance Pyle sent out a packet informing that he wants to
> meet with us individually and is trying to scare everyone. Please be aware
> this is harassment and you do not have to go see him. He is trying to
> separate us and keep us from forming a union. This is intimidation and
> also illegal. We should be getting a grandfather union coming down next
> week to help begin our paperwork. Remember that the commission or
> Pyle cannot do anything to fire us or make us go on leave, that would [be]
> retaliation and illegal. We have everyone's support in our admin. We will
> have more info in our meeting this Monday. Any info please contact me or
> Rene.

(Doc. 77-5 at 7).

Plaintiff clearly does not speak pursuant to her official duties in this text, so the

Court will move to step two of the analysis. Again, focusing on "the motive of the

speaker and whether the speech is calculated to disclose misconduct or merely deals

with personal disputes and grievances unrelated to the public's interest," the Court finds

this speech to not be a matter of public concern. *Denton*, 2016 WL 520905, at *3. The

purpose of Plaintiff's text message was to inform Detention Center employees about a

union that was being formed to deal with their personal grievances at the Detention

Center. Because this speech is not a matter of public concern, the Court finds that it is unprotected.

> ii.     *Right of Association*

Plaintiff claims that Defendant Pyle violated her right of association by retaliating against her for associating with the union. The analysis for a freedom of association claim is the same as the analysis for free speech claims, except in the case of unions. *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1138 (10th Cir. 2006). "In the specific context of public employee labor unions, [the Tenth Circuit] has rejected the requirement that a worker demonstrate that [her] association with the union be a matter of public concern." *Id.* Therefore, the Court will not analyze the second step of the "*Garcetti/Pickering*" analysis. Additionally, the Tenth Circuit found that courts do not need to balance the government's interest against the employee's interest in union association when a collective bargaining agreement has been signed. *Id.* at 1139. Here, there is no evidence that a collective bargaining agreement was signed.

Plaintiff specifically states that Defendant Pyle took adverse action against her in retaliation for her association with the Detention Center union and her role as one of the union's representatives. (Doc. 1 ¶ 40). Defendant argues that because the undisputed facts show that Defendant Pyle's decision to affirm the termination of Plaintiff was not based on Plaintiff's association with the union, the Court should grant summary judgment in his favor. (Doc. 69 at 11).

Because Defendant Pyle only argues that Plaintiff cannot meet the fourth and fifth elements of the analysis, the Court will assume without finding that Plaintiff met the first and third steps of the analysis. The Court will not however, proceed through the

whole analysis, as Plaintiff's association claims are based on the same facts as her speech claims. Because the analysis is the same, and the Court already found that Plaintiff's claims fail at both steps four and five for the speech claims, the Court also finds that Plaintiff's association claims fail at steps four and five.

      *iii.*     *Right to Petition for Redress of Grievances*

Finally Plaintiff alleges that Defendant violated her right to petition for redress of grievances by retaliating against her for sending emails about the union. The test for whether an employee's right to petition for redress of grievances has been violated is the same analysis as for a free speech claim. *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999). In her Complaint, Plaintiff contends that in her capacity as a union organizer, she sent emails to employees of the Detention Center that were matters of public concern and she was retaliated against based on these emails. (Doc. 1 ¶¶ 46-48). Specifically, Plaintiff states that she complained about the unsafe and unhealthy conditions at the Detention Center for employees, detainees, and the public. (Doc. 1 ¶ 49).

The only "petition" in the record is the letter to Defendant Pyle that was discussed at the December 3, 2012 meeting. The Court already found that Plaintiff's claim based on this letter fails at steps four and five of the analysis. Therefore, the Court finds that Plaintiff's claim that she was retaliated against for exercising her right to petition for redress of grievances also fails.

IV.     Conclusion

For the foregoing reasons, the Court finds that some of Defendant Pyle's statements in his affidavit should be struck. Additionally, Defendant has shown that as a matter of law, he is entitled to summary judgment on all counts because there are no genuine disputes as to issues of material fact.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Strike Summary Judgment Affidavit of Lance Pyle in part [Doc. 69]*, (Doc. 78), be **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Plaintiff's WPA claim, claim IV, against Defendant Pyle is **DISMISSED WITH PREJUDICE**;

**FINALLY, IT IS ORDERED** that *Defendant Lance Pyle's Motion for Summary Judgment and Qualified Immunity*, (Doc. 69), be **GRANTED** and that Plaintiff's claims against Defendant Pyle be **DISMISSED WITH PREJUDICE**.

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE