# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AMANDA SINFUEGO,

     Plaintiff,

vs.                                                                   No. CR 15-0563 JB\GJF

CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS, a political
sub-division existing under the laws of the
state of New Mexico; LANCE PYLE, in
his official capacity as County Manager
and individually; TORI SANDOVAL, in
her official capacity as Curry County
Curry Detention Administrator and in her
individual capacity,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Curry County's Motion for

Summary Judgment, filed June 12, 2018 (Doc. 121)("Motion"). The Court held a hearing on

September 25, 2018. The primary issues are: (i) whether Board of County Commissioners of

Curry County, New Mexico ("Curry County") violated Plaintiff Amanda Sinfuego's First

Amendment to the Constitution of the United States of America rights to freedom of speech, to

petition for redress of grievances, and to freedom of association when Sinfuego's employment

with Curry County Detention Center ("Curry Detention") was terminated after she petitioned

Defendant Lance Pyle, the Curry County Detention Manager, about workplace conditions; met

with Pyle about collective bargaining and workplace concerns; texted Curry County Detention

Officers ("Curry Officers") notifying them that Pyle wanted to speak with them individually to

prevent collective bargaining; signed the Petition from the Curry Officers to Administrator Tori Sandoval at 1, filed June 27, 2018 (Doc. 125-10)("Petition from Curry Officers to Sandoval"), and reported sexual harassment; (ii) whether Curry County took adverse employment actions against Sinfuego when it terminated her employment, removed her from the Special Operations Response Team ("S.O.R.T."), gave her night shifts and shifts in the women's annex, and interfered with her ability to choose her shifts; (iii) whether the Court should find Curry County liable for violating Sinfuego's First Amendment rights when Curry County had no custom dictating retaliation against union activities; (iv) whether Curry County violated the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-3(A) ("NMWPA"), when it terminated Sinfuego after she complained about Pyle attempting to meet individually with Curry Officers seeking to create a union. Regarding Sinfuego's First Amendment claims, the Court concludes that: (i) Sinfuego's activities related to safety at Curry Detention touch matters of public concern, but Sinfuego's actions and statements related to pay, unionizing, shift bids, and sexual harassment do not involve public concerns; (ii) a jury could find that Curry County engaged in adverse employment actions when it terminated Sinfuego and removed her from S.O.R.T. but not that Curry County took adverse employment actions when it interfered with Sinfuego's ability to choose her shift, and assigned her to the night shift and women's annex; (iii) Sinfuego has not demonstrated a genuine question of fact whether Sinfuego's activities motivated Curry County's actions; and (iv) Sinfuego has not established a genuine question of fact whether Curry County terminated Sinfuego's employment, because she engaged in inappropriate sexual conversations and drawings during work hours in violation of the Curry County sexual harassment policy. Sinfuego has also not established a genuine factual question whether Curry County had a practice of retaliating against

individuals engaged in union activities. Having resolved all of Sinfuego's federal claims, the Court will dismiss the state law claims without prejudice.

## FACTUAL BACKGROUND

The Court draws the factual background from the parties' undisputed material facts in the Memorandum Brief in Support of Defendant Curry County's Motion for Summary Judgment, filed June 12, 2018 (Doc. 122)("Memo."); in the Plaintiff Amanda Sinfuego's Response to "Defendant Curry County's Motion for Summary Judgment" and "Memorandum Brief in Support of Defendant Curry County's Motion for Summary Judgment" [Doc. 121-122], filed June 27, 2018 (Doc. 125)("Response"); and in the Reply Brief in Support of Defendant Curry County's Motion for Summary Judgment at 2, filed July 13, 2018 (Doc. 127)("Reply"). Curry Detention hired Sinfuego on August 16, 2010. See Memo. ¶ 1, at 2 (asserting this fact)(citing Deposition of Amanda Sinfuego at 29:8-30:4 (taken April 20, 2018), filed June 12, 2018 (Doc. 122-1)("Sinfuego Depo. Doc. 122-1"[1])).[2] On October 15, 2012, Gerry Billy, the Curry Detention Administrator in 2012, appointed Sinfuego as the Interim Executive Secretary, an administration and management position -- not a Curry Officer position. See Memo. ¶ 2, at 2 (asserting this fact)(citing Sinfuego Depo. Doc. 122-1 at 72:5-73:6; id. at 75:3-15); Response ¶ 1, at 1 (admitting this fact).

---

[1]Sinfuego and Curry County have filed different pages from the same depositions, and thus the excerpts from the depositions have different docket numbers. The Court will, thus, include the docket number when citing the depositions.

[2]Sinfuego makes no response to this fact. See Response at 1. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

On November 16, 2012, Curry Officers sent the Memorandum to County Administration (dated Nov. 16, 2012), filed June 12, 2018 (Doc. 122-2); the Memorandum to County Administration is a petition, which Sinfuego did not sign, because she held the Interim Executive Secretary position. See Memo. ¶ 3, at 2 (asserting this fact)(citing Sinfuego Depo. Doc. 122-1 at 97:19-25; id. at 103:14-104:22; Memorandum to County Administration at 1-2); Response ¶ 1, at 1 (admitting this fact). The Memorandum to County Administration was sent "[o]n behalf of all detention officers, who currently work in the Curry County Adult Detention Center of Clovis New Mexico." Memo. ¶ 3, at 2 (asserting this fact)(citing Memorandum to County Administration at 1).[3] In the Memorandum to County Administration, the Curry Officers ask for a pay raise, complain about work conditions, and discuss unionizing. See Memo. ¶ 4, at 2 (asserting this fact)(citing Memorandum to County Administration at 1).[4] The Curry Officers, for instance, state: "We the workers are organizing to negotiate terms of working conditions vacation and pay,"

---

[3]Sinfuego purportedly disagrees with the paragraph containing the alleged undisputed fact, but Sinfuego does not mention the language quoted by Curry County. See Response ¶¶ 2(i)-(iii), at 1. All that Sinfuego does is quote language about additional concerns. See Response ¶¶ 2(i)-(iii), at 1. That additional language is quoted later in the paragraph in the text. The Court therefore deems the fact that Curry County asserts undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[4]Sinfuego purportedly disagrees with the paragraph containing the alleged undisputed fact, but Sinfuego does not dispute that the Memorandum to County Administration contains language about such concerns. See Response ¶¶ 2(i)-(iii), at 1. Sinfuego quotes language about only additional concerns. See Response ¶¶ 2(i)-(iii), at 1. That additional language is quoted later in the paragraph in the text. The Court therefore concludes that the fact that Curry County asserts is undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Memo. ¶ 4, at 2 (asserting this fact)(quoting Memorandum to County Administration at 1);[5] and they also state: "We have looked into contacting and forming a union which can delegate on our behalf if necessary," Memo. ¶ 4, at 2 (asserting this fact)(quoting Memorandum to County Administration at 1).[6] Regarding the work environment, the Curry Officers complain: "Every day we step into an environment of danger where in the past three months four Officers have been assaulted," Response ¶ 2(i), at 1 (asserting this fact)(quoting Memorandum to County Administration at 1); Reply at 2 (admitting this fact); and the Curry Officers further state: "Poor leadership is reflected by the county manager and Commissioners who only seem to collect their 100,000 plus wages," Response ¶ 2(ii), at 1 (asserting this fact)(quoting Memorandum to County Administration at 1); Reply at 2 (admitting this fact). Finally, the Curry Officers threaten: "We will be contacting the newspapers and making our plea public and only do that so our plight will not be ignored." Response ¶ 2(iii), at 1 (asserting this fact)(quoting Memorandum to County Administration at 1); Reply at 2 (admitting this fact).

On December 3, 2012, Sinfuego and Curry Officer Rene Garcia met with Pyle about the Curry Officers' concerns. See Memo. ¶ 5, at 1 (asserting this fact).[7] At the meeting, Pyle noted

---

[5]As discussed supra note 4, Sinfuego does not mention whether the Memorandum to County Administration contains the quoted language. See Response ¶¶ 2(i)-(iii), at 1. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[6]As discussed supra note 5, Sinfuego does not mention whether the Memorandum to County Administration contains the quoted language. See Response ¶¶ 2(i)-(iii), at 1. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[7]Sinfuego finds material facts in dispute in Curry County's assertion, but she states only that she met with Pyle on December 3, 2012, and she mentions Garcia when describing the

- 5 -

that Sinfuego, as the Interim Executive Secretary, was "considered part of management," and thus Pyle would not treat her as representing the Curry Officers. Memo. ¶ 5, at 3 (asserting this fact)(citing Transcript of Conference with Lance Pyle, Amanda Sinfuego, and Rene Garcia on December 3rd, 2012 at 1:14-25 (taken Dec. 3, 2012), filed June 12, 2018 (Doc. 122-2)("Conf. Tr.")).[8] Sinfuego informed Pyle that she would be returning to her position as a Curry Officer. See Response ¶ 3(i), at 2 (asserting this fact)(citing Conf. Tr. at 1:20).[9] At the meeting, Garcia did most of the talking. See Memo. ¶ 6, at 3 (asserting this fact).[10] Garcia, Sinfuego, and Pyle discussed the Curry Officers' concerns about safety, including attacks on Curry Officers and the

---

meeting. See Response ¶¶ 3(i)-(ii), at 2. Sinfuego does not discuss the alleged undisputed fact mentioned in the text. See Response ¶¶ 3(i)-(ii), at 2. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[8]Sinfuego purportedly disputes the paragraph containing this alleged undisputed fact. In response to this fact, however, she states only: "Ms. Sinfuego stated she would be going back to a Detention officer that Monday." Response ¶ 3(i), at 2 (quoting Conf. Tr. at 1:20). Because this fact does not controvert the alleged undisputed fact, the Court therefore deems that fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[9]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit this fact, but neither does Curry County purport to dispute it. See Reply at 2-3. Curry County does not mention the fact. See Reply at 2-3. There also does not, however, appear to be any doubt about the fact, and the record suggests it. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[10]Sinfuego disputes the paragraph containing this alleged undisputed fact, but Sinfuego does not controvert or discuss this particular assertion. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

ratio of Curry Officers to inmates.  See Response ¶¶ 3(ii)-(iii), at 2 (asserting this fact)(citing Conf. Tr. at 4:17; id. at 5:15-17; id. at 6:15-18; id. at 8:4-12).[11]  Garcia explained to Pyle that the Curry Officers' "main concern [is] just [their] safety," Reply at 3 (asserting this fact)(quoting Conf. Tr. at 4:17);[12] that a couple days earlier there "was one person in [the] facility for 200 inmates," Reply at 3 (asserting this fact)(quoting Conf. Tr. at 5:15-17);[13] that "the facility [was] not accommodating for safety and security," Reply at 3 (asserting this fact)(quoting Conf. Tr. at 6:15);[14] and that "there have been a number of attacks on us once again because there is understaff[ing]," Reply at 3 (asserting this fact)(quoting Conf. Tr. at 8:3-12).[15]  Sinfuego stated: "[E]veryone is looking toward going to collective bargaining."  Response ¶ 3(v), at 2 (asserting this fact)(quoting Conf. Tr. at

---

[11]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not disagree with this summary of the discussion, but Curry County clarifies that Garcia -- not Sinfuego -- made the comments to Pyle about these concerns.  See Reply at 2-3.  There also does not, however, appear to be any doubt about the fact, and the record suggests it.  Because Curry County does not controvert that the conference included discussions about these matters, the Court deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[12]Curry County asserts this fact in the Reply.  Sinfuego had an opportunity to respond to this fact at the hearing but did not mention it.  Further, Sinfuego cites Garcia's statement in the record when paraphrasing the conference.  See Response ¶¶ 3(ii)-(iii), at 2.  Both parties, therefore, appear to agree that the statement in the text was made.  Accordingly, the Court deems this fact undisputed.

[13]For the reasons explained supra note 12, the Court deems this fact undisputed.

[14]For the reasons explained supra note 12, the Court deems this fact undisputed.

[15]For the reasons explained supra note 12, the Court deems this fact undisputed.

11:18-24).[16]  Pyle told Sinfuego and Garcia: "We are open to meet as a group, individually, and let [the Curry Officers] know, it's an open door policy and they can contact me and I can meet with them in the evening or weekends if need[ed]."  Memo. ¶ 6, at 3 (asserting this fact)(quoting Conf. Tr. at 12:4-6).[17]  Curry Detention had a policy deterring employees to "jump management" and communicate directly with Pyle.  Response ¶ 4(ii) (quoting Sinfuego Depo. Doc. 125-7 at 114:20-21).[18]

---

[16]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit this fact, but neither does Curry County dispute it.  See Reply at 2-3.  Curry County does not mention it.  See Reply at 2-3.  Moreover, there is nothing in the record that suggests that the fact is disputed.  Finally, the Court must resolve all reasonable doubts in the non-movant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Liberty Lobby").  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[17]Sinfuego mentions additional facts, discussed in the preceding footnotes and text, about the December 3, 2012, meeting and disputes whether Pyle told the truth in the quotation in the text, but she does not admit or deny that Pyle made this statement.  See Response ¶¶ 4(i)-(iii), at 3-4.  Sinfuego does not mention whether Pyle made the statement.  See Response ¶¶ 4(i)-(iii), at 3-4.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[18]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 2-4.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore deems that the fact in the text is undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

After the meeting, Pyle posted a letter at the time clock and sent letters to the Curry Officers offering to meet with them individually.  See Memo. ¶ 7, at 3 (asserting this fact)(citing Sinfuego Depo. Doc. 122-1 at 117:3-19).[19]  In a December 4, 2012, letter to Garcia, Pyle wrote:

> I will be willing to meet with you in the next week to gather some additional information and to be able to provide that information to the County Commission in an attempt to assist you with some kind of resolution.  You also have the right to file for collective bargaining and enclosed is a copy of Curry County Ordinance #2004-07.

Memo. ¶ 8, at 3-4 (asserting this fact)(quoting Letter from Lance Pyle to Rene Garcia at 1 (sent Dec. 4, 2012), filed June 12, 2018 (Doc. 122-2)).[20]  Pyle wanted the employees to know that unionizing was not in their best interests.  See Response ¶ 3(x), at 3 (asserting this fact)(citing Billy v. Curry Cty. Bd. of Comm'rs, D-905-CV-0201400420, Transcript of Trial on Merits at 235:19-22, (Ninth Judicial District Court, County of Curry, State of New Mexico)(taken July 28,

---

[19]Curry County states that Sinfuego testified to this fact.  See Memo. ¶ 7, at 3.  Sinfuego provides no response as to whether the facts to which Sinfuego testified occurred.  See Response ¶¶ 7(i)-(iii); id. ¶ 3 (vi), at 2.  The parties have provided no evidence, however, suggesting to the Court that Pyle did not post and distribute letters as Sinfuego described.  The Court, accordingly, deems that the fact occurred and is undisputed.

[20]Sinfuego purportedly disputes material facts related to the letter.  See Response ¶¶ 6(i)-(iv), at 4-5.  Sinfuego, however, does not mention the text of the letter.  See Response ¶¶ 6(i)-(iv), at 4-5.  She cites additional facts, which are discussed in the text's following paragraphs, surrounding Pyle's communications with the Curry Officers after the December 3, 2012, meeting, see Response ¶¶ 6(i)-(iv), at 4-5, and references Billy's testimony that the letter could be "improper" and that Pyle wanted to scare the Curry Officers, Response ¶¶ 6(iii)-(iv), at 4-5 (citing Deposition of Gerry Billy at 95:17-22 (taken April 29, 2018), filed June 27, 2018 (Doc. 125-11)("Billy Depo. Doc. 125-11"); id. at 163:1-2).  Because Sinfuego does not mention the letter's text, the Court deems this fact is also undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

2016), filed June 27, 2018 (Doc. 125-5)("Trial Tr.")).[21]  Sinfuego believed that Pyle "wanted to

just stop this, stop this whole possible unionization" and that Curry Officers feared Pyle.  Memo.

¶ 7, at 3 (asserting this fact)(quoting Sinfuego Depo. Doc. 122-1 at 120:9-22).[22]  "[D]etention

officers came to Ms. Sinfuego and told them they did not want to meet with the County Manager

because it could cost them their jobs."  Response 5(ii), at 4 (asserting this fact)(citing Deposition

of Amanda Sinfuego at 34:1-10 (taken April 20, 2018), filed June 27, 2018 (Doc. 125-

7)("Sinfuego Depo. Doc. 125-7")).[23]  "People lost their jobs for simple things.  That was the reason

---

[21]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 3-4.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore deems the fact in the text is undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[22]Sinfuego purportedly disputes this alleged undisputed fact, but Sinfuego does not admit or deny that she believed what the fact alleges.  See Response ¶¶ 5(i)-(iii), at 4; id. ¶¶ 3(i)-(xii).  Sinfuego instead expands on the events preceding and following Pyle's letters to the Curry Officers.  See Response ¶¶ 5(i), at 4; id. ¶¶ 3(i)-(xii).  Sinfuego does not discuss the alleged undisputed fact.  See Response ¶¶ 5(i)-(iii), at 4; id. ¶¶ 3(i)-(xii).  The Court therefore deems that the fact in the text is undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[23]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 3-4.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore concludes that the fact in the text is undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

why no one went to him individually." Response ¶ 5(ii), at 4 (asserting this fact)(quoting Sinfuego Depo. Doc. 125-7 at 34:1-10).[24]

On December 6, 2012, Pyle informed Billy via email that Pyle learned through Sinfuego that the Curry Officers refused to meet with Pyle.[25] See Memo. ¶ 9, at 4 (asserting this fact)(citing Email from Lance Pyle to Gerry Billy at 1 (sent Dec. 6, 2012), filed June 12, 2018 (Doc. 122-2)). Pyle wrote:

> Gerry as you are well aware with your experience in management, your Executive Secretary cannot be involved in collective bargaining, neither can your other Curry Detention Management and Administration Staff. Please inform your administrative staff and all other members of management that they are not to interfere or otherwise become involved in anything pertaining to Curry Detention negotiations with County Management and/or County Managers.

---

[24]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, deny, or mention this fact. See Reply at 3-4. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems the fact in the text is undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[25]Sinfuego purportedly disputes the paragraph of alleged undisputed facts containing this fact. See Response ¶¶ 7(i)-(iii), at 5. Sinfuego does not, however, admit or deny that Pyle sent the email to Billy. See Response ¶¶ 7(i)-(iii), at 5. Sinfuego does not mention it when responding to the Memo.'s paragraph discussing the fact. See Response ¶¶ 7(i)-(iii), at 5. Sinfuego quotes, however, from the same email in Response ¶ 3(vi), and the record supports that the email was sent as described. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

See Memo. ¶ 9, at 4 (asserting this fact)(quoting Email from Lance Pyle to Gerry Billy at 1).[26]

Billy informed Pyle that Sinfuego filled a temporary position and would be reassigned to a position not in an administrative role.  See Response ¶ 3(vi) (asserting this fact)(citing Email from Gerry Billy to Lance Pyle (sent Dec. 6, 2012), filed June 12, 2018 (Doc. 122-2)); id. ¶ 7(iii) (asserting this fact)(citing Email from Gerry Billy to Lance Pyle).[27]

Also on December 6, 2012, Sinfuego texted the Curry Officers about Pyle's letters.  See Memo. ¶ 10, at 4-5 (asserting this fact); Response ¶ 8, at 5 (admitting this fact).  Sinfuego wrote:

> Hey everyone, it's Amanda just informing everyone about the union.  If you do not want to receive information please inform me and I will take you off our texting list.  Lance Pyle sent out a packet informing that he wants to meet with us individually and is trying to scare everyone.  Please be aware this is harassment and you do not have to go see him.  He is trying to separate us and keep us from forming a union.  This is intimidation and also illegal.  We should be getting a grandfather union coming down next week to help begin our paperwork.  Remember that the commission or Pyle cannot do anything to fire us or make us go on leave, that would be retaliation and illegal.  We have everyone's support in our admin. We will have more info in our meeting this Monday.  Any info please contact me or Rene :)

---

[26]Sinfuego purportedly disputes the paragraph containing this alleged undisputed fact, but Sinfuego does not admit or deny that Pyle's email contained the quoted language.  See Response ¶¶ 7(i)-(iii), at 5.  Sinfuego does not mention the language.  See Response ¶¶ 7(i)-(iii), at 5.  The Court therefore deems this language undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[27]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County neither admits nor denies this fact.  See Reply at 2-4.  Curry County does not mention it. See Reply at 2-4.  Moreover, there is nothing in the record that suggests that the fact is disputed. Finally, the Court must resolve all reasonable doubts in the non-movant's favor.  See Hunt v. Cromartie, 526 U.S. at 550-55; Liberty Lobby, 477 U.S. at 255.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Memo. ¶ 10, at 4-5 (asserting this fact)(citing Email from Lance Pyle to Steve Doerr at 1 (sent Dec. 13, 2012), filed June 12, 2018 (Doc. 122-2)("Pyle Email")). See Response ¶ 8, at 5 (admitting this fact).[28] Sinfuego believed that Pyle sent the letters "to scare everyone" and to prevent them from unionizing by saying "he wanted to fix things." Memo. ¶ 11, at 5 (asserting this fact)(quoting Sinfuego Depo. Doc. 122-1 at 143:15-16; id. at 148:17 and citing Sinfuego Depo. Doc. 122-1 at 143:14-23; id. at 144:21-145:2; id. at 146:14-147:8; id. at 148:6-149:17).[29] Sinfuego acted improperly by sending the text message during work hours. See Memo. ¶ 12, at 5 (asserting this fact)(citing Deposition of Gerry Billy at 91:22-92:3 (taken April 29, 2018), filed June 12, 2018 (Doc. 122-2)("Billy Depo. Doc. 122-2"); id. at 99:24-100:5).[30]

---

[28]Sinfuego admits that she sent the text message as quoted, but she disputes Curry County's description, in its section heading, of the text as "inappropriate." Response ¶ 8, at 5. In its Reply, Curry County argues that the text was inappropriate. See Reply at 4 n.3. This argument does not controvert Curry County's facts. Accordingly, the Court concludes that the fact is undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[29]Sinfuego purportedly disputes the paragraph containing this alleged undisputed fact in the Memorandum. See Response ¶¶ 9(i)-(ii), at 5. Sinfuego, however, does not admit or deny the fact. See Response ¶¶ 9(i)-(ii), at 5. She does not mention it. See Response ¶¶ 9(i)-(ii), at 5. Because Sinfuego does not dispute the facts in the text, the Court deems the fact about Sinfuego's beliefs undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[30]Sinfuego purportedly disputes the numbered paragraph containing this alleged undisputed fact. See Response ¶ 10, at 5. In responding, however, Sinfuego references only other facts. See Response ¶¶ 10(i)-(ii), at 5; id. ¶¶ 5(ii)-(iii), at 4; id. ¶¶ 6(iii)-(iv), at 4-5. Sinfuego does not admit or deny the fact about her text message. See Response ¶¶ 10(i)-(ii), at 5. She does not mention it. See Response ¶¶ 10(i)-(ii), at 5. Accordingly, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

On December 7, 2012, Stephen Doerr, the County Attorney, emailed Billy about the December 6, 2012, text message. See Memo. ¶ 13, at 5 (asserting this fact)(citing Email from Stephen Doerr to Gerry Billy at 1 (sent Dec. 7, 2012 at 2:19 P.M.), filed June 12, 2018 (Doc. 122-2)("Doerr 2:19 P.M. Email")); Response ¶ 1, at 1 (admitting this fact). Doerr wrote that Sinfuego had sent the communication "during work hours," that "her communication needs to stop," and that Billy "should also review the County policy and determine whether or not disciplinary action against Ms. Sinfuego is appropriate." Memo. ¶ 13, at 5 (asserting this fact)(quoting Doerr Email at 1); Response ¶ 1, at 1 (admitting this fact). Doerr assumed that Sinfuego spoke for Billy. See Response ¶ 3(viii), at 3 (asserting this fact)(citing Doerr 2:19 P.M. Email at 1).[31] Doerr later stated: "There were erroneous and false statements in that text, and the statement regarding the Admin support needs to be addressed." See Response ¶ 3(viii), at 3 (asserting this fact)(citing Email from Stephen Doerr to Gerry Billy at 1 (sent Dec. 7, 2012 at 3:09 P.M.), filed June 12, 2018 (Doc. 122-2)("Doerr 3:09 P.M. Email")).[32] Billy responded that he addressed the matter, and it was "time to

---

[31]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit nor deny this fact. See Reply at 2-4. Curry County does not mention it. See Reply at 2-4. Moreover, the record reflects this fact. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[32]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit nor deny this fact. See Reply at 2-4. Curry County does not mention it. See Reply at 2-4. Further, the record reflects this fact. The Court therefore deems this fact

move on."  See Response ¶ 3(viii), at 3 (asserting this fact)(citing Email from Gerry Billy to Steve

Doerr at 1 (sent Dec. 7, 2012 at 3:19 P.M.), filed June 12, 2018 (Doc. 122-2)).[33] Billy subsequently

verbally "counseled" Sinfuego, which he considered discipline and "the right thing to do," and

Sinfuego neither received further discipline nor sent another text about the union during work

hours.  Memo. ¶ 14, at 6 (asserting this fact)(citing Billy Depo. Doc. 122-2 at 102:23-104:10; id.

at 106:4-20; id. at 108:25-109:16).  See Response ¶ 1, at 1 (admitting this fact).

On December 13, 2012, Pyle sent an email to Doerr about the text.  See Memo. ¶ 15, at 6

(asserting this fact)(citing Pyle Email at 1); Response ¶ 1, at 1 (admitting this fact).  Pyle described

the December 6, 2012, text message as "incorrect, misleading, and slanderous," and complained

that Sinfuego, on December 10, 2012, "again was distributing material on County time with

incorrect, misleading and slanderous information to the Adult and the Juvenile Curry Detention

employees."  Memo. ¶ 15, at 6 (asserting this fact)(internal quotation marks omitted)(quoting Pyle

Email at 1).  See Response ¶ 1, at 1 (admitting this fact).  Pyle continued:

> This behavior violates several sections of the Curry County Personnel Policy and
> must be addressed.  It is the Detention Administrator's duty/responsibility to take
> disciplinary action against Ms. Sinfuega [sic] and notify the County Detention

---

undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be
deemed undisputed unless specifically controverted.").

[33]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional
facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego
in including the facts that she deems relevant, but the Court must also be careful in adding facts to
the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry
County does not admit nor deny this fact.  See Reply at 2-4.  Curry County does not mention it.
See Reply at 2-4.  Moreover, there is nothing in the record that suggests that the fact is disputed.
Finally, the Court must resolve all reasonable doubts in the non-movant's favor.  See Hunt v.
Cromartie, 526 U.S. at 550-55; Liberty Lobby, 477 U.S. at 255.  The Court therefore deems this
fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be
deemed undisputed unless specifically controverted.").

employees in writing that the text was sent by Ms. Sinfuego is incorrect, misleading and slanderous. I would request that letter be signed by every employee to guarantee that every employee was notified with a copy being provided to the Personnel Department for the employee files.

If this was any other employee they would be receiving disciplinary action for this conduct/behavior. If the department head refused to address the matter with disciplinary action; disciplinary action would be taken against them. The Curry Detention cannot be treated any differently and the Curry Detention must be held to the same standards.

Memo. ¶ 15, at 6 (asserting this fact)(internal quotation marks omitted)(quoting Pyle Email at 1).

See Response ¶ 1, at 1 (admitting this fact). At the time Pyle sent this email, he did not know that Billy had verbally counseled Sinfuego or that Assistant County Manager, Connie Harrison, had given him erroneous information about Sinfuego distributing material again on December 10, 2012. See Memo. ¶ 16, at 6 (asserting this fact)(citing Affidavit of Lance Pyle ¶ 3, at 1 (dated June 12, 2018), filed June 12, 2018 (Doc. 122-2)("Pyle Aff."); Billy Depo. Doc. 122-2 at 117:5-122:16).[34] After receiving the email, Billy did not further discipline Sinfuego, because "he had 'already taken care of it.'" Memo. ¶ 16, at 6-7 (asserting this fact)(quoting Billy Depo. Doc. 122-2 at 117:5-122:16).[35] Pyle thought that Billy mishandled the situation and wanted "something

_____

[34]Sinfuego purports to dispute the paragraph discussing these alleged undisputed facts. See Response ¶¶ 11(i)-(x), at 5-7. Nevertheless, Sinfuego does not admit or refute these particular facts. See Response ¶¶ 11(i)-(x), at 5-7. Sinfuego does not mention them. See Response ¶¶ 11(i)-(x), at 5-7. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[35]Sinfuego purports to dispute the paragraph discussing these alleged undisputed facts. See Response ¶¶ 11(i)-(x), at 5-7. Nevertheless, Sinfuego does not admit or refute these particular facts. See Response ¶¶ 11(i)-(x), at 5-7. Sinfuego does not mention them. See Response ¶¶ 11(i)-(x), at 5-7. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

done about Billy." Response ¶ 11(ii), at 6 (quoting Trial Tr. at 237:6-11).[36] Billy learned, on January 7, 2013, when his contract was due for renewal, that Curry County would not renew his contract as the Curry Detention Administrator, and Billy believed his decision not to discipline Sinfuego further influenced Curry County's decision. See Memo. ¶ 17, at 7 (asserting this fact)(citing Billy Depo. Doc. 122-2 at 19:1-7; id. at 22:19-23:5).[37] A jury found that Billy's refusal to further discipline Sinfuego motivated Curry County not to renew his contract. See Response ¶ 12(i), at 7 (asserting this fact)(citing Billy v. Curry Cty. Bd. of Cty. Comm'rs, D-905-CV-2014-00420, Special Verdict at 1 (Ninth Judicial District, County of Curry, State of New Mexico), filed in state court June 18, 2016, filed in federal court June 27, 2018 (Doc. 125-6)).[38]

---

[36]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not disagree with Sinfuego's reference to these facts, but Curry County also does not admit them. See Reply at 5. Curry County did not address this quotation. See Reply at 5. Because Curry County does not dispute these quotations, the Court deems them undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[37]Sinfuego does not admit or dispute that Curry County terminated Billy's employment. See Response ¶ 12, at 7. Sinfuego does not address the fact, but Sinfuego purports to dispute the paragraph containing the alleged undisputed fact. See Response ¶ 12, at 7. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[38]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County offers no response to this fact. See Reply at 5. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Curry County appointed Tori Sandoval[39] as the Interim Curry Detention Administrator. See Memo. ¶ 17, at 7 (asserting this fact)(citing Deposition of Tori Sandoval at 1 (taken April 19, 2018), filed June 12, 2018 (Doc. 122-2)("Sandoval Depo. Doc. 122-2")).[40]  Sheila Morrison, whom Pyle had asked Billy to fire, and Keith Farkas were transferred to different positions after Billy's departure.  See Response ¶ 13(i), at 7 (asserting this fact)(citing Shiela Morrison Testimony at 76:13-24 (taken July 27, 2016), filed June 27, 2018 (Doc. 125-8); id. at 77:1-5; id. at 77:12-14; id. at 77:18-24; Keith Farkas Testimony at 68:3-4 (taken July 27, 2016), filed June 27, 2018 (Doc. 125-9); id. at 68:7-18; Deposition of Gerry Billy at 170:1-21 (taken April 29, 2018), filed June 27, 2018 (Doc. 125-11)("Billy Depo. Doc. 125-11")).[41]  Farkas "was treated like a 'leper.'"

---

[39]This Memorandum Opinion and Order mentions two "Sandovals" -- Tori Sandoval and Bobbie Sandoval, a Curry County Commissioner.  Bobbie Sandoval plays a limited role in this suit.  The Court, therefore, refers to Tori Sandoval as "Sandoval" and uses "Bobbie Sandoval" in its few references to Bobbie Sandoval.

[40]Although Sinfuego purportedly disputes the numbered paragraph in the Memorandum containing this fact, Sinfuego neither admits nor denies this fact.  See Response ¶ 12(i), at 7. Sinfuego does not mention it.  See Response ¶ 12(i), at 7.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[41]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  In the Reply, Curry County contends that Sinfuego draws the alleged undisputed fact from Commissioner Chet Spear's 2014 notes recording Curry Detention employees' grievances, see Chet Spear Notes, filed June 27, 2018 (Doc. 125-18)("Spear Notes"), which Curry County argues are hearsay.  See Reply at 5 n.4.  The Court discusses infra note 49 whether the Spear Notes are hearsay.  Sinfuego does not, however, pull the alleged undisputed fact from the Spear Notes.  See Response ¶ 11(iv), at 6.  Sinfuego draws the alleged undisputed fact from Farkas' and Morrison's testimony.  See Response ¶ 11(iv), at 6.  Curry County does not otherwise dispute the alleged undisputed fact in the text's truth, because Curry County states only: "The fact that two other employees . . . were also transferred to other shifts by Ms. Sandoval, if anything, undercuts Plaintiff's claims of

Response ¶ 13(ii), at 7 (asserting this fact)(quoting Keith Farkas Testimony at 128:8-10).[42]  After

Sandoval's appointment, Sinfuego was removed from S.O.R.T., in which she worked as the female

training officer, was put on the night shift, and was assigned to the women's annex.  See Memo.

¶ 18, at 7 (asserting these facts)(citing Sinfuego Depo. Doc. 122-1 at 154:9-158:1).[43]  Sinfuego

had seniority over twenty-nine people.  See Response ¶ 11(iv), at 6 (asserting this fact)(citing

Sinfuego Depo. Doc. 125-7 at 155:23).[44]  "Seniority was thrown [out] the window," Response ¶

---

retaliation."  Reply at 6.  Curry County also does not admit the fact.  See Reply at 6.  Curry
County's argument that the fact undercuts Sinfuego's retaliation claims does not, however,
controvert the fact in the Response.  See Reply at 5-6.  The Court therefore deems this fact
undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be
deemed undisputed unless specifically controverted.").

[42]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional
facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego
in including the facts that she deems relevant, but the Court must also be careful in adding facts to
the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry
County does not respond to this fact.  See Reply at 5-6.  Moreover, there is nothing in the record
that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.
See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed
undisputed unless specifically controverted.").

[43]Curry County does not state these facts as facts, but rather, explains that Sinfuego testified
to these facts.  See Memo. ¶ 18, at 7 (citing Sinfuego Depo. Doc. 122-1 at 154:9-158:1).
Nevertheless, by citing the testimony, Curry County appears to treat the events as having occurred.
Sinfuego also treats these facts as having occurred.  See Response § 11(iv)-(vi), at 6 (citing
Sinfuego Depo. Doc. 125-7 at 154:18-25; id. at 155:1-25; id. at 157:9-15; id. at 294:14-15; id. at
295:3-15).  The parties thus treat the testimony as true, and there is nothing in the record to indicate
that the events described in the text did not occur.  The Court, therefore, concludes that these facts
occurred and are undisputed.

[44]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional
facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego
in including the facts that she deems relevant, but the Court must also be careful in adding facts to
the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry
County does not respond to this fact.  See Reply at 5-6.  Moreover, there is nothing in the record
that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.

11(iv), at 6 (asserting this fact)(Sinfuego Depo. Doc. 126-7 at 154:21-22);[45] Sinfuego "was made an example," Response ¶ 11(iv), at 6 (asserting this fact)(Sinfuego Depo. Doc. 126-7 at 154:25),[46] and treated like a "leper," Response ¶ 11(iv), at 6 (asserting this fact)(Sinfuego Depo. Doc. 126-7 at 154:24-25).[47] Sinfuego joined a night shift with new people and could not choose her shift wherever she was needed. See Response ¶ 11(iv), at 6 (asserting this fact)(citing Sinfuego Depo.

---

See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[45]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not respond to this fact. See Reply at 5-6. Moreover, there is nothing in the record that suggests that the fact is disputed in any way. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[46]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not respond to this fact. See Reply at 5-6. Moreover, there is nothing in the record that suggests that the fact is disputed in any way. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[47]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not respond to this fact. See Reply at 5-6. Moreover, there is nothing in the record that suggests that the fact is disputed in any way. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Doc. 125-7 at 155:1-25; id. at 295:3-15).[48]  Billy believed that "[p]lacing someone on midnight

shift and stripping them of duties is retaliatory" and that management retaliated against Sinfuego.

See Response ¶ 11(vi), at 6 (asserting this fact)(citing Billy Depo. Doc. 125-11 at 166:7-14; id. at

170:25-171:3; id. at 171:8).[49]  Pyle was not involved in determining Sinfuego's shift assignments

or role in S.O.R.T.  See Memo. ¶ 19, at 7-8 (asserting this fact)(citing Pyle Aff. ¶ 4, at 1; Sandoval

Depo. Doc. 122-2 at 26:20-27:7).[50]  Sinfuego signed a petition to Sandoval about shift bidding,

---

[48]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not respond to this fact.  See Reply at 5-6.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[49]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not respond to this fact.  See Reply at 5-6.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[50]Sinfuego purportedly disputes the paragraph containing alleged undisputed fact. Sinfuego, however, does not admit, deny, or mention the fact.  See Response ¶¶ 14(i)-(ii), at 7-8. Rather, Sinfuego incorporates by reference several facts described in the text, including Pyle's opinions regarding disciplining Sinfuego for the text message and the changes in Sinfuego's, Morrison's, and Farkas' duties, which do not controvert the alleged undisputed fact in the text. See Response ¶¶ 14(i)-(ii), at 7-8.  In responding to the fact, Sinfuego also describes Sandoval as Pyle's "snitch," who was rewarded Billy's job after his termination and who had a "hammer" on Pyle.  Response ¶ 14(iv), at 8.  To support these latter assertions, Sinfuego cites the Spear Notes. See Response ¶ 14(iv), at 8.  See generally Spear Notes.  Regarding the employees' complaints, Sinfuego encounters a problem under rule 801(c) of the Federal Rules of Evidence's prohibition on hearsay.  See Fed. R. Evid. 801(c).  The Court can consider hearsay in ruling on a summary judgment, when the hearsay evidence can be presented in an admissible form at trial.  See Cheslek

see Response ¶ 14(iii) at 8 (asserting this fact)(citing Petition from Curry Officers to Sandoval at 1),[51] but Sinfuego did not discuss her union activities with Sandoval and Sandoval had no knowledge about such activities until the lawsuit, see Memo. ¶ 19, at 7 (asserting this fact)(citing Sinfuego Depo. Doc. 122-2 at 134:23-135:5; Sandoval Depo. Doc. 122-2 at 16:14-24).[52]  On

_____

v. Bank, CIV 15-0348 JB/WPL, 2016 WL 4035341, at *2 (D.N.M. June 29, 2016)(Browning, J.)(citing Fed. R. Civ. P. 56 (c)(4); Johnson v. Weld Cty., 594 F.3d 1202, 1209-10 (10th Cir. 2010); Trevizo v. Adams, 455 F.3d 1155, 1160 (10th Cir. 2006)).  "[T]he content or substance of the evidence must be admissible."  Adams v. Am. Guarantee & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(internal quotation marks omitted)(quoting Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998)).  "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'"  Adams v. Am. Guarantee & Liab. Ins., 233 F.3d at 1246 (quoting Wright-Simmons v. City of Okla. City, 155 F.3d at 1268).  Under rule 801(c), "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c) (emphasis in original).  Sinfuego offers the Spear Notes, which Spear compiled from third parties' statements outside court, for the truth of the statements therein.  The Court does not see a non-hearsay purpose for the evidence, which is offered to dispute the truth of the statement alleged as an undisputed fact.  Accordingly, the Court determines that the statements are inadmissible hearsay and will not consider the evidence from the Spear Notes.  Sinfuego thus does not controvert the alleged undisputed fact in the text, and the Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

    [51]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County argues that the undated petition does not help Sinfuego's claim, but Curry County does not dispute the fact.  See Reply at 6.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

    [52]Sinfuego purportedly disputes the paragraph containing the alleged undisputed fact.  Sinfuego, however, does not admit, deny, or mention the fact.  See Response ¶¶ 14(i)-(ii), at 7-8.  Rather, Sinfuego incorporates by reference several facts described in the text above, including Pyle's opinions regarding disciplining Sinfuego for the text message and the changes in Sinfuego,

September 4, 2013, Sandoval and Pyle signed a performance evaluation, on which Sinfuego received at least a "3" (Satisfactory) in every category and a total of "3.625." <u>See</u> Memo. ¶ 20, at 8 (asserting this fact)(citing Sinfuego Depo. Doc. 122-1 at 167:2-169:11; <u>id.</u> at 171:5-10; Performance Evaluation at 1-5 (dated Sept. 4, 2013), filed June 12, 2018 (Doc. 122-2)); Response ¶ 1, at 1 (admitting this fact).

On November 15, 2013, Sinfuego informed Garcia about a conversation with Curry Officer Dustin Hughes that occurred during the night of November 12 and 13, 2013, and before Curry Officers Janie Yearley and Dustin Davis. <u>See</u> Memo. ¶ 21, at 8 (asserting this fact)(citing Sinfuego Depo. Doc. 122-1 at 171:11-172:23).[53] Garcia requested that Sinfuego make a statement about the conversation, which Sinfuego did. <u>See</u> Response, ¶ 15(i), at 8 (asserting this fact)(citing Statement from Rene Garcia at 1 (dated Nov. 15, 2013), filed June 27, 2018 (Doc. 125-15)).[54] <u>See also</u>

---

Morrison, and Farkas' duties, which do not controvert the alleged undisputed fact in the text. <u>See</u> Response ¶¶ 14(i)-(ii), at 7-8. In responding to the fact, Sinfuego also describes Sandoval as Pyle's "snitch," who was rewarded Billy's job after his termination and who had a "hammer" on Pyle. Response ¶ 14(iv), at 8. To support these latter assertions, Sinfuego cites the Spear Notes. <u>See</u> Response ¶ 14(iv), at 8. <u>See</u> <u>generally</u> Spear Notes. As the Court discussed <u>supra</u> note 49, the Spear notes are inadmissible hearsay. The Court therefore deems this fact undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[53]Sinfuego does not specifically dispute this fact, but clarifies that Garcia requested the statement. <u>See</u> Response, ¶ 15(i), at 8 (citing Statement from Rene Garcia at 1 (dated Nov. 15, 2013), filed June 27, 2018 (Doc. 125-15)). Because Sinfuego only clarifies the fact and does not contravene the fact, the Court deems this fact undisputed. <u>See</u> D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[54]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry

Statement of Amanda Sinfuego at 1 (dated Nov. 15, 2013), filed June 12, 2018 (Doc. 122-2). Yearley gave a statement about the conversation on November 20, 2013. See Response ¶ 15(ii), at 8 (asserting this fact)(citing Statement of Janie Yearley at 1 (dated Nov. 20, 2013), filed June 27, 2018 (Doc. 125-16)).[55] The conversation began when Sinfuego stated that the restroom was filthy and that "there was pubes on the toilet seat," and the discussion turned to Hughes commenting on his personal grooming habits and sexual preferences. See Memo. ¶ 22, at 8 (asserting this fact)(quoting Statement of Amanda Sinfuego at 1 and citing Sinfuego Depo. Doc. 122-1 at 175:16-24). See Response ¶ 1, at 1 (admitting this fact). Hughes stated: "Well, it can't be my pubes. I keep my balls, gooch and asshole shaved." Memo. ¶ 22, at 7 (asserting this fact)(quoting Statement of Amanda Sinfuego at 1). See Response ¶ 1, at 1 (admitting this fact).

Responding to the report, Lindsay Schwebke, the Curry County Personnel Coordinator, interviewed Sinfuego, Hughes, Yearley, and Davis. See Memo. ¶ 23, at 8-9 (asserting this fact).[56]

---

County does not admit or dispute this fact. See Reply at 6. Curry County does not mention it. See Reply at 6. Moreover, there is nothing in the record that suggests that the fact is disputed. Finally, the Court must resolve all reasonable doubts in the non-movant's favor. See Hunt v. Cromartie, 526 U.S. at 550-55; Liberty Lobby, 477 U.S. at 255. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[55]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, dispute, or mention this fact. See Reply at 6. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[56]Although Sinfuego states that she disputes issues regarding the numbered paragraph containing this alleged undisputed fact, Sinfuego does not mention this fact. See Response ¶¶ 16(i)-(ii), at 8-9. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b)

Hughes told Schwebke in a December 3, 2013, interview that, during the conversation on November 13, 2013, Sinfuego brought up "porn stars." Memo. ¶ 24, at 9 (asserting this fact)(quoting Interview of Dustin Hughes at 1-2 (dated Dec. 3, 2013), filed June 12, 2018 (Doc. 122-3)).[57] In a statement, Yearley commented: "Officer Hughes was bragging to Officer Davis about 'bleaching his [anus]' Officer Sinfuego said whoa that's to [sic] much information." Response ¶ 15(ii), at 8 (asserting this fact)(quoting Statement of Janie Yearley at 1).[58] Sinfuego, in an interview with Schwebke on December 4, 2013, admitted that she asked, in response to Hughes statements about his grooming habits: "How porn stars do it?" Memo. ¶ 25, at 9 (asserting

("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[57]Sinfuego explains that she disputes issues regarding the numbered paragraph discussing this alleged undisputed fact, but she does not specifically controvert this fact. See Response ¶¶ 17(i)-(v), at 8-9. Sinfuego, instead, describes that she did not encourage the conversation, see Response ¶¶ 17(i), (iv) (citing Posttermination Hearing Reporter's Record at 89:24-25 (taken Feb. 19, 2016), filed June 27, 2018 (Doc. 125-14)("Posttermination Hearing Reporter's Record Doc. 125-14"); id., at 90:1; id. at 95:5-18); that the conversation did not interfere with others' work, see Response ¶ 17(iii) (citing Posttermination Hearing Reporter's Record Doc. 125-14 at 89:15-17); and that the comment did not constitute sexual harassment, see Response ¶ 17(ii)(citing Sinfuego Depo. Doc. 125-7 at 300:7-12). These statements describe Sinfuego's role in the conversation, but they do not controvert that Hughes told Schwebke about the conversation or that the conversation occurred. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[58]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County dismisses this fact as Sinfuego trying to "downplay" her part in the conversation. Reply at 6-7. Curry County does not, however, admit or controvert this fact. See Reply at 6-7. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

this fact)(quoting Interview of Amanda Sinfuego at 6 (taken Dec. 4, 2013), filed June 12, 2018 (Doc. 122-3) and citing Sinfuego Depo. Doc. 122-1 at 204:25-207:19).[59]  Sinfuego asked the question in a "sarcastic manner."  Response ¶ 17(v), at 9 (asserting this fact)(quoting Sinfuego Depo. Doc. 125-7 at 220:8-12).[60]  Sinfuego did not start or encourage the conversation, see Response ¶ 17(i), (iv) (asserting this fact)(citing Posttermination Hearing Reporter's Record at 89:24-25 (dated Feb. 19, 2016), filed June 27, 2018 (Doc. 125-14)("Posttermination Hearing Reporter's Record Doc. 125-14"); id., at 90:1; id. at 95:5-18),[61] and the conversation did not

---

[59]Sinfuego contends that she disputes the numbered paragraph in the Memorandum containing this fact.  See Response ¶ 18, at 10.  Sinfuego does not mention, however, the fact in the text.  See Response ¶¶ 18(i)-(vi), at 10.  In responding, Sinfuego incorporates by reference only additional facts discussed elsewhere in the text and footnotes unrelated to the fact in the text, see Response ¶ 18(i), at 10; id. ¶¶ 15(i)-(iii), at 8, and she makes additional statements, also unrelated to the fact in the text and with which Curry County disagrees, minimizing her conduct, see Response ¶ 18(iv), at 10 (citing Sinfuego Depo. Doc. 125-7 at 240:12-25; id. at 241:1-2; id. at 241:5-6); id. ¶ 18 (v), at 10 (quoting Sinfuego Depo. Doc. 125-7 at 251:13-17); id. ¶¶ 18(iii), (vi), at 10; Reply at 7.  The Court deems therefore this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[60]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County responds to this fact by contending that Sinfuego is attempting to "downplay" her actions.  Reply at 6-7.  Such a response does not controvert the fact.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[61]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit or dispute this fact.  See Reply at 6-7.  Curry County describes the fact as Sinfuego "downplay[ing]" her role in the conversation.  Reply at 6-7.  Because this statement does not contravene the alleged undisputed fact in the text, he Court accordingly deems these facts

interfere with her co-workers' work, see Response ¶ 17(iii) (asserting this fact)(citing Posttermination Hearing Reporter's Record Doc. 125-14 at 89:15-17).[62]

Hughes also informed Schwebke that Sinfuego sent Snapchat[63] images with "pictures of people drawing like [penises and balls] and stuff on it" during a "Toxic Talk"[64] employee training. See Memo. ¶ 23, at 9 (asserting this fact)(citing Interview of Dustin Hughes at 2-3 (taken Nov. 26, 2013), filed June 12, 2018 (Doc. 122-2); Sinfuego Depo. Doc. 122-1 at 210:5-7).[65]  Sinfuego

---

undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[62]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit or dispute this fact.  See Reply at 6-7.  Curry County describes the fact as Sinfuego "downplay[ing]" her role in the conversation.  Reply at 6-7.  As this statement does not contravene the alleged undisputed fact in the text, the Court accordingly deems these facts undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[63]"According to the Wikipedia entry for 'Snapchat,' the application 'is primarily used for creating multimedia messages referred to as 'snaps'; snaps can consist of a photo or short video, and can be edited to include filters and effects, text captions, and drawings.'"  Memo. at 9 n.2 (quoting Wikipedia, https://en.wikipedia.org/wiki/Snapchat (last visited June 5, 2018)).

[64]The "Toxic Talk" training was a training that Curry County provided to educate employees about recognizing "gossip, gripes and rumors" and such talk's consequences.  See Memo. at 9 n.3; Memo. ¶ 25, at 9.  Sinfuego does not respond to this description.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[65]Sinfuego purportedly disputes the numbered paragraph containing this alleged undisputed fact.  She does not, however, dispute that Hughes told Schwebke about the image or that Sinfuego took and sent the image.  See Response ¶¶ 16(i)-(ii).  Sinfuego states only that the image was small and that other co-workers laughed.  See Response ¶¶ 16(i)-(ii)(citing Sinfuego Depo. Doc. 125-7 at 231:18-22; id. at 299:1-21).  As this statement does not contravene the fact,

admitted that she took a picture of Davis and edited the picture to "draw him where [his] chair looked like a penis," and that doing so was not appropriate or acceptable.  Memo. ¶ 25, at 9 (asserting this fact)(citing Sinfuego Depo. Doc. 122-1 at 207:20-212:18).[66]  Davis laughed at the picture, and Sinfuego shared the picture with "two other co-workers who laughed."  Response ¶ 16(i), at 9 (asserting this fact)(citing Sinfuego Depo. Doc. 125-7 at 231:18-22; id. at 299:1-21).[67]

Schwebke reported the investigation to Sandoval.  See Memo. ¶ 26, at 10 (asserting this fact)(citing Memorandum from Lindsay Schwebke (dated Dec. 16, 2013), filed June 12, 2018 (Doc. 122-3)).[68]  Schwebke explained that Sinfuego admitted to the conversation with Hughes,

---

the Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[66]Sinfuego claims to dispute issues regarding the paragraph stating this fact, but she responds to this fact only by referencing additional facts previously discussed in the text and footnotes.  See Response ¶ 18(i).  Sinfuego also comments that "she did not think the drawing was a form of toxic talk."  Response ¶ 18(ii).  None of Sinfuego's contentions controvert the fact that Sinfuego admitted to creating and sending the image.  The Court deems therefore this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[67]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County responds that Sinfuego is attempting to "downplay" her actions.  See Reply at 6-7.  This response does not controvert the alleged undisputed fact.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[68]Sinfuego purportedly disputes issues regarding the paragraph containing this alleged undisputed fact, but she does not mention this fact or what the report contained.  See Response ¶¶ 19(i)-(iv).  Sinfuego, rather, discusses her characterization of her actions and the investigation, which are descriptions that Curry County genuinely disputes.  See Response ¶¶ 19(i)-(iv), at 10; id. ¶¶ 19(ii), (iii), at 10; Reply at 7.  The Court therefore deems this fact undisputed.  See

- 28 -

including stating that "'there were pubes' and 'a really long pubic hair,'" to sending the picture of

Davis, and to "show[ing] [Davis] different people and the teacher, just drawing penises and stuff

like that." See Memo. ¶ 26, at 10 (asserting this fact)(citing Memorandum from Lindsay

Schwebke at 2).[69] Schwebke's report did not discuss Yearley's statement. See Response ¶ 26(iii),

at 10 (asserting this fact)(citing Statement of Janie Yearley at 1).[70] After reviewing the report,

Sandoval sent, on December 17, 2013, Sinfuego a "Letter of Intent to Terminate Employment with

Curry County." See Memo. ¶ 27, at 10 (asserting this fact)(citing Letter of Intent to Terminate

Employment with Curry County from Tori Sandoval to Lindsay Schwebke at 1 (sent Dec. 17,

2013), filed June 12, 2018 (Doc. 122-3)("Letter of Intent to Terminate")).[71] In the letter, Sandoval

wrote:

---

D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[69]As supra note 67, Sinfuego does not argue about what Schwebke wrote in the report. The Court deems therefore this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[70]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, deny, or mention this fact. See Reply at 7. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[71]Sinfuego purportedly disputes issues regarding the paragraph containing this alleged undisputed fact. See Response ¶ 20, at 10. Sinfuego does not admit or dispute, however, that the letter was sent, and assumes that Sandoval sent the letter. See Response ¶¶ 20(i)-(iii), at 11. Accordingly, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

> After reviewing all of the facts and testimonies of these incidents and due to the seriousness of your actions, I am recommending you to be terminated from employment with Curry County. These conversations and actions are considered Sexual Harassment and will not be tolerated. You attended a Workplace Harassment Training on February 22, 2013 and signed an acknowledgment form affirming your awareness of Curry County's zero tolerance policy for Workplace Harassment.

Memo. ¶ 27, at 10 (asserting this fact)(quoting Letter of Intent to Terminate at 2).[72] Sandoval notified Sinfuego that Schwebke would contact her about a pre-determination hearing. See Memo. ¶ 27, at 10 (citing Letter of Intent to Terminate at 2-3). Sandoval based the letter solely on Schwebke's report, see Response ¶ 20(i), at 11 (asserting this fact)(citing Sandoval Depo. Doc. 125-12 at 34:9-17),[73] and used a form letter, see Response ¶ 20(ii), at 11 (asserting this

---

[72]Sinfuego purportedly disputes issues regarding the paragraph containing this alleged undisputed fact. See Response ¶ 20, at 10. Sinfuego does not, however, address the letter's contents. See Response ¶¶ 20(i)-(iii), at 11. Rather, she assumes the contents and disputes the letter's conclusions. See Response ¶¶ 20(i)-(iii), at 11. Accordingly, the Court deems this fact -- that the letter included these statements -- undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[73]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Regarding this fact, Curry County states only: "Even if accepted as true, these facts do not advance any of Plaintiff's theories of the case . . . ." Reply at 8. Curry County does not provide evidence to dispute the fact's veracity or challenge Sinfuego's evidence. See Reply at 7. The Court therefore deems that this fact is not genuinely disputed pursuant to rule 56(c)(1)(A)-(B) of the Federal Rules of Civil Procedure, which states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

fact)(citing Sandoval Depo. Doc. 125-12 at 34:20-22).[74]  Curry County also terminated Hughes'

employment on December 17, 2013.  See Memo. ¶ 28, at 10-11 (asserting this fact)(citing

Termination of Probationary Employee at 1 (Dec. 17, 2013), filed June 12, 2018 (Doc. 122-2));

Response ¶ 1, at 1 (admitting this fact).

On December 30, 2013, Sinfuego had a predetermination hearing with Pyle.  See Memo.

¶ 29, at 11 (asserting this fact)(Pre-Determination Hearing at 1, filed June 12, 2018 (Doc. 122-

---

        (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

[74]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text as undisputed facts that Sinfuego mentions in her Response.  Regarding this fact, Curry County states only: "Even if accepted as true, these facts do not advance any of Plaintiff's theories of the case . . . ."  Reply at 8.  Curry County does not provide evidence to dispute the fact's veracity or challenge Sinfuego's evidence.  See Reply at 7.  The Court therefore deems that this fact is not genuinely disputed pursuant to rule 56(c)(1)(A)-(B) of the Federal Rules of Civil Procedure, which states:

        A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

        (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

        (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

3)).[75] Sinfuego admitted that she engaged in the alleged behavior; she asked Hughes: "Do you mean like how porn stars do it?," Memo. ¶ 29-30, at 11 (asserting this fact)(quoting Pre-Determination Hearing at 10:14-21 and citing Sinfuego Depo. Doc. 122-2 at 234:6-235:23), and she "took a picture of another officer, who is a friend" and "drew penises in the picture," Memo. ¶¶ 29-30, at 11 (asserting this fact)(quoting Pre-Determination Hearing at 15:9-12 and citing Sinfuego Depo. Doc. 122-2 at 235:24-237:24).[76] Sinfuego acknowledged such behavior was inappropriate, see Memo. ¶¶ 29-30, at 11 (asserting this fact)(citing Pre-Determination Hearing at 10:22-24; id. at 16:15-16),[77] although she did not admit that she violated the Curry County sexual harassment policy, see Response ¶ 21(i) (asserting this fact)(citing Sinfuego Depo. Doc. 125-7 at

---

[75]Sinfuego disputes issues regarding the numbered paragraph containing this alleged undisputed fact. See Response ¶ 21, at 11. Sinfuego does not controvert, however, that the meeting occurred. See Response ¶¶ 21(i)-(v), at 11-12. Sinfuego, instead, disputes whether she engaged in sexual harassment. See Response ¶¶ 21(i)-(v), at 11-12. Because Sinfuego does not dispute the alleged undisputed fact in the text, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[76]Sinfuego contends that she disagrees with issues regarding the numbered paragraph in the Memo. reflecting these quotations. See Response ¶ 21, at 11; id. ¶ 22, at 12. Sinfuego, however, does not mention whether she made these admissions. See Response ¶¶ 21(i)-(v), at 11-12; id. ¶¶ 22(i)-(ii), at 12. Sinfuego, rather, references additional facts discussed in the text of the Court's opinion. See Response ¶¶ 21(i)-(v), at 11-12; id. ¶¶ 22(i)-(ii), at 12. As Sinfuego does not contravene the alleged undisputed fact in the text, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[77]Sinfuego purports to dispute issues regarding the numbered paragraph containing this fact. See Response ¶ 21, at 11; id. ¶ 22, at 12. Sinfuego does not mention, however, whether she made such an admission. See Response ¶¶ 21(i)-(v), at 11-12; id. ¶¶ 22(i)-(ii), at 12. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

57:20-25).[78]  Sinfuego admitted that she had worked at Curry Detention for three years and had

attended two training sessions in the last year.  See Memo. ¶ 31, at 11 (asserting this fact)(citing

Pre-Determination Hearing at 24:3-13).[79]

On January 7, 2014, Pyle terminated Sinfuego's employment.  See Memo. ¶ 32, at 11-12

(asserting this fact)(citing Letter from Lance Pyle to Amanda Sinfuego at 4 (dated Jan. 7, 2014),

filed June 12, 2018 (Doc. 122-4); Sinfuego Depo. Doc. 122-1 at 241:15-25; id. at 243:14-245:7).[80]

Pyle concluded:

> I have reviewed the Curry County Personnel Policy #10-03, Employee Discipline,
> and you have violated several sections including:
>
> - Failure to follow County Policies, Rules or Regulations

---

[78]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 8.  Moreover, there is nothing in the record that suggests the fact is disputed.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[79]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this alleged undisputed fact.  See Response ¶ 23, at 12.  Sinfuego does not respond, however, whether she made the admission in the text.  See Response ¶¶ 23(i)-(vi), at 12.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[80]Sinfuego purports to dispute issues regarding the numbered paragraph containing this fact.  See Response ¶ 24, at 12.  Sinfuego does not, however, respond whether Pyle sent the termination letter.  See Response ¶¶ 24(i)-(iv), at 12-13.  Sinfuego does not mention the letter.  See Response ¶¶ 24(i)-(iv), at 12-13.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

• Non-cooperation by an employee with fellow employees or other personal conduct which substantially interferes with the performance of his/her or another employee's work

• Conduct unbecoming of an employee of Curry County

• Violation of Curry County Workplace Harassment Policy

> #a. Oral or written sexual statements, comments, jokes, questions or innuendos
>
> #b. Display of sexually oriented visual items such as calendars, cartoons, photos or posters
>
> #k. Discussing their sexual preference, sexual relationships or even sexual matters seen on TV, YouTube, movies, or other formats including books and magazines

Memo. ¶ 32, at 12 (asserting this fact)(quoting Letter from Lance Pyle to Amanda Sinfuego at 3-4).[81]  Curry County Personnel Policy #10-3 entitled Sinfuego to a post-disciplinary hearing before a neutral, third party and to a District Court of the State of New Mexico's review of that hearing's decision.  See Memo. ¶ 33, at 12 (asserting this fact)(citing Curry County Personnel Policy # 10-03 at 28-32 (dated Dec. 7, 2010), filed June 12, 2018 (Doc. 122-4)); Response ¶ 1, at 1 (admitting this fact).  Sinfuego had a first pre-disciplinary hearing on February 19, 2014, with Anne Behl, a Human Resources Consultant.  See Memo. ¶ 12 n.5; Post-Disciplinary Hearing Decision -- Amanda Sinfuego at 1 (dated March 4, 2014), filed June 27, 2018 (Doc. 125-17)).[82]  Behl

---

[81]Sinfuego purports to dispute issues regarding the numbered paragraph containing this fact.  See Response ¶ 24, at 12.  Sinfuego does not discuss, however, the quotation from the letter.  See Response ¶¶ 24(i)-(iv), at 12-13.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[82]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to

determined that the November 12-13, 2013, conversation with Hughes did not constitute sexual harassment under the Curry County Personnel Policy.  See Response ¶ 24(iv), at 13 (citing Post-Disciplinary Hearing Decision -- Amanda Sinfuego at 2).[83]  When reviewing this hearing, the district court discovered that the tapes of the hearing were inaudible and remanded the matter for another determination.  See Memo. at 12 n.5.[84]

Sinfuego had her second post-disciplinary hearing on February 19, 2016, before Bruce Swingle.  See Memo. ¶ 34, at 12-13 (asserting this fact)(citing Posttermination Hearing at 1 (taken Feb. 19, 2016), filed June 12, 2018 (Doc. 122-4)("Posttermination Hearing Reporter's Record

_____

the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County mentions this hearing in a footnote, and Sinfuego does not mention this footnote.  See Memo. at 12 n.5; Response ¶¶ 25(i)-(iii), at 12-13.  Sinfuego references, however, the results from this hearing.  See Response ¶¶ 24(iv), 25 (ii) at 13.  Because both parties note that this hearing occurred, the Court concludes that the hearing occurred and the fact in the text is undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[83]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit or deny this fact.  See Reply at 9-10.  Curry County does not mention it.  See Reply at 9-10.  Moreover, there is nothing in the record that suggests that the fact is disputed.  Finally, the Court must resolve all reasonable doubts in the non-movant's favor.  See Hunt v. Cromartie, 526 U.S. at 550-55; Liberty Lobby, 477 U.S. at 255.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[84]Sinfuego purportedly disputes issues regarding the numbered paragraph to which the footnote containing this fact refers, but Sinfuego does not mention the footnote.  See Response ¶¶ 25(i)-(iii), at 12-13.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Doc. 122-4").[85]  At the hearing, Sinfuego acknowledged that "asking someone if they groomed their private parts the way porn stars do is a sexual question," see Memo ¶ 34, at 2 (asserting this fact)(quoting Posttermination Hearing Reporter's Record Doc. 122-4 at 100:13-15 and citing Posttermination Hearing Reporter's Record Doc. 122-4 at 100:16),[86] and "taking a picture and then drawing a penis on it and sending it to colleagues is displaying a sexually oriented visual item," see Memo ¶ 34, at 12 (asserting this fact)(quoting Posttermination Hearing Reporter's Record Doc. 122-4 at 102:2-5 and citing Posttermination Hearing Reporter's Record Doc. 122-4 at 102:6).[87]  Swingle affirmed Sinfuego's termination and, in his Findings of Fact and Conclusions

---

[85]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this alleged undisputed fact.  See Response ¶ 25, at 13.  Sinfuego, however, discusses only additional facts already mentioned in the text and footnotes, and she does not mention whether the hearing occurred.  See Response ¶¶ 25(i)-(iii), at 13-14.  Because the facts Sinfuego mentions do not controvert the fact in the text, the Court deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[86]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this alleged undisputed fact.  See Response ¶ 25, at 13.  Sinfuego, however, discusses only additional facts already mentioned in the text and footnotes, and she does not mention what Sinfuego said during the hearing.  See Response ¶¶ 25(i)-(iii), at 13-14.  Because the facts Sinfuego mentions do not controvert the quotation in the text, the Court deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[87]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this alleged undisputed fact.  See Response ¶ 25, at 13.  Sinfuego, however, discusses only additional facts -- facts already mentioned in the text and footnotes or with which Curry County disagrees, and she does not mention what Sinfuego said during the hearing.  See Response ¶¶ 25(i)-(iii), at 13-14; Reply at 9.  Because the facts Sinfuego mentions do not controvert the quotation in the text, the Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

of Law (dated March 4, 2016), filed June 12, 2018 (Doc. 122-4), Swingle stated his conclusions

from the hearing:

> After considering the evidence[,] the credibility of the witnesses, and the severity of Ms. Sinfuego's infractions while on duty, e.g., engaging in conversations of a sexual nature for possibly up to an hour during her shift, which prevented staff from performing their jobs; withholding or distorting relevant facts during an administrative investigation; engaging in actions that have the effect of substantially interfering with an individual's work performance, or creating an intimidating, hostile or offensive working environment, both while on shift and during a County sponsored training; and distributing pictures of a "sexual nature" to at least three coworkers, is clearly conduct unbecoming a County employee, violates the County's Workplace Harassment Policy and substantially interferes with the performance of employee duties; therefore, ample basis exists for affirmance of the termination of Ms. Sinfuego's employment with the County.

See Memo. ¶ 35, at 13 (asserting this fact)(quoting Findings of Fact and Conclusions of Law at

5).[88]  On Sinfuego's appeal, the Ninth Judicial District Court of the State of New Mexico upheld

Swingle's determination, concluding: "The decision was based on substantial evidence, was within

the Hearing Officer's authority, and in accordance with the law."  See Memo. ¶ 36, at 13 (asserting

this fact)(Sinfuego v. Bd. of Cty. Comm'rs for Curry Cty., D-905-CV-206-112, Decision & Order

on Writ of Certiorari at 5 (Ninth Judicial District Court, County of Curry, State of New Mexico),

filed in state court June 13, 2017, filed in federal court June 12, 2018 (Doc. 122-4)); Response ¶ 1,

at 1 (admitting this fact).

---

[88]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this alleged undisputed fact.  See Response ¶ 26, at 14.  Sinfuego does not, however, mention Swingle's determination.  See Response ¶ 26(i) at 14.  Because the facts Sinfuego mentions do not controvert the quotation in the text, the Court deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Sinfuego was a hard worker.  See Response ¶ 22(iii) (asserting this fact)(citing Deposition of Tori Sandoval at 11:13-16 (taken April 19, 2018), filed June 27, 2018 (Doc. 125-12)("Sandoval Depo. Doc. 125-12")),[89] and Pyle held grudges, see Response ¶ 21(iv), at 11 (asserting this fact)(citing Billy Depo. Doc. 125-11, at 170:1-21).[90]  Sinfuego observed sexually oriented items at work, see Response ¶ 18, at 10 (asserting this fact)(citing Sinfuego Depo. Doc. 125-7 at 293:20-25),[91] and she engaged in "crude humor" "to get through the day," see Response ¶ 18(iv), at 10 (asserting this fact)(quoting Sinfuego Depo. Doc. 125-7 at 240:19-20 and citing Sinfuego Depo.

---

[89]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 8.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[90]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 8.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[91]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 8.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Doc. 125-7 at 240:12-25; id. at 241:1-2; id. at 241:5-6).[92]  Curry Detention employees heard bad

language while on the job, see Response ¶ 20(iv), at 11 (asserting this fact)(citing Sandoval Depo.

Doc. 125-12, at 53:21-25; id. at 54:1-9),[93] and banter like that in which Sinfuego participated was

---

[92]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Regarding this fact, Curry County states only: "[E]ven if true, these facts do not excuse Plaintiff's own misconduct in sending picture [sic] of a penis to her coworkers during mandatory employee training being provided by Curry County."  Reply at 8.  Curry County does not provide evidence to dispute the fact's veracity or challenge Sinfuego's evidence.  See Reply at 8.  The Court therefore deems that this fact is not genuinely disputed pursuant to rule 56(c)(1)(A)-(B) of the Federal Rules of Civil Procedure, which states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

[93]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response.  Curry County does not admit, deny, or mention this fact.  See Reply at 8.  Moreover, there is nothing in the record that suggests that the fact is disputed.  The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

common, see Response ¶ 21(iii) (asserting this fact)(citing Billy Depo. Doc. 125-11 at 129:7-10).[94]

Hughes came to work intoxicated, grabbed a female officer, and swore at Sinfuego and co-workers.

See Response ¶ 27(vi), at 14-15 (asserting this fact)(citing Sinfuego Depo. Doc. 125-7 at 261:24-

25; id. at 262:7-14). Sandoval knew that Borjas had a relationship with an inmate, see Response

¶ 27(xi), at 15 (asserting this fact)(citing Sandoval. Depo. Doc. 125-12 at 56:2-7).[95] No one

complained that Sinfuego's conduct created an offensive or hostile work environment, see

Response ¶ 19(iv), at 10 (citing Sandoval Depo. Doc. 125-12 at 52:1-3; id. at 42:6-10),[96] or

---

[94]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit or dispute this fact's veracity. See Reply at 10-11. Curry County focuses on whether Pyle or Sandoval knew about this fact. See Reply at 10-11. This argument does not contravene the alleged undisputed fact in the text. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[95]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, deny, or mention this fact. See Reply at 7. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems this fact undisputed. See D.N.M-LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[96]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, deny, or mention this fact. See Reply at 7. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems this fact undisputed.

considered her conduct as creating a "hostile, intimidating or offensive work environment," Response ¶ 20(iii), at 11 (asserting this fact)(citing Sandoval Depo. Doc. 125-12 at 50:12-16).[97] When Pyle asked Sinfuego what she thought a fair punishment would be, she replied: "[S]ince there is no prior sexual harassment charges against me, no one has put any harassment charges against me, written, anything, where I have done anything in poor conduct prior to this, I believe it should be a write-up." Memo. ¶ 31, at 11 (asserting this fact)(quoting Pre-Determination Hearing at 23:10-14).[98] Curry County re-hired Richard Benavidez as a lieutenant and, after hiring him, discovered that, during his first period working at Curry Detention, he had stored pornographic material in his locker. See Response ¶ 23(iv), at 12 (asserting that Curry County hired Benavidez)(citing Sandoval Depo. Doc. 125-12 at 59:10-25); Reply at 8 (asserting that Curry

See D.N.M-LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[97]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, deny, or mention this fact. See Reply at 8. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems this fact undisputed. See D.N.M.-LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[98]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this quotation. See Response ¶ 23, at 12. Sinfuego does not, however, respond whether she made the statement in the text. See Response ¶¶ 23(i-vi), at 12. Moreover, there is nothing in the record that suggests that the fact is disputed in any way. The Court therefore deems this fact undisputed. See D.N.M.-LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

County learned about the pornographic material after hiring Benavidez).[99] "One question or comment made during someone else's lengthy discussion of sexual hygiene and activity does not meet the definition of sexual harassment in the Curry County Personnel Policy." Response ¶ 21(i), at 11 (asserting this fact)(citing Sinfuego Depo. Doc. 125-7, at 300:7-12; Billy Depo. Doc. 125-11 at 167:18-25; id. at 168:2-3; id. at 168:7-8).[100] Billy believed that management should have told Sinfuego "we don't do that" and not written her up for the behavior. See Response ¶ 21(iii), at 11 (asserting this fact)(citing Billy Depo. Doc. 125-11 at 129:11-24).[101] Curry County's policies

---

[99]Sinfuego states in her Response: "Richard Benavidez was re-hired as a Captain despite having been previously fired from the Detention Center for having pornographic materials in his locker." Response ¶ 20(iv), at 12. Sinfuego cites no evidence in the record for her statement, and the Court has not seen evidence in the record supporting her assertion. Curry County clarifies that Sandoval learned about the materials after hiring Benavidez, and the record to which Sinfuego cites reflects Curry County's clarification. See Reply at 8-9; Sandoval Depo. Doc. 125-12 at 59:10-25. Accordingly, the Court deems the fact to be as stated in the text and to be undisputed.

[100]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit, deny, or mention this fact. See Reply at 7. Moreover, there is nothing in the record that suggests that the fact is disputed. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[101]Curry County neither admits nor denies this fact; instead, Curry County states: "Rather than controvert these indisputable facts, Plaintiff highlights Mr. Billy's personal and irrelevant opinion that Plaintiff should not have been written up for her transgressions." Reply at 8. "The Court has previously held that a 'relevance argument similarly does not dispute the fact' and that 'relevance is a legal argument that is best left for the Analysis Section' of this opinion." Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, No. CIV 16-0127 JB/JHR, 2018 WL 3210531, at *1 (D.N.M. June 29, 2018)(Browning, J.)(quoting S.E.C. v. Goldstone, No. CIV 12-0257, 2015 WL 5138242, at *27 n.95 (D.N.M. Aug. 22, 2015)(Browning, J.)). Because Curry County does not controvert the fact, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All

prohibited retaliation for reporting harassment, and retaliation for such reports "was a ground for disciplinary action." Response ¶ 24(iii), at 13 (asserting this fact)(citing Sandoval Depo. Doc. 125-12 at 50:22-25; id. at 51:1-7).[102]

Sinfuego believed "As long as you were good with [Sandoval], as long as you were good with certain people, you can get away scot-free." Response ¶ 27(vii) (asserting this fact)(quoting Sinfuego Depo. Doc. 125-7 at 265:10-13).[103] Curry Detention had crowding and understaffing problems. See Response ¶ 27(x), at 15 (asserting this fact)(citing Sandoval Depo. Doc. 125-12 at

---

material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[102]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit or deny this fact. See Reply at 9. Curry County does not mention it. See Reply at 9. Moreover, there is nothing in the record that suggests that the fact is disputed. Finally, the Court must resolve all reasonable doubts in the non-movant's favor. See Hunt v. Cromartie, 526 U.S. at 550-55; Liberty Lobby, 477 U.S. at 255. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[103]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response. The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit or deny this fact. See Reply at 10-11. Curry County does not mention it. See Reply at 10-11. Moreover, there is nothing in the record that suggests that the fact is disputed. Finally, the Court must resolve all reasonable doubts in the non-movant's favor. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255. The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

18:8-21).[104]  Everyone knew about the bad conditions at the jail and complained about them.  See

Memo. ¶ 38, at 14 (asserting this fact)(citing Sinfuego Depo. Doc. 122-2 at 81:13-89:9; id. at

272:18-274:24).[105]  An anonymous letter was sent asking "why are things not getting done."

Response ¶ 27(iv), at 14 (asserting this fact)(citing Sinfuego Depo. Doc. 122-2 at 90:15-24).[106]

Sinfuego did not speak with Sandoval about safety and sanitation issues at Curry Detention;

Sinfuego spoke with Pyle once, at the December 3, 2012, meeting about conditions at Curry

Detention; and no sergeants with whom Sinfuego discussed such matters passed Sinfuego's

concerns on to Sandoval or to Pyle.  See Memo. ¶ 39, at 15 (asserting this fact)(citing Sinfuego

---

[104]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this quotation.  See Response ¶ 27, at 14-15.  Sinfuego does not respond, however, to the alleged undisputed fact in the text.  See Response ¶¶ 27(i)-(xii), at 14-15.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[105]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this quotation.  See Response ¶ 27.  Sinfuego does not respond, however, to the alleged undisputed fact in the text.  See Response ¶¶ 27(i)-(xii), at 14-15.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[106]While Sinfuego, pursuant to D.N.M.LR-Civ. 56.1(b), includes a section stating additional facts, she scatters additional facts throughout her Response.  The Court wants to be fair to Sinfuego in including the facts that she deems relevant, but the Court must also be careful in adding facts to the text of the Court's opinion as undisputed facts that Sinfuego mentions in her Response. Curry County does not admit or deny this fact.  See Reply at 10-11.  Curry County does not mention it.  See Reply at 10-11.  Moreover, there is nothing in the record that suggests that the fact is disputed.  Finally, the Court must resolve all reasonable doubts in the non-movant's favor. See Hunt v. Cromartie, 526 U.S. at 550-55; Liberty Lobby, 477 U.S. at 255.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Depo. Doc. 122-2 at 89:10-94:5).[107]  Sinfuego did not speak to Billy about conditions at Curry

Detention.  See Memo. ¶ 39, at 14 (asserting this fact)(citing Billy Depo. Doc. 122-2 at 38:518; id.

at 39:4-14).[108]

## PROCEDURAL BACKGROUND

Sinfuego filed suit in the United States District Court for the District of New Mexico,

alleging: (i) in Count I, that pursuant to 42 U.S.C. § 1983, the Defendants violated her First

Amendment freedom-of-speech rights; (ii) in Count II, that pursuant to § 1983, the Defendants

violated her First Amendment right to freely associate; (iii) in Count III, that pursuant to § 1983,

the Defendants violated her First Amendment right to petition for the redress of grievances; and

(iv) in Count IV, that the Defendants retaliated against her in violation of the NMWPA.  See Civil

Complaint for Violation of Civil Rights and the Whistleblower Protection Act, Sinfuego v. Curry

Cty. Bd. of Cty. Comm'rs, No. CIV 15-0563 JB/GF, filed July 1, 2015 (Doc. 1)("Complaint").

---

[107]Sinfuego states that Sinfuego "spoke to [Pyle] about the conditions in the jail at least once."  Response ¶ 27(iii) (asserting this fact)(citing Sinfuego Depo. Doc. 125-7 at 83:11-19). Curry County notes that Sinfuego cites testimony about the December 3, 2012, meeting.  See Reply at 10.  Because the parties differ only in language about the meeting, the Court deems the fact that they discussed conditions in the jail in the meeting with Pyle undisputed.  Regarding the other alleged undisputed facts in the text, Sinfuego purportedly disputes issues regarding the numbered paragraph containing this quotation.  See Response ¶ 28.  Sinfuego does not, however, respond to the alleged undisputed fact in the text.  See Response ¶ 28(i), at 16; id. ¶¶ 27(i)-(xii), at 14-15. Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[108]Sinfuego purportedly disputes issues regarding the numbered paragraph containing this quotation.  See Response ¶ 27.  Sinfuego does not respond, however, to the alleged undisputed fact in the text.  See Response ¶¶ 27(i)-(xii), at 14-15.  Moreover, there is nothing in the record that suggests that the fact is disputed in any way.  The Court therefore deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Sinfuego and the Defendants agreed to voluntarily dismiss Sandoval from the case on September 19, 2016. See Stipulated Voluntary Dismissal with Prejudice of all Claims against Defendant Tori Sandoval, filed September 19, 2016 (Doc. 53). The parties also stipulated to dismissal of Sinfuego's claims against Pyle in his official capacity. See Stipulation of Voluntary Dismissal of Claims Against Defendant Lance Pyle in His Official Capacity at 1, filed November 4, 2016 (Doc. 65). Pyle moved for summary judgment and to dismiss the case on qualified-immunity grounds on November 28, 2016. See Defendant Lance Pyle's Motion for Summary Judgment and Qualified Immunity, filed November 28, 2016 (Doc. 69)("Summary Judgment Motion"). Pyle argued that he was entitled to summary judgment, because Sinfuego failed to demonstrate that he violated her First Amendment rights, because his only involvement in her termination was to confirm the termination recommendation, and because the conversation between himself and Sinfuego pertaining to her union activity took place over one year before her termination. See Summary Judgment Motion at 8-9. On February 14, 2017, the Honorable Carmen E. Garza, United States Magistrate Judge for the District of New Mexico, granted the Summary Judgment Motion and dismissed with prejudice all claims against Pyle in his individual capacity. See Memorandum Opinion and Order at 1, 29, 2017 WL 3503380 at *1, *13, filed February 14, 2017 (Doc. 85)("First MOO").

1.    **The Motion and the Memo.**

On June 12, 2018, Curry County moved for summary judgment, requesting that the Court dismiss with prejudice all claims Sinfuego brings. See Motion at 1. As grounds for its Motion for Summary Judgment, Curry County states that Sinfuego "cannot raise any genuine issue of material fact on any of her First Amendment retaliation claims" or on her NMWPA claim. Motion at 1-2.

Pursuant to D.N.M.LR-Civ. 56.1(b), Curry County files a written memorandum to support its motion.  See Memo. at 1.

Regarding Sinfuego's § 1983 claims, Curry County asserts that they all fail as a matter of law.  See Memo. at 15-16.  Curry County cites the test developed from Garcetti v. Ceballos, 547 U.S. 410, 421-26 (2006), and Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 566-67 (1968)("Pickering")(the "Garcetti/Pickering test"), which the United States Court of Appeals for the Tenth Circuit adopted for First Amendment retaliation claims.  See Memo. at 16. Curry County argues that Sinfuego's claims fail under the Garcetti/Pickering test, as her allegedly protected-speech events are not matters of public concern.  See Memo. at 17-19.  Specifically, Curry County argues that the December 6, 2012, text message is not de facto protected speech just because it pertains to union activity.  See Memo. at 18.  Curry County argues that speech is not automatically a matter of public concern because it is union related.  See Memo. at 18.  Curry County argues that Counts I and III fail, accordingly, as a matter of law.  See Memo. at 19.

Curry County then argues that Sinfuego's claims also fail under the Garcetti/Pickering test's fourth step.  See Memo. at 19-23.  The Garcetti/Pickering test's fourth step requires that the plaintiff show that the allegedly protected activity was a "substantial factor or motivating factor in a detrimental employment decision."  Memo. at 19 (citing Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007)).  In a footnote, Curry County opposes Sinfuego's description of any action short of termination as an "adverse employment action."  Memo. at 20 n.8.  Curry County argues that, while Sandoval allegedly retaliated against Sinfuego, Sandoval could not have known of Sinfuego's allegedly protected activities -- the December 6, 2012, text message -- at the time that she moved to terminate Sinfuego.  See Memo. at 20.  Regarding

Sinfuego's theory of retaliation based on her expressed concerns about the facility's conditions, Curry County argues that Sinfuego has not shown any evidence that Pyle or Sandoval were aware of her statements. See Memo. at 20. Finally, Curry County points to the more than one-year gap between Sinfuego's allegedly protected activities in December, 2012, and her termination in January, 2014, as evidence that retaliation did not motivate her termination. See Memo. at 21-22. Because of these considerations, Curry County argues that Counts I through III fail as a matter of law. See Memo. at 23.

Turning to the Garcetti/Pickering test's fifth step, Curry County argues that the Court should grant summary judgment under each of Sinfuego's First Amendment retaliation claims. See Memo. at 23-25. Curry County argues that the Garcetti/Pickering test's fifth step puts the burden of proof on the defendant, who must show that it would have reached the same employment decision in the protected activity's absence. See Memo. at 23 (citing Trant v. Oklahoma, 754 F.3d 1158, 1167 (10th Cir. 2014)). Curry County argues that Sinfuego "does not dispute that she engaged in the misconduct for which she was terminated." Memo. at 23. Curry County quotes Magistrate Judge Garza's First MOO, which states: "It was entirely appropriate for [Curry County] to take action against Plaintiff once they determined that she violated the sexual harassment policy." Memo. at 24. Curry County argues that, because Sinfuego's admitted misconduct alone justifies the termination of her employment, the Court should grant summary judgment on Counts I through III. See Memo. at 24.

Curry County concludes its argument pertaining to Sinfuego's First Amendment claims by stating that Sinfuego's claims fail to establish municipal liability. See Memo. at 25-27. According to Curry County, the Tenth Circuit, in Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006),

establishes a two-prong test for municipal liability; the plaintiff must show: (i) "the existence of a municipal policy or custom" and (ii) "a direct causal link between the policy or custom and the injury alleged." Memo. at 25. As to the first prong, Curry County argues that Sinfuego has never identified any "formal regulation or policy" of "retaliation against individuals involved in collective bargaining." Memo. at 26. Further, Curry County states that Sinfuego cannot establish through evidence that there are sufficient incidents to constitute a "custom," which would be identified through "persistent and widespread . . . practices of [local government] officials." Memo. at 26 (internal quotation marks omitted)(quoting Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996)). Curry County argues that, at most, Sinfuego can point to her own termination and may potentially argue that Billy's termination resulted from Curry County's retaliation. See Memo. at 26. Curry County argues that, even if Curry County concedes these two incidents, they do not rise to the level of a "widespread practice or custom." Memo. at 27. Curry County acknowledges that the Tenth Circuit has not set a threshold for the number of incidents to prove the existence of a custom, but it points to other Courts of Appeals that have noted, at a minimum, that two incidents are not sufficient. See Memo. at 27.

Regarding Count IV of Sinfuego's Complaint, Curry County also argues that Sinfuego cannot, as a matter of law, prevail on her NMWPA argument. See Memo. at 27-34. According to Curry County, Count IV alleges that Curry County violated the NMWPA when it terminated Sinfuego's employment in retaliation for her whistleblowing communications. See Memo. at 27. Curry County argues that Sinfuego cannot show that any of her union-related activities constitute "whistleblowing activities," that, when the decision was made to terminate Sinfuego, Sandoval and Pyle were aware of any of Sinfuego's concerns regarding conditions at Curry Detention, and

that Curry County had a legitimate, non-retaliatory reason to terminate Sinfuego's employment. <u>See</u> Memo. at 27-34.

        **2.**        **<u>The Response</u>.**

        Sinfuego responded to the Motion on June 27, 2018. <u>See</u> Response at 1. Sinfuego argues that there are outstanding issues of material fact that preclude granting the Motion. <u>See</u> Response at 16-27. Specifically, Sinfuego argues that her "unionization efforts and her immediate demotion after Mr. Billy was terminated present a question of fact for the jury." Response at 17.

        Regarding her unionization efforts, Sinfuego argues that, contrary to Curry County's assertions, her speech activities were a matter of public concern. <u>See</u> Response at 19-20. Sinfuego specifically points to her December 6, 2012, text message as protected speech, as "informing other officers that the County Manager was attempting to illegally intimidate and retaliate against the Detention officers is a matter of public concern and protected by law." Response at 19. Sinfuego cites the Tenth Circuit, which states that "[t]he First Amendment protects the right of a public employee to join and participate in a labor union." Response at 20 (quoting <u>Cillo v. City of Greenwood Vill.</u>, 739 F.3d 451, 460 (10th Cir. 2013)).

        As to Curry County's argument that Curry County could not have retaliated against Sinfuego, because Sandoval was unaware of Sinfuego's union-related activities, Sinfuego argues that Sandoval worked in close proximity to Pyle, and it would not, therefore, be possible for Sandoval to have been unaware of Sinfuego's activities. <u>See</u> Response at 21. Sinfuego states that Sandoval was Pyle's "snitch" against Billy and that Sandoval was rewarded with Billy's job after Billy was terminated. <u>See</u> Response at 21. Regarding Sinfuego's expression of concerns at Curry Detention, Sinfuego argues that she voiced her concerns to Pyle at the December 3, 2012, meeting.

See Response at 21-22. Based on these facts, Sinfuego argues that Pyle and Sandoval knew of her concerns about conditions at Curry Detention. See Response at 21.

Regarding Curry County's argument that the amount of time between the December 6, 2012, text message and her eventual termination in January, 2014, counsels against a retaliatory motive on Curry County's part, Sinfuego argues that she suffered retaliatory behavior well before her termination. See Response at 22. Sinfuego highlights that she was moved to the "midnight" shift, that she had her seniority and other duties "stripped" from her, and that she was removed from S.O.R.T. as examples of the retaliation that she suffered in response to her union-related activities. See Response at 22.

As to Curry County's argument that Sinfuego's termination was appropriate because she violated the Curry County sexual harassment policy, Sinfuego argues that her actions do not amount to violations of the Curry County sexual harassment policy. See Response at 24-25. Sinfuego disputes Curry County's allegation that she "admitted on multiple occasions that she asked a male coworker whether he groomed his genitals 'like how porn stars do it.'" Response at 25 (quoting Memo. at 23). Sinfuego argues that "one comment or question made during someone else's lengthy discussion of sexual hygiene [as] an activity is not sexual harassment." Response at 25. Sinfuego argues that her comment did not "interfere with anyone's ability to do their job[s]" and that her action does not, therefore, rise to the level of sexual harassment. Response at 25. Similarly, Sinfuego argues that her actions at the "Toxic Talk" training did not create an "intimidating work environment" and that none of her coworkers complained about the picture message that she sent during the "Toxic Talk" training. Response at 25. Sinfuego then highlights

other incidents of sexual conduct to argue that Curry County only selectively enforces the Curry County sexual harassment policy. See Response at 27-8.

### 3. **The Reply**.

Curry County replied on July 13, 2018. See Reply at 1. Curry County argues that Sinfuego's behavior warranted termination, because she violated the Curry County sexual harassment policy when she participated in an inappropriate workplace conversation and when she disseminated images depicting penises. See Reply at 1. Curry County reiterates its argument that neither Sinfuego's participation in the December 3, 2012, meeting, nor the December 6, 2012, text message, constitute matters of public concern, and both fall short of the Garcetti/Pickering test's requirement. See Reply at 12-13. Curry County contends that Sinfuego's argument that Pyle engaged in "illegal" behavior when he offered to meet with individual officers regarding the formation of a union was, at best, a reckless statement undeserving of First Amendment protection. Reply at 13. Curry County argues that New Mexico law does not prohibit Pyle from offering to meet with Curry Officers, and that Sinfuego's text message was therefore a "deliberately or recklessly false statement." Reply at 14.

Curry County then argues that Sinfuego has failed to show that either her participation in the December 3, 2012, meeting or her sending the December 6, 2012, text message was a "substantial" or "motivating" factor in her termination. Reply at 14 (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1203). Curry County cites the Sandoval Deposition, arguing that Sandoval stated that she was unaware of Sinfuego's union-related activities until Sinfuego initiated the current suit. See Reply at 14-15. Further, Curry County argues that, if

Sinfuego cannot prove Sandoval's knowledge, Sinfuego also cannot prove her contention that she began to suffer adverse actions at work shortly after the December, 2012, events. See Reply at 15.

Additionally, Curry County reasserts its contention that Sinfuego would have been terminated for her misconduct, regardless of any alleged retaliatory motive on Curry County's part. See Reply at 16. Curry County reiterates Sinfuego's acknowledgement that she took part in an inappropriate workplace conversation, and her admission that she drew penises on a picture and then sent it via Snapchat to three coworkers. See Reply at 17. Regarding Sinfuego's contention that her actions do not rise to the level of "actionable" sexual harassment, Curry County cites the Tenth Circuit, which has asserted that employers have an "interest in eliminating the appearance of impropriety" and do not have to forego taking action until the misconduct has risen to the level of "actionable." Reply at 17 (citing Trant v. Oklahoma, 754 F.3d at 1167). Finally, as to Sinfuego's allegations in her Response pertaining to other alleged incidents of sexual harassment, Curry County argues that there is zero evidence that Pyle or Sandoval were aware of any of the other incidents to which Sinfuego alludes. See Reply at 19. Additionally, Curry County asserts that Sinfuego has failed to establish the facts required for municipal liability. See Reply at 19. Curry County asserts that Sinfuego has not identified a formal Curry County policy, nor has she established a pattern that could conceivably be viewed as a "custom" to establish municipal liability. Reply at 19-20.

As to Sinfuego's NMWPA claim, Curry County reiterates that she cannot succeed as a matter of law. See Reply at 20. Regarding the December 6, 2012, text message, Curry County asserts that the allegation in the December 6, 2012, text message is unfounded, as Sinfuego has presented no evidence to support an inference that Pyle was offering to meet with officers for an

unlawful purpose.  See Reply at 21.  Curry County argues that, because Sinfuego lacks evidence that Pyle was attempting to violate the law, her message should not be afforded "whistleblower" protection.  Reply at 21.  Curry County further argues that Sinfuego does not establish any "causal connection" between the alleged "whistleblowing" activity and her employment termination.  Reply at 21.  Curry County reiterates that Sinfuego has not presented any evidence to show that Sandoval, who Sinfuego alleges carried out the retaliatory behavior, had any knowledge of Sinfuego's alleged "whistleblowing" activities.  Reply at 21.  Finally, Curry County asserts that it has proven Sinfuego engaged in behavior that warrants her employment termination, as Sinfuego admitted to engaging in misconduct in the workplace.  See Reply at 22.  Curry County asserts that, because Curry County has proven Sinfuego's misconduct, it should prevail on its affirmative defense.  See Reply at 22.

### 4.    The Hearing.

The Court held a hearing on the Motion on September 25, 2018.  See Draft Transcript of Hearing at 1 (taken September 25, 2018)(Court)("Tr.").[109]  The Court expressed its reservations that, because of the Garcetti/Pickering test, Sinfuego would have difficulty prevailing on her First-Amendment claims.  Tr. at 3:2-6 (Court).  Curry County summarized its understanding of the Garcetti/Pickering test.  See Tr. at 11:1-12:2 (Smith).  Curry County stated that Sinfuego's First Amendment retaliation claims fail at the Garcetti/Pickering test's second prong, as she cannot demonstrate that her alleged speech activities are matters of public concern.  See Tr. at 12:22-25 (Smith).  Curry County cited Torres v. Pueblo Board of County Commissioners, 229 F.3d 1165,

_____

[109]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

2000 WL 1346347 (10th Cir. 2000)(unpublished table opinion), in which the Tenth Circuit concluded that union-related speech is not a public concern merely because it touches union activity. See Tr. at 14:15-23 (Smith).

Curry County next argued that Sinfuego's claims fail, because she cannot prove that her allegedly protected activity was a substantial or motivating factor in a detrimental employment decision. See Tr. at 15:3-11 (Smith). Curry County asserted that Sinfuego cannot demonstrate that Sandoval had any knowledge of Sinfuego's union-related activity when Sandoval decided to terminate Sinfuego's employment. See Tr. at 16:14-16 (Smith). Curry County pointed to the Sandoval Deposition, in which Sandoval was asked "a series of questions by plaintiff['s] counsel in which she had . . . no knowledge of any union related activities that Ms. [Sinfuego] was engaged in . . . prior to the lawsuit being filed." Tr. at 16:16-22 (Smith). Further, Curry County acknowledged that Pyle had knowledge of Sinfuego's union-related activities, but that no evidence suggests that, before the termination, he was involved in any employment decisions regarding Sinfuego. See Tr. at 17:4-10 (Smith). Curry County argued that, as to Sinfuego's termination, the significant gap in time between Sinfuego's union-related activities and her termination precludes an inference that she was terminated for her union-related activities. See Tr. at 18:11-19 (Smith).

Regarding Sinfuego's allegations that Curry County terminated Sinfuego for activities in which other employees had engaged without suffering adverse employment decisions, Curry County attacked Sinfuego's evidence as hearsay and inadmissible. See Tr. at 19:4-16 (Smith). Further, Curry County asserted that Sinfuego cannot establish that Pyle or Sandoval had any knowledge of these alleged events. See Tr. at 19:20-20:6 (Smith).

As to Sinfuego's theory of retaliation based on the expression of her concerns regarding conditions at the Curry Detention, Curry County asserted that Sinfuego admitted in the Sinfuego Deposition that she had addressed her concerns to her immediate supervisors, but that she did not express these concerns either to Pyle or to Sandoval. See Tr. at 21:5-19 (Smith). According to Curry County, Sinfuego only can speculate whether her concerns were passed to Pyle or to Sandoval, and speculation, Curry County noted, is not sufficient to defeat summary judgment. See Tr. at 21:19-22:6 (Smith). Curry County asserted that Sinfuego lacks any evidence that Pyle or Sandoval moved to terminate her employment based on knowledge that Sinfuego had expressed these concerns. See Tr. at 22:3-6 (Smith).

Finally, Curry County argued that it can show by a preponderance of the evidence that it would have made the same adverse employment decision regardless of any alleged union-related activities, because Sinfuego engaged in behavior that violated the Curry County sexual harassment policy. See Tr. at 23:1-7 (Smith). Curry County argued that Sinfuego's contention that her actions do not rise to an "actionable level" fail, as the Tenth Circuit has held that "boorish behavior in the workplace can justify terminat[ion]." Tr. at 23:9-10 (Smith). Regarding the theory of municipal liability, Curry County asserted that Sinfuego cannot establish that there was a custom or policy of Curry County's to retaliate against employees who engaged in union-related activities. See Tr. at 25:20-23 (Smith).

Sinfuego responded, referencing Billy v. Curry County Board of Commissioners, in which Bobbie Sandoval, a Curry County Commissioner, testified that in December, 2012, that he was aware that Pyle was "upset with Mrs. Sinfuego's activities." Tr. at 28:21-29:3 (Dixon). Further, Sinfuego pointed to the fact that Curry County fired Billy at the same time that Curry County

moved Sinfuego to the midnight shift, despite Sinfuego having more seniority than a majority of her coworkers. See Tr. at 29:10-13 (Dixon).

Sinfuego asserted that, on the night of November 12, 2012, after exiting the restroom at Curry Detention, she exclaimed that the facility was dirty and inquired as to pubic hair on the toilet. See Tr. at 32:11-13 (Dixon). Then, according to Sinfuego, Hughes launched into a "rather lengthy discussion regarding his sexual hygiene," and Sinfuego states that she replied "that is too much information," and, according to Sinfuego, Yearley's statement confirms this conversation. Tr. at 31:16-18 (Dixon). Sinfuego then asserted that Curry County sought to justify its retaliatory behavior by citing violations of the Curry County sexual harassment policy, yet, according to Sinfuego, Curry County selectively enforced the Curry County sexual harassment policy. See Tr. at 33:14-18 (Dixon). Sinfuego argued that Curry County's action in terminating her is not in line with Title VII of the Civil Rights Act of 1964's, Pub. L. 88-352, 78 Stat. 241 (1964)("Title VII"), requirements, and that Curry County did not adhere to the Curry County sexual harassment policy when it took adverse employment action against her. See Tr. at 35:1-36:2 (Dixon).

In addition, Sinfuego asserts that Billy v. Curry County Board of Commissioners' jury findings establish that Curry County engaged in a custom of retaliating against individuals who engaged in union-related activities. See Tr. at 37:3-7 (Dixon). Sinfuego asserts that in Billy v. Curry County Board of Commissioners, the jury found that Curry County retaliated against Billy and terminated him in retaliation for not disciplining Sinfuego after she engaged in her union-related activities. See Tr. at 36:21-24 (Dixon). Sinfuego argued that these findings show that "there are issues of material fact that prevent this matter from being decided on summary judgment." Tr. at 37:5-7 (Dixon).

In response to Sinfuego's contention that Curry County retaliated against her for engaging in behavior for which it did not punish other employees, Curry County cited the Tenth Circuit case Adams v. American Guarantee and Liability Insurance, 233 F.3d 1242 (10th Cir. 2000), which holds that, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*." Tr. at 39:5-17 (Smith)(emphasis in original) (quoting Adams v. Am. Guar. & Liab. Ins., 233 F.3d at 1246). Curry County asserted that the majority of Sinfuego's evidence regarding other employees is inadmissible hearsay and that, therefore, Sinfuego cannot use the evidence at the summary judgment stage. See Tr. at 39:16-22 (Smith). Further, according to Curry County, in the Sinfuego Deposition, when asked about other employees and Curry County not disciplining them for engaging in similar behavior, Sinfuego confirmed that she was not aware whether Pyle or Sandoval had knowledge of these allegations, or if either was ever apprised of the behavior. See Tr. at 40:17-41:5 (Dixon).

Curry County moved to the NMWPA claims, stating: "Here, the plaintiff's [NM]WPA claims are the same as her First Amendment retaliation theories, she alleges that she was retaliated against for participating in union activity and for reporting safety concerns or conditions of the detention center to her lieutenants and sergeants at the detention center." Tr. at 42:22-43:3 (Smith). Specifically, Curry County stated that Sinfuego contends that, when Sinfuego sent the December 6, 2012, text message, she engaged in "reporting a violation of federal or state law," because the New Mexico Public Employees Bargaining Act, N.M. Stat. Ann. §§10-7E-1 to -26, "grants public employees the right to form a union without interference, restraint, or coercion" and Sinfuego was reporting a violation of this right. Tr. at 45:5-7 (Smith)(citing N.M. Stat. Ann. § 10-7E-5). Curry County asserted that Sinfuego's allegations regarding Pyle are without merit, as Pyle's activities

do not violate any New Mexico statute, and that Pyle was free to offer to meet individually with officers before the union's certification. See Tr. at 45:18-21 (Smith). Curry County asserted that no union had been certified by December 6, 2012. See Tr. at 46:5-6 (Smith). According to Curry County, Sinfuego, therefore, was not engaged in "reporting or communicating anything that would be a violation of the law." Tr. at 46:20-21 (Smith).

As to Sinfuego's contention that she suffered retaliation for reporting on unsafe conditions at Curry Detention, Curry County argued that this argument is without merit, because Sinfuego cannot prove that Pyle or Sandoval had any knowledge of her communications, and therefore could not have retaliated against her for something of which they were not aware. See Tr. at 47:6-12 (Smith). In response to the Court's inquiry about the "cat's paw theory,"[110] Tr. at 48:17-18 (Court), Curry County stated that no evidence suggests that Pyle or Sandoval relied on a subordinate's recommendation when terminating Sinfuego. See Tr. at 49:17-50:16 (Smith). Curry County concluded its argument regarding the NMWPA by raising Sinfuego's misconduct as an affirmative defense. See Tr. at 50:7-10 (Smith). Curry County compared this affirmative defense to the Garcetti/Pickering test's fifth step, and the NMWPA explicitly allows for an employer to raise this affirmative defense. See Tr. at 49:19-25 (Smith).

---

[110]The "[c]at's paw doctrine" is a theory "whereby an employer may be liable for the acts of a biased subordinate, even if that subordinate is not the formal decisionmaker." Equal Emp't Opportunity Comm'n v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 482 (10th Cir. 2006). "A necessary element to the cat's paw theory is that the decisionmaker uncritically relied on the facts provided by the supervisor." See Walton v. N.M. State Land Office, 113 F. Supp. 3d 1178, 1198 (D.N.M. 2015)(Browning, J.). The cat's paw theory requires that the party demonstrate that the non-decisionmaker exercise "such singular influence" over the decisionmaker that the decisionmaker's decision to take action is the product of "blind reliance." Walton v. N.M. State Land Office, 113 F. Supp. 3d at 1199 (citing Staub v. Proctor Hosp., 562 U.S. 411, 416 (2011)).

Sinfuego returned to arguing about the Garcetti/Pickering test's public-concern requirement for her First Amendment retaliation claims. See Tr. at 51:21-23 (Dixon). First, Sinfuego noted that her November 14, 2013, complaint about Hughes' sexual comments touched a public concern. See Tr. at 51:21-52:3 (Dixon). Second, Sinfuego pointed to the December 6, 2012, text message and disputed Curry County's understanding of what § 10-7E-5 allows. See Tr. at 52:4-16 (Dixon). Sinfuego asserted that "Mr. Pyle was against the union and wanted [t]o tell everybody or to attempt to scare everybody into not unionizing." Tr. at 52:14-16 (Dixon). Finally, Sinfuego pointed to the Petition from Curry Officers to Sandoval as another protected activity in which Sinfuego engaged. See Tr. at 51:22-52:4 (Dixon).

In Curry County's response, it argued that the Petition from Curry Officers to Sandoval is an undated letter that thirty detention officers signed, and does not fall within the protected "whistleblowing activity" that the NMWPA protects, and that this moment was the first instance in which Sinfuego had raised this point in the course of the suit. See Tr. at 53:1-15 (Smith). In addition, Curry County asserted that, before the hearing, Sinfuego had not raised her contention that Curry County retaliated against for her complaint about Hughes' sexual comments. See Tr. at 53:16-19 (Smith).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M.

2013)(Browning, J.)(quoting <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991)). <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)("<u>Celotex</u>").

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, <u>or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."</u> <u>Celotex</u>, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." <u>Cardoso v. Calbone</u>, 490 F.3d 1194, 1197 (10th Cir. 2007).

<u>Plustwik v. Voss of Nor. ASA</u>, No. 2:11-cv-757, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(emphasis added). "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." <u>Celotex</u>, 477 U.S. at 331 (Brennan J., dissenting)(emphasis in original).[111] Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 324; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)("<u>Liberty Lobby</u>"). In <u>American Mechanical Solutions, LLC v. Northland Process Piping, Inc.</u>, the Court granted summary judgment for the defendant when the plaintiff did not offer expert evidence supporting causation or proximate causation in its breach-of-the-implied-warranty-of-

---

[111]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court, dissented in <u>Celotex</u>, this sentence is widely understood to be an accurate statement of the law. <u>See</u> 10A Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

merchantability claims.  184 F. Supp. 3d 1030, 1075 (D.N.M. 2016)(Browning, J.).  The Court reasoned that the plaintiff could prove neither the breach-of-contract claim's causation requirement nor the breach-of-the-implied-warranty-of-merchantability claims' proximate-causation requirement with mere common knowledge, and the plaintiff provided no expert testimony bolstering its arguments.  See 184 F. Supp. 3d at 1075, 1079.  Without the requisite evidence, the plaintiff, the Court determined, failed to prove "an essential element of the nonmoving party's case," rendering "all other facts immaterial."  184 F. Supp. 3d at 1075 (quoting Plustwik v. Voss of Nor. ASA, 2013 WL 1945082, at *1).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Liberty Lobby, 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a

properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. v. Omer, No. CIV 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Liberty Lobby, 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder can reasonably find for the nonmoving party. See Liberty Lobby, 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Liberty Lobby, 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, there is no

genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Liberty Lobby, 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  Liberty Lobby, 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States concluded that summary judgment is appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. [Indus.] Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (brackets omitted). "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich J.)(unpublished),[112]] explained that the

---

[112]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent . . . [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision. United States v. Austin,

blatant contradictions of the record must be supported by more than other witnesses' testimony . . . ."  Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (10th Cir. 2012).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action; and it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights . . . ." (internal quotation marks, alteration, and citation omitted)).  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violates the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who

---

426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Rhoads v. Miller, Muller v. Culbertson, 408 F. App'x 194 (10th Cir. 2011), Torres v. Pueblo Board of County Commissioners, 229 F.3d 1165, 2000 WL 1346347 (10th Cir. 2000), Robinson v. Cavalry Portfolio Services, LLC, 365 F. App'x 104 (10th Cir. 2010), King v. Downing, 58 F. App'x 830 2003 WL 361559 (10th Cir. 2003), Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008), Wheeler v. BNSF Railway, 418 F. App'x 738 (10th Cir. 2011), Hook v. Regents of University of California, 394 Fed. App'x 522 (10th Cir. 2010), and McCrary v. Aurora Publics, 57 F. App'x 362 (10th Cir. 2003), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court has clarified that, in alleging a § 1983 action against a government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to Bivens[v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 689 (1978). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their

liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(internal quotation marks omitted)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concludes that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d at 1200.  More specifically, the Tenth Circuit recognizes that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their

'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)). The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed. See Dodds v. Richardson, 614 F.3d at 1200 (citing Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit notes that the Supreme Court concluded, in Rizzo v. Goode, that there was a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

A municipality will not be held liable under § 1983 solely because its officers inflicted injury. See Graves v. Thomas, 450 F.3d at 1218. Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged. See Graves v. Thomas, 450 F.3d at 1218. When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants. See Graves v. Thomas, 450 F.3d at 1218. Establishing an informal policy or custom requires the plaintiff to show that the misconduct was "widespread" -- i.e., that it involved a "series of decisions." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). The existence or nonexistence of such a policy, practice, or custom is a question of fact for the jury. See Powers v. Hamilton Cty. Pub. Defender Comm'n, 501 F.3d 592, 599 (6th Cir. 2007)("[T]he

evidence showed at least a disputed question of fact as to the existence of its alleged policy or custom . . . ."); Surprenant v. Rivas, 424 F.3d 5, 21 (1st Cir. 2005)("O'Mara challenges the very existence of the interdicted policy, custom, or practice. Proving the existence of a policy, custom, or practice normally entails questions of fact."  (citation omitted)); Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 1999)("In order to avoid summary judgment, a plaintiff need only show that there is a question of fact regarding whether there is a city custom or policy that caused a constitutional deprivation."); Gregory v. City of Rogers, 921 F.2d 750, 757 (8th Cir. 1990)("[A]ppellants have raised material questions of fact whether it was the custom of the Rogers Police Department that officers could use their discretion in deciding whether or not to arrest intoxicated individuals, despite the state statute requiring their arrest."); Fancher v. Barrientos, No. Civ. 11-0118 LH/LAM, 2013 WL 8600085, at *4 (D.N.M. Aug. 19, 2013)(Hansen, J.)("[A]t this time the record is unclear and it remain a question of fact as to which policy was in place."); Jacobs v. Dujmovic, 752 F. Supp. 1516, 1525 (D. Colo. 1990)(Babcock, J.)("[T]he Jacobs have failed to meet their summary judgment burden of showing that it adopted a policy, custom or procedure that caused constitutional violations, or that there is a question of fact as to the existence of such a policy.").

## LAW REGARDING FIRST AMENDMENT RETALIATION CLAIMS

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" Hartman v. Moore, 547 U.S. 250, 256 (2006)(quoting Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). For instance, it is therefore "settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v.

Moore, 547 U.S. at 256 (citation omitted).  One variation of a First Amendment retaliation claim that the Supreme Court has described are those claims that arise when a public employee alleges that he has been fired or otherwise punished for speech criticizing the government.  See Hartman v. Moore, 547 U.S. at 260 (citing Pickering, 391 U.S. at 566-67).

The Tenth Circuit applies "a five-prong analysis to determine whether action taken against an employee constitutes retaliation in violation of the employee's First Amendment rights."  Hook v. Regents of Univ. of Cal., 394 F. App'x 522, 534 (10th Cir. 2010)(unpublished).

> First, the court must determine whether the employee speaks pursuant to his official duties.  If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.  Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern.  If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.  Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision.  Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d 1223, 1235 (10th Cir. 2009)(quotations and citation omitted).  "Implicit within this five-prong analysis 'is a requirement that the public employer have taken some adverse employment action against the employee.'"  Hook v. Regents of Univ. of Cal., 394 F. App'x at 534 (quoting Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1235-36).  The standard for determining whether an employer subjected an employee to an adverse employment action is the same for retaliation claims under the First Amendment and Title VII, see Hook v.

Regents of Univ. of Cal., 394 F. App'x at 353.[113]   The test is whether the action "would deter a

reasonable person from exercising his First Amendment rights."  Hook v. Regents of Univ. of Cal.,

---

[113]The Tenth Circuit has recognized that, "there was some confusion in our circuit as to what qualifies as an adverse employment action in the context of First Amendment retaliation." Hook v. Regents of Univ. of Cal., 394 F. App'x at 535 (citing Maestas v. Segura, 416 F.3d 1182, 1188 n.5 (10th Cir. 2005)).  In Maestas v. Segura, the majority noted, in dicta, that "some forms of retaliation may be actionable under the First Amendment while insufficient to support a discrimination claim under Title VII."  416 F.3d at 1188 n.5.  See Baca v. Sklar, 398 F.3d 1210, 1220-21 (10th Cir. 2005)("Although we have never delineated what actions constitute 'adverse employment actions' in the First Amendment context, we have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII." (citing Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1437 n.3 (10th Cir. 1990)(rejecting proposition that "only adverse employment decisions, such as termination, suspension, or transfer, in retaliation for constitutionally protected conduct are illegal.  Actions short of an actual or constructive employment decision can in certain circumstances violate the First Amendment."); Schuler v. City of Boulder, 189 F.3d 1304, 1310 (10th Cir. 1999)(reprimanding employee, transferring her to another location, and removing job duties from her constitute adverse employment actions in First Amendment context)).  In Couch v. Board of Trustees of Memorial Hospital, the Tenth Circuit, however, "clarified the parameters of First Amendment retaliation protection, explaining that [the Tenth Circuit] consider[s] an employment action to be adverse in the First Amendment retaliation setting if it 'would deter a reasonable person from exercising his First Amendment rights.'"  Hook v. Regents of Univ. of Cal., 394 F. App'x at 353 (quoting Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1238).  The Tenth Circuit explained in Hook v. Regents of University of California, that "[t]his test is identical to the test which is applied in Title VII retaliation claims."  Hook v. Regents of Univ. of Cal., 394 F. App'x at 353 (citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006)).  In Baca v. Sklar, the Tenth Circuit reversed the Court's summary judgment for the defendant, in which the Court stated: "Baca's allegations that Sklar undermined his supervisory authority, that Sklar was disrespectful by interrupting, changing subjects, and not participating in discussions, and that Sklar stopped attending staff meetings on a regular basis do not describe actionable adverse actions."  Baca v. Sklar, No. CIV-02-1002 JB/ACT, 2004 U.S. Dist. LEXIS 28360, at *39 (D.N.M. Jan. 23, 2004)(Browning, J.)(citing Belcher v. City of McAlester, 324 F.3d 1203, 1207 n.4 (10th Cir. 2004)("If the action taken by the employer in response to the employee's speech is inconsequential or has only speculative consequences, there can be no basis for a First Amendment claim.")).  The Tenth Circuit determined that several actions by Sklar constituted adverse employment actions, including removing Baca's supervisory positions and encouraging employees to bypass Baca's supervision, contravening university protocol by reprimanding Baca, filing an Office of Equal Opportunity charge against Baca, and using the Office of Equal Opportunity charge to force Baca's resignation.  See Baca v. Sklar, 398 F.3d at 1221.  On remand,

394 F. App'x at 353 (internal quotation marks omitted)(quoting Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1238). See Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 n.4 (10th Cir. 2007)(citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006)); Haynes v. Level 3 Commc'ns, 456 F.3d 1215, 1228 (10th Cir. 2006). See Gerald v. Locksley, 785 F. Supp. 2d 1074, 1117 (D.N.M. 2011)(Browning, J.)(applying the Title VII standard for adverse employment action to determine that neither "[t]he Defendants encouraging [the Plaintiff] to minimize or not pursue a grievance because it would not be good for his career without any action" nor the Defendants placing the Plaintiff on administrative leave amounted to adverse employment actions.").

1.      **Speech Pursuant to Official Duties.**

Under Garcetti v. Ceballos, and its progeny, a plaintiff must show that the substance of the speech which forms the basis for the First Amendment claim involves something that is not part of the plaintiff's official duties and is a matter of public concern, and not merely a complaint involving the plaintiff's own employment. See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1202. In Brammer-Hoelter v. Twin Peaks Charter Academy, the Tenth Circuit applied the analysis from Garcetti v. Ceballos to determine whether the employee's First-Amendment right had been violated. 493 F.3d at 1202-08. First, the court must determine whether the employee speaks "pursuant to her official duties." 493 F.3d at 1202. "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" 492 F.3d at 1202 (quoting Garcetti v. Ceballos, 547 U.S. at 422).

the jury found for the defendant. See Baca v. Sklar, CIV 02-1002 JB\ACT, Final Judgment at 1, filed August, 26, 2005 (Doc. 184).

Speech relating to tasks within an employee's uncontested employment responsibilities may not be protected from regulation, even though the speech concerns an unusual aspect of an employee's job that is not part of his everyday functions. See Battle v. Bd. of Regents, 468 F.3d 755, 761 n.6 (11th Cir. 2006). In some circumstances, filing a complaint with "an agency outside [a plaintiff's] direct chain of command . . . [i]s not pursuant to official duties, but rather [i]s the speech of a private citizen." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1137 (10th Cir. 2010). The ultimate question is whether the employee speaks as a citizen or as a government employee -- an individual acting "in his or her professional capacity." Gerald v. Locksley, 785 F. Supp. 2d at 1104. See Jones v. Lincoln Cty. Comm'rs, No. CIV 06-0591 JB/LCS, 2007 WL 5239190, at *11 (D.N.M. July 10, 2007)(Browning, J.)(concluding that an employee acted as a citizen, because "no particular political affiliation is required for Jones' position as Deputy Sheriff, and it is not plausible that Jones had an official duty to oppose his boss in a political election").

### 2. **Speech about Matters of Public Concern.**

Second, if the employee does not speak pursuant to his or her official duties, but instead speaks as a citizen, the court must determine whether the subject of her speech is a matter of public concern. See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1202-03. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147 (1983)("Connick")(finding that a terminated assistant district attorney's expressive activity did not involve a matter of public concern where she disseminated a questionnaire to her

co-workers soliciting their views on office morale and dynamics, including whether they felt

pressure to work in political campaigns).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147. "Statements revealing official impropriety usually involve matters of

public concern." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205 (citing Lighton

v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000)). Conversely, speech that simply airs

"grievances of a purely personal nature" does not involve matters of a public concern. Brammer-

Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205 ("In determining whether speech pertains

to a matter of public concern, the court may consider 'the motive of the speaker and whether the

speech is calculated to disclose misconduct or merely deals with personal disputes and grievances

unrelated to the public's interest.'" (quoting Lighton v. Univ. of Utah, 209 F.3d at 1224)).

> The Tenth Circuit in Brammer-Hoelter v. Twin Peaks Charter Academy explained:

> [W]e have held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, Hom v. Squire, 81 F.3d 969, 974 (10th Cir. 1996), disputes over the term of employment, Lancaster v. Ind. Sch. Dist. No. 5, 149 F.3d 1228, 1233-34 (10th Cir. 1998), and workplace frustration, McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir. 1989).

Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205. In Sanchez v. Matta, No. CIV

03-2297 JB/LFG, 2004 WL 3426405 (D.N.M. Aug. 23, 2004)(Browning, J.), the Court explained

that an employee spoke on a matter of public concern when: (i) the speech addressed

> allegations of fraud, the inappropriate collection of state funds as reimbursement for use of the executive director of the National Hispanic Cultural Center's personal vehicle at the IRS mileage rate when a state vehicle was available, the granting of a translation contract to executive director's sister, the attempted misuse of state

travel funds, violations of the New Mexico Procurement Code, the misuse of government phones for personal reasons, discriminatory favoritism and preferential treatment toward certain employees, and harassment of other employees;

2004 WL 3426405, at *10-11, (ii) the employee spoke to "two high level officers within the organizational structure of the Center who had the ability to take action on Sanchez' concerns," 2004 WL 3426405, at *10-11, and (iii) no evidence suggested a "pre-existing dispute" between the employee and the executive director, 2004 WL 3426405, at *10-11. See Jones v. Lincoln Cty. Comm'rs, 2007 WL 5239190, at *11 (concluding that statements about political affiliation are a matter of public concern, because "discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution" (internal quotation marks omitted)(quoting Buckley v. Valeo, 424 U.S. 1, 14 (1976))); West v. N.M. Taxation & Revenue Dep't, 757 F. Supp. 2d 1065, 1128 (D.N.M. 2010)(Browning, J.)(determining that an Equal Employment Opportunity Commission ("EEOC") charge and complaints about employers' response to requests for accommodation were not matters of public concern, because they "focus[ed] on conditions of [the employee's] own employment").

3.       **Balancing Interests.**

Third, if the subject of the speech is a matter of public concern, the court must weigh "an employee's First Amendment speech against an employer's interest in an efficient and disciplined work environment." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1207 (quoting Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1333 (10th Cir. 2007)). "'[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." (quoting Connick, 461 U.S. at). "[T]he employer must also

articulate its proffered interest in regulating the speech in question." <u>Barker v. City of Del City</u>,

215 F.3d at 1139. The Tenth Circuit explained:

> Nevertheless, the question is whether the employer "has an efficiency interest which would justify it in restricting the particular speech at issue." [<u>Cragg v. City of Osawatomie</u>, 143 F.3d 1343, 1347 (10th Cir. 1998)]. "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." <u>Rankin v. McPherson</u>, 483 U.S. 378, 388, (1987).

<u>Brammer-Hoelter v. Twin Peaks Charter Acad.</u>, 492 F.3d at 1207.

> A number of factors are considered in evaluating Defendants' interest under the <u>Pickering</u> balancing test. Pertinent considerations include "the manner, time, and place of the employee's expression . . . the context in which the dispute arose . . . [and] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."

<u>Patrick v. Miller</u>, 953 F.2d 1240, 1248 (10th Cir. 1992)(quoting <u>Rankin v. McPherson</u>, 483 U.S.

at 388). "We will defer to a public employer's reasonable predictions of disruption, but those

predictions must be supported by the presentation of specific evidence. The [employer] cannot

satisfy its burden by making purely speculative allegations." <u>Patrick v. Miller</u>, 953 F.2d at 1248

(internal quotation marks omitted)(quoting <u>Cragg v. City of Osawatomie</u>, 143 F.3d 1343, 1347

(10th Cir. 1998)). "Arguably, 'the only public employer interest that can outweigh a public

employee's recognized speech rights is the interest in avoiding direct disruption, *by the speech

itself,* of the public employer's *internal* operations and employment relationships.'" <u>Brammer-

Hoelter v. Twin Peaks Charter Acad.</u>, 492 F.3d at 1207 (emphases in original)(quoting <u>Flanagan

v. Munger</u>, 890 F.2d 1557, 1566 (10th Cir. 1989)). <u>See</u> <u>Sanchez v. Matta</u>, 2004 WL 3426405, at

*12-13 (determining that, where no "actual disruption" occurred, the employer's interests did not

outweigh the employee's).

4.      **Causation.**

"Under the fourth-prong of Garcetti, plaintiffs bear the burden of establishing both a detrimental employment decision (adverse employment action) and 'causation -- that is, that the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment.'" Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cty., 587 F.3d at 1236 (quoting Maestas v. Segura, 416 F.3d 1182, 1188 & n.5 (10th Cir. 2005)). The second half of the fourth part of the analysis requires a showing that the plaintiff's protected speech was a "substantial factor or a motivating factor" in the adverse action. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192 at 1203 (internal quotation marks omitted)(quoting Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ., 232 F.3d at 1338). Demonstrating the link between the protected speech and the adverse action is a fact-intensive inquiry and is thus ordinarily the jury's province. See Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192 at 1203. Nonetheless, "[t]o withstand summary judgment . . . , an employee must produce evidence linking the employer's action to the employee's speech." Maestas v. Segura, 416 F.3d at 1188.

The Tenth Circuit summarizes some of the law regarding the causation requirement in Maestas v. Segura:

> Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive. See Baca v. Sklar, 398 F.3d 1210, 1221 (10th Cir. 2005). But temporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision. Id[.]; see also Morfin v. City of East Chicago, 349 F.3d 989, 1005 (7th Cir. 2003) (explaining protected conduct cannot be a basis for retaliation where defendants did not know of such conduct). An employer's knowledge of the protected speech, together with close temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment. See Ramirez [v. Okla. Dep't of Mental Health], 41 F.3d [584] at 596 [(10th Cir. 1994)].

Other evidence of causation may include evidence the employer expressed opposition to the employee's speech, see Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 929 (9th Cir. 2004), or evidence the speech implicated the employer in serious misconduct or wrongdoing. See Baca, 398 F.3d at 1221. On the other hand, evidence such as a long delay between the employee's speech and challenged conduct, see McGuire v. City of Springfield, 280 F.3d 794, 796 (7th Cir. 2002), or evidence of intervening events, see Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir. 1998), tend to undermine any inference of retaliatory motive and weaken the causal link.

Maestas v. Segura, 416 F.3d at 1189.

Showing that an adverse action occurred in close proximity to protected speech is a common method of showing causation. A plaintiff need not show proximity between the protected speech and an action sufficiently severe to be materially adverse, but can instead show temporal proximity between the speech and the beginning of a pattern of retaliatory activity, some instances of which are sufficient under the Garcetti/Pickering analysis.

Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633 JB/DJS, 2008 WL 5992270, at *18 (D.N.M. Oct. 17, 2008)(Browning, J.), on reconsideration in part, 616 F. Supp. 2d 1153 (D.N.M. 2009)(Browning, J.), rev'd on other grounds, 596 F.3d 708 (10th Cir. 2010). See Jones v. Lincoln Cty. Comm'rs, 2007 WL 5239190, at *12 (concluding that a genuine issue of material dispute exists about whether an employees' political expression and association motivated the employers' adverse employment action when "management personnel had ostracized" the employee and stated that he did so, because "[a]ny constructive criticism would have been misconstrued as retaliation"); Sanchez v. Matta, 2004 WL 3426405, at *15 (granting summary judgment for the defendant on the question of causation when the manager who issued a written reprimand and Notice of Contemplated Action had only "general knowledge" about a grievance, avoided learning more about the grievance and based the decision on material unrelated to the grievance, but denying summary judgment for the defendant when the employer restricted the employee's representations at meetings, "because it relieved" tension resulting from the employee's protected action).

**5.** **Alternative Reason for the Employer's Action.**

To rebut a plaintiff's case, an "employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1203 (internal quotation marks omitted)(quoting Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ., 232 F.3d at 1339). "This defense is principally an issue for the jury." See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1203.

## LAW REGARDING THE NMWPA

The NMWPA provides:

A public employer shall not take any retaliatory action against a public employee because the public employee:

> **A.** communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;

> **B.** provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or

> **C.** objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

N.M. Stat. Ann. § 10-16C-3. A "retaliatory action" for the NMWPA's purposes means "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." N.M. Stat. Ann. § 10-16C-2(D). An "unlawful or improper act" means:

> **E.** . . . a practice, procedure, action, or failure to act on the part of a public employer that:

> **(1)** violates a federal or state law, regulation, or administrative rule;
>
> **(2)** constitutes malfeasance in public office; or
>
> **(3)** constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

N.M. Stat. Ann. § 10-16C-2(E). A plaintiff must file an action for a NMWPA violation within two years from the date on which the retaliatory action occurred. See N.M. Stat. Ann. § 10-16C-6.

In Lobato v. New Mexico Environmental Department, 733 F.3d 1283 (10th Cir. 2013), the plaintiff raised the same arguments for his NMWPA claims as for his Title VII claim, asserting that his communications with his employer showed that each of the employer's justifications for the plaintiff's dismissal was pretextual. See 733 F.3d at 1286. The defendants fired the plaintiff because of his dishonesty, failure to cooperate with management, and unprofessional attitude toward coworkers and the public. See 733 F.3d at 1285. The defendants' reasons for firing the plaintiff were non-retaliatory, considering that there was no evidence in the record indicating that the defendants knew about the plaintiff's protected conduct. See 733 F.3d at 1288. The plaintiff did not raise any inconsistency, weakness, or contradiction in the defendants' decision which would suggest to a reasonable factfinder that the defendants' proffered reasons for dismissal should be disbelieved. See 733 F.3d at 1293. "[A]s discussed above, those arguments and supporting facts are insufficient to raise a genuine dispute about whether [the defendant] fired Lobato for any reason other than the nonretaliatory justifications provided in Lobato's dismissal letter. Accordingly, Lobato has not raised a genuine dispute of material fact for this claim either." 733 F.3d at 1297.

# LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32. Section 1367 additionally grants the federal courts power to hear claims over which the court lacks original jurisdiction, if those claims are part of the same constitutional case as claims over which the court has original jurisdiction. See 28 U.S.C. § 1367(a).

## 1.    Congressional Authority to Exercise Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines, pendent jurisdiction[114] and

---

[114]Black's Law Dictionary defines "pendent jurisdiction" as: "A court's jurisdiction to hear and determine a claim over which it would not otherwise have jurisdiction, because the claim arises from the same transaction or occurrence as another claim that is properly before the court." Jurisdiction, Black's Law Dictionary (10th ed. 2014).

ancillary jurisdiction[115]; Section 1367's passage codified those jurisdictional forms, and also allowed courts to hear cases under pendent-party jurisdiction[116], which the Supreme Court had previously disallowed in Finley v. United States, 490 U.S. 545 (1989). Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties, whose insertion into the litigation does not have the support of any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, the Honorable William H. Rehnquist, then-Chief Justice of the Supreme Court, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms. See James v. Chavez, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.). In response to the Committee's findings regarding pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed the Judicial Improvements Act of 1990[117]:

---

[115]Black's Law Dictionary defines "ancillary jurisdiction" as: "court's jurisdiction to adjudicate claims and proceedings related to a claim that is properly before the court." Jurisdiction, Black's Law Dictionary, supra.

[116]Black's Law Dictionary defines "pendent-party jurisdiction" as: "A court's jurisdiction to adjudicate a claim against a party who is not otherwise subject to the court's jurisdiction, because the claim by or against that party arises from the same transaction or occurrence as another claim that is properly before the court." Jurisdiction, Black's Law Dictionary, supra.

[117]The Judicial Improvements Act of 1990 is codified at: 5 U.S.C. § 8440c; 17 U.S.C. §§ 106A, 120; 28 U.S.C. §§ 178, 471-82, 1367, 1658; 47 U.S.C. § 303c.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

2. **The District Courts' Discretion to Exercise Supplemental Jurisdiction.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers of America v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.

Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

(1)    the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity . . . ." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164. Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changes the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Ct., 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c). . . ."); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *9 (D.N.M. April 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from

declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").  At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  That conclusion is consistent with the Supreme Court's statement that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726 (footnote omitted).

The Tenth Circuit has recognized that a district court does not abuse its discretion when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction."  Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished).  The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.  See Armijo v. New Mexico, No. CIV 08-0335 JB/ACT, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit

have not only acknowledged such a result, they have encouraged it."). The Court has consistently declined to exercise supplemental jurisdiction when it dismisses all of a case's federal claims with prejudice. See, e.g., McGarry v. Bd. of Cty. Comm'rs for Cty. of Lincoln, 294 F. Supp. 3d 1170, 1206 (D.N.M. 2018)(Browning, J.)("The only remaining claim before the Court is McGarry's NMTCA claim[118]. . . . The Court declines to exercise supplemental jurisdiction over that claim."); Parrish v. Roosevelt Cty. Bd. of Cty. Comm'rs, No. CIV 15-0703 JB/GJF, 2017 WL 6759103, at *20 (D.N.M. Dec. 31, 2017)(Browning, J.)("The Court declines to exercise supplemental jurisdiction over Parrish's remaining state-law breach-of-contract claim."); Martinez v. Guadalupe Cty, 200 F. Supp. 3d 1216, 1265 (D.N.M. 2016)(Browning, J). The Court has also, however, declined to dismiss state law claims when it dismisses a party's federal claims without prejudice. See Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1189 (D.N.M. 2014)(Browning, J.)("[T]he Court would normally remand those [state law] claims to state court. To give the Plaintiffs an opportunity to amend the Complaint to add federal claims against Dear and any other individuals, however, the Court will not remand the state-law claims to state court at this point.").

## LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin." Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3). The Court has noted that Title VII generally protects individuals from employers' improperly motivated adverse treatment in the workplace:

"Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or

---

[118]New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to -27.

discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Farley v. Leavitt, No. CIV 05-1219, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning, J.)(internal quotation marks and alterations omitted) (quoting 42 U.S.C. § 2000e-2(a)(1)). With the 1972 amendments to the statute, Title VII's protections apply to federal and private employees. See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)); Walton v. N.M. State Land Office, 113 F. Supp. 3d 1178, 1184 (D.N.M. 2015)(Browning, J.); Gerald v. Locksley, 785 F. Supp. 2d at 1098.

### 1.    **Title VII Retaliation.**

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Proctor v. United Parcel Serv., 502 F.3d at 1208 (internal quotation marks omitted)(quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202). "To establish that a causal connection exists," a plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d at 1228). Generally speaking, if this temporal proximity between the protected activity and the adverse action are not "very close in time," the plaintiff "must offer additional evidence to establish causation." Proctor v. United Parcel Serv., 502 F.3d at 1209 (internal quotation marks omitted)(quoting Haynes v. Level 3

Commc'ns, LLC, 456 F.3d at 1228). See Walton v. N.M. State Land Office, 113 F. Supp. 3d at 1190; Gerald v. Locksley, 785 F. Supp. 2d at 1099-1100.

## 2. **Materially Adverse Employment Action.**

The Tenth Circuit liberally defines what constitutes an adverse employment action. See Orr v. City of Albuquerque, 417 F.3d 1144, 1150 (10th Cir. 2005)("Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action."). The Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998)(internal quotation marks omitted)(citations omitted). See Proctor v. United Parcel Serv., 502 F.3d at 1208. An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 64. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (internal quotation marks omitted)(quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 68). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). "We construe the phrase 'adverse employment action' liberally and do not limit

it to 'monetary losses in the form of wages or benefits.'" <u>Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.</u>, 595 F.3d at 1133 (quoting <u>Annett v. Univ. of Kan.</u>, 371 F.3d 1233, 1239 (10th Cir. 2004)).  Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice." <u>Annett v. Univ. of Kan.</u>, 371 F.3d at 1239 (internal quotation marks omitted)(citation omitted).

In <u>Anderson v. Clovis Municipal Schools</u>, 265 F. App'x 699 (10th Cir. 2008)(unpublished), the Tenth Circuit, in an unpublished opinion, addressed the requirement of an adverse employment action in the context of a disparate-treatment claim and a hostile work environment claim.  There, an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment. <u>See</u> 265 F. App'x at 704.  Relying on <u>Schuler v. City of Boulder</u>, 189 F.3d 1304 (10th Cir. 1999), the plaintiff, Anderson, argued that the growth plan and formal reprimand rose to the level of an adverse employment action under Tenth Circuit law. <u>See</u> 265 F. App'x at 704. In <u>MacKenzie v. City & County of Domier</u>, 414 F.3d 1266 (10th Cir. 2005), the Tenth Circuit discussed <u>Anderson v. Clovis Municipal School</u>'s reliance on <u>Schuler v. City of Boulder</u> and stated: "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit."  414 F.3d at 1279. <u>See</u> <u>Heno v. Sprint/United Mgmt. Co.</u>, 208 F.3d 847, 857 (10th Cir. 2007)(explaining that Title VII proscribes only discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects [the employee's] status as an

employee" (internal quotation marks omitted)(quoting <u>Sanchez v. Denver Pub. Sch.</u>, 164 F.3d at 532)). "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." <u>Robinson v. Cavalry Portfolio Serv., LLC</u>, 365 F. App'x 104, 114 (10th Cir. 2010)(unpublished)(internal quotation marks omitted)(quoting <u>Haynes v. Level 3 Commc'ns</u>, 456 F.3d at 1218-19). <u>See</u> <u>Walton v. N.M. State Land Office</u>, 113 F. Supp. 3d at 1190-92; <u>Gerald v. Locksley</u>, 785 F. Supp. 2d at 1100-01.

## <u>ANALYSIS</u>

Sinfuego appears to argue that Curry County retaliated against her for associating with the union and for her speech and petitions regarding: (i) conditions at Curry Detention; (ii) Curry Officers' concerns about staffing, pay, and unionizing; (iii) Pyle's invitation to meet individually with Curry Officers; and (iv) sexual harassment. <u>See</u> Response at 17-24. Sinfuego contends that, in response to her actions, Curry County: (i) shifted her to midnight shifts, reduced her involvement with S.O.R.T., ignored her seniority, and changed her duties in other ways, and (ii) terminated her employment. The Court will grant summary judgment on these facts for Curry County on Sinfuego's First Amendment claims.[119] The Court concludes that: (i) in expressing

---

[119]The individual defendants -- Sandoval and Pyle -- have been dismissed from the case. <u>See</u> Stipulated Voluntary Dismissal with Prejudice of All Claims Against Tori Sandoval at 1; Stipulation of Voluntary Dismissal of Claims Against Defendant Lance Pyle in His Official Capacity at 1; First MOO at 1, 29, 2017 WL 3503380 at *1, *13. Because only Curry County remains as a defendant, the Motion raises no qualified immunity arguments. <u>See</u> <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980)(holding that municipalities cannot assert immunity based on their officials' good faith).

concerns about conditions at Curry Detention, Sinfuego acted on matters of public concern, although reporting sexual harassment, texting about the union, and meeting with Pyle about pay raises and unionizing did not involve public concerns; (ii) Sinfuego has not demonstrated a genuine factual question whether her activities motivated Curry County's adverse actions; and (iii) Curry County terminated Sinfuego's employment, because she engaged in inappropriate sexual activity, and Sinfuego has not established a genuine issue of fact otherwise. Further, Sinfuego has not demonstrated a genuine factual question contradicting that Curry County did not have a policy of retaliation. Having granted summary judgment on the First Amendment claims, the Court is left with only the state law, New Mexico Whistleblower Protection Act, claim. The Court will dismiss Sinfuego's remaining New Mexico Whistleblower Protection Act claim without prejudice for refiling in state court.

## I.    THE COURT WILL GRANT SUMMARY JUDGMENT FOR CURRY COUNTY ON SINFUEGO'S FIRST AMENDMENT CLAIMS.

Sinfuego brings three First Amendment claims, contending that Curry County violated her rights to freedom of speech, freedom to petition for grievances, and freedom of association. Curry County groups together the claims, analyzing them under the Tenth Circuit's five-part test for First Amendment freedom-of-speech retaliation claims.[120]  See Memo. at 16.  The parties do not argue

---

[120]The Tenth Circuit has stated the Garcetti/Pickering test:

First, the court must determine whether the employee speaks pursuant to his official duties.  If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.  Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern.  If the speech is not a matter of public concern,

about steps one and three of the analysis. Accordingly, the Court will not address these steps. Regarding the remaining steps, steps two, four, and five apply to public employees' retaliation claims under the Speech and Petition Clauses. See Borough of Duryea, Pa. v. Guarnierie, 564 U.S. 379, 2500-01 (2011); Morris v. City of Colo. Springs, 666 F.3d 654, 661 (10th Cir. 2012). However, "[i]t is not clear whether the [public concern] factor applies to retaliation claims involving union association, particularly where there is not a collective bargaining agreement in place." Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 n.17 (10th Cir. 2013). The Court first addresses whether the second -- public concern -- factor applies to Sinfuego's freedom-of-association claim and then discusses whether Curry County has met the burden for summary judgment. The Court concludes that the public concern factor applies, and the Court grants summary judgment for Curry County on Sinfuego's First Amendment claims.

A.    THE PUBLIC CONCERN FACTOR APPLIES TO RETALIATION CLAIMS IN THE LABOR UNION CONTEXT WHEN NO COLLECTIVE BARGAINING AGREEMENT IS IN PLACE.

Recent Tenth Circuit's cases leave unaddressed whether the public concern requirement applies to contexts, like Sinfuego's, in which a labor union and public employer have not entered

---

then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1235 (quotations and citation omitted).

a collective bargaining agreement.  Until relatively recently, the Tenth Circuit refrained, "as a general matter," from deciding whether "<u>Pickering</u>'s public concern requirement applies to freedom of association claims." <u>Merrifield v. Bd. of Cty. Comm'rs for Cty. of Santa Fe</u>, 654 F.3d 1073, 1084 (10th Cir. 2011)("<u>Merrifield</u>")(citing <u>Shrum v. City of Coweta</u>, 449 F.3d 1132, 1138 (10th Cir. 2006)("<u>Shrum</u>")).  In <u>Merrifield</u>, the Tenth Circuit concluded that the public concern requirement "applies to a claim that a government employer retaliated against an employee for exercising the instrumental right of freedom of association for the purpose of engaging in speech, assembly, or petitioning for redress of grievances." <u>Merrifield</u>, 654 F.3d at 1081-82.  The Tenth Circuit describes two association rights: (i) the "intrinsic right of freedom of association," which protects "choices to enter into and maintain certain intimate human relationships" as a "fundamental element of personal liberty"; and (ii) the "instrumental right of freedom of association," which "guarantees freedom of association . . . as an indispensable means of preserving other individual liberties." <u>Merrifield</u>, 654 F.3d at 1080 (citing <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 617-16 (1984)).  The Tenth Circuit groups union associations into the instrumental-right-of-freedom-of-associations category.  The list of other Court of Appeals cases cited as applying the public concern requirement to the instrumental right of freedom of association include several cases involving claims about union association. <u>See</u> <u>Merrifield</u>, 654 F.3d at 1083; <u>Cobb v. Pozzi</u>, 363 F.3d 89 (2nd Cir. 2004); <u>Griffin v. Thomas</u>, 929 F.2d 1210 (7th Cir. 1991); <u>Boals v. Gray</u>, 775 F.2d 686 (6th Cir. 1985).  The Tenth Circuit carves, however, an exception to <u>Merrifield</u>'s rule for matters involving public employee labor unions: "[I]n the specific context of public-employee labor unions, we have 'rejected the requirement that a worker demonstrate that his association with the union be a matter of public concern.'" <u>Merrifield</u>, 654 F.3d at 1084

(quoting <u>Shrum</u>, 449 F.3d at 1138).  The question for the Court is whether "the specific context of public-employee labor unions" includes circumstances in which the public employer and labor union do not have a collective bargaining agreement.  <u>Merrifield</u>, 654 F.3d at 1084.

Other Courts of Appeals are divided on whether the "public concern" requirement applies to public employee freedom of association claims, but they do not address the specific question before the Court.  The United States Courts of Appeals for the Second, Fourth, Sixth, and Seventh Circuits apply the "public concern" requirement to public employee freedom of association claims.  <u>Cobb v. Pozzi</u>, 363 F.3d at 107; <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 249-50 (4th Cir. 1999); <u>Griffin v. Thomas</u>, 929 F.2d at 1214; <u>Boals v. Gray</u>, 775 F.2d at 692.  The United States Court of Appeals for the Ninth Circuit applies the public concern requirement to "hybrid" freedom-of-speech and right-of-association claims.  <u>Hudson v. Craven</u>, 403 F.3d 691, 698 (9th Cir. 2005). In contrast, the United States Courts of Appeals for the Fifth and Eleventh Circuit do not ask that public employees demonstrate that their activities touch public concerns.  <u>See</u> <u>Boddie v. City of Columbus</u>, 989 F.2d 745, 749 (5th Cir. 1993); <u>Hatcher v. Bd. of Pub. Educ. & Orphanage</u>, 809 F.2d 1546, 1558 (11th Cir. 1987).  The Fifth Circuit, in an opinion written by the Honorable Patrick Higginbotham, United States Circuit Judge for the Fifth Circuit, noted that public employee union activity is "inevitably of public concern."  <u>Boddie v. City of Columbus</u>, 989 F.2d at 750.  The United States Court of Appeals for the Third Circuit, in an opinion written by the Honorable Eugene E. Siler, United States District Judge for the Sixth Circuit, sitting by designation, concluded that "mere membership in a public union is always a matter of public concern."  <u>Palardy v. Twp. of Milburn</u>, 906 F.3d 76, 83, 2018 WL 4655942, at *5 (3rd Cir. Sept. 28, 2018)(unpublished).  While the Third Circuit and the Fifth Circuit addressed public employee

union activity, neither addressed a situation involving public employee labor union organization, rather than membership.  Palardy v. Twp. of Milburn, 2018 WL 4655942, at *5; Boddie v. City of Columbus, 989 F.2d at 747.

All three district courts in the Tenth Circuit to have addressed whether Merrifield governs such a situation determined that application of the "public concern" requirement recognized in the case, not the exception carved from Shrum, controls and that the "public concern" requirement applies.  See Cardona v. Burbank, Case No. 2:12-CV-608 TS-BCW, 2018 WL 2723882, at *9-12 (D. Utah June 6, 2018)(Stewart, J.); Hollenbach v. Burbank, Case No. 2:16-cv-00918-DBP, 2017 WL 2242861, at *4-5 (D. Utah May 22, 2017)(Pead, M.J.); Cillo v. City of Greenwood Vill., 900 F. Supp. 2d 1181, 1186-1193 (D. Colo. 2012)(Krieger, J.).  Based on the language in Merrifield and Shrum, the Court agrees with these other district courts.

On the language's face, the exception in Merrifield may seem to speak to all facts involving public employee union association retaliation claims.  The language in Merrifield refers simply to "[t]he specific context of public-employee labor unions." Merrifield, 654 F.3d at 1084.  Such language alone does not imply a distinction between labor unions with collective-bargaining agreements and those without such agreements, and, practically, forming a public-employee labor union seems part of the "context of public-employee labor unions."

The Tenth Circuit, however, recognized the exception in Merrifield, because in Shrum, the Tenth Circuit addressed whether, "in the . . . context of public employee labor unions," "a worker [need] demonstrate that his association with the union be a matter of public concern," Shrum, 449 F.3d at 1138, and Shrum addresses the context of public-employee labor unions with collective bargaining agreements with the public employer.  See Shrum, 449 F.3d at 1139; Denton

v. Yancey, 661 F. App'x 933, 938 (10th Cir. 2016); Harvey v. Baker, 242 F. App'x 547, 550 (10th

Cir. 2007); Cardona v. Burbank, 2018 WL 2723882, at *9-10; Hollenbach v. Burbank, 2017 WL

224286,1 at *4-5; Cillo v. City of Greenwood Vill., 900 F. Supp. 2d at 1188; Thomas v. City of

Bartlesville, No. 11-CV-0389-CVE-PJC, 2012 WL 1621398, at *2 (N.D. Okla. May 9,

2012)(Eagan, J.); Blangsted v. Snowmass-Wildcat Fire Prot. Dist., 2008 WL 4411440, at *3-4. In

Shrum, the Tenth Court concluded: "the First Amendment freedom of association protects public

employees from retaliation for participation in a union with which their employers have signed a

collective-bargaining agreement." Shrum, 449 F.3d at 1139. As other district courts noted, in

distinguishing between union association retaliation and Pickering, the Tenth Circuit relies heavily

on the public employer/public employee labor union relationship's contractual nature. See 449

F.3d at 1139. See Cardona v. Burbank, 2018 WL 2723882, at *9; Hollenbach v. Burbank, 2017

WL 2242861, at *4; Cillo v. City of Greenwood Vill., 900 F. Supp. 2d at 1190. The Tenth Circuit

reasoned:

> The Pickering test is predicated on the government's "interests as an employer in
> regulating the speech of its employees," which "differ significantly from those it
> possesses in connection with regulation of the speech of the citizenry in general."
> Pickering, 391 U.S. at 568 . . . . Those interests relate to "the efficiency of the
> public services it performs through its employees." Id. Where a public employer
> has negotiated with an employee union and signed a collective-bargaining
> agreement, it has contractually agreed to the legitimacy of the union and of its
> employees' association with the union. The public employer has presumably
> received the benefit of its bargain, and is estopped from claiming that its "interests
> as an employer" are inconsistent with the freedom of its employees to associate
> with the union or to file grievances in accordance with its procedures.

Shrum, 449 F.3d at 1139.

In Shrum, the Tenth Circuit recognizes earlier cases suggesting that, "in the specific context

of public employee labor union," the employee need not satisfy the public concern factor. 449

F.3d at 1138 (citing Butcher v. City of McAlester, 956 F.2d 973 (1992); Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434 (10th Cir. 1990)). The Tenth Circuit "offer[s] no lengthy explanation for not applying the public concern test" in the earlier cases. Shrum, 449 F.3d at 1138. The earlier cases, Morfin v. Albuquerque Public Schools and Butcher v. City of McAlester, do not discuss associations with unions without collective bargaining agreements or the public concern requirement's applicability. See Cillo v. City of Greenwood Vill., 900 F. Supp. 2d at 1187-88. In Morfin v. Albuquerque Public Schools, the Tenth Circuit answered a qualified immunity challenge by stating that "the unconstitutionality of retaliating against an employee for participating in a union," including filing grievances and working with a union other than the exclusive bargaining agent, "was clearly established." Morfin v. Albuquerque Pub. Sch., 906 F.2d at 1439. See Cardona v. Burbank, 2018 WL 2723882, at *9; Cillo v. City of Greenwood Vill., 900 F. Supp. 2d at 1187-88. In Butcher v. City of McAlester, the Tenth Circuit addressed whether Pickering's balancing test, the third prong of the freedom-of-speech claim retaliation test, applies to union association retaliation claims, and notes: "[W]e fail to see how, where there is a collective bargaining agreement between the parties, the City had any legitimate interest in whether its firefighters elected to join the union and participate in its activities, or stay out of the union." Butcher v. City of McAlester, 956 F.2d at 979. See Cillo v. City of Greenwood Vill., 900 F. Supp. 2d at 1188. The Tenth Circuit in Merrifield emphasized that neither Morfin v. Albuquerque Public Schools nor Butcher v. City of McAlester "discussed whether the public-concern requirement would apply to association-based retaliation claims." Merrifield, 654 F.3d at 1084 (quoting Shrum, 449 F.3d at 1139). See Hollenbach v. Burbank, 2017 WL 2242861, at *4; Cillo v. City of Greenwood Vill., 900 F. Supp. 2d at 1190.

Before <u>Merrifield</u>, the Honorable Walker David Miller, United States District Judge for the District of Colorado, read <u>Morfin v. Albuquerque Public Schools</u>, in which the Tenth Circuit concluded, that "the unconstitutionality of retaliating against an employee for participating in a union was clearly established," <u>Morfin v. Albuquerque Pub. Sch.</u>, 906 F.2d at 1439, to stand for the proposition that the public concern requirement need not be addressed when an employee is organizing a union, see <u>Blangsted v. Snowmass-Wildcat Fire Prot. Dist.</u>, 2008 WL 4411440, at *4 ("I conclude that the right to engage in activity of organizing a union is itself protected by the First Amendment without the necessity of a court determination that any particular activity of that union is a matter of public concern." (citing <u>Shrum</u> at 1139; <u>Morfin v. Albuquerque Pub. Sch.</u>, 906 F.2d at 1438)). The Court disagrees with Judge Miller's analysis. The Tenth Circuit's statement about <u>Morfin v. Albuquerque Public Schools</u> in <u>Merrifield</u> undermines Judge Miller's conclusion in <u>Blangsted v. Snowmass-Wildcat Fire Protection District</u> that the public concern requirement does not apply in the context of public employee labor unions that have not yet formed. <u>Blangsted v. Snowmass-Wildcat Fire Prot. Dist.</u>, 2008 WL 4411440, at *4. Further, applying the public concern requirement does not conflict with <u>Morfin v. Albuquerque Public Schools</u>' assertion about freedom to associate with unions. As the United States Court of Appeals for the Sixth Circuit recognized in <u>Boals v. Gray</u>, "applying <u>Connick</u> to union speech and activity is not inconsistent with the well-established principle that such speech and activity is protected by the first amendment." <u>Boals v. Gray</u>, 775 F.2d 686, 692 (6th Cir. 1985).

> In <u>Connick</u>, . . . the Court did not hold that speech by a public employee not on a matter of public interest was "totally beyond the protection of the First Amendment," but merely that such speech did not give rise to a cause of action in federal court "to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."

Boals v. Gray, 775 F.2d at 692 (quoting Connick, 461 U.S. at 147).

Further, the Court is persuaded by King v. Downing, 58 F. App'x 830, 2003 WL 361559 (10th Cir. 2003)(unpublished), an unpublished opinion the Tenth Circuit wrote three years before Shrum. In King v. Downing, the Tenth Circuit applied the public concern requirement to a retaliation claim in the context of an employee organizing a union. See King v. Downing, 58 F. App'x 830, 833, 2003 WL 361559, at *2. The Tenth Circuit explained: "[W]here the free speech and free association claims are identical, as they are in this case, application of the Pickering/Connick public concern test is appropriate." King v. Downing, 58 F. App'x at 833, 2003 WL 361559, at *2. While the unpublished opinion provides no binding precedent, the reasoning is consistent with that in Merrifield. The Tenth Circuit explained that the public concern requirement emerged from "doctrine regarding employee freedom of association." Merrifield, 654 F.3d at 1082. "It would be ironic, if not unprincipled, if the public-concern requirement derived from freedom-of-association cases did not likewise apply to retaliation for such association." Merrifield, 654 F.3d at 1082. "Moreover, to give special status to retaliation claims based on nonreligious instrumental freedom of association -- by eschewing the public-concern requirement in those cases -- would violate the Supreme Court's teaching that the 'political' First Amendment rights should be treated equally, at least in the government-employment context." Merrifield, 654 F.3d at 1082.

Accordingly, the Court agrees with the courts in Cardona v. Burbank, Hollenbach v. Burbank, and Cillo v. City of Greenwood Village that the exception created from Shrum does not apply in this matter, where the Curry Officers had no collective bargaining agreement with Curry County, and the rule from Merrifield, that the public concern requirement applies to instrumental

association claims, governs.[121] See Cardona v. Burbank, 2018 WL 2723882, at *10; Hollenbach

v. Burbank, 2017 WL 2242861, at *4; Cillo v. City of Greenwood Village, 900 F. Supp. 2d at

1180, overruled on other grounds by Cillo v. City of Greenwood Village, 739 F.3d 451.  Because

Sinfuego's First Amendment claims arise from the same events, the Court groups the claims

together and analyzes Sinfuego's association claim under the with Sinfuego's other First

Amendment claims.

**B.      SINFUEGO'S ACTIVITIES RELATED TO SAFETY AT CURRY DETENTION TOUCH MATTERS OF PUBLIC CONCERN, BUT SINFUEGO'S ACTIONS RELATED TO PAY AND UNIONIZING AND HER STATEMENT ABOUT SEXUAL HARASSMENT DO NOT INVOLVE PUBLIC CONCERNS.**

Sinfuego is not clear in alleging which activities were protected and caused Curry County's

alleged retaliation.  Considering the entire response, the Court concludes that Sinfuego contends

that Curry County retaliated against her for: (i) her comments on conditions at Curry Detention;

(ii) her involvement in the December 3, 2012, meeting with Pyle; (iii) her December 6, 2012, text

message about a union and Pyle's invitation to meet individually with Curry Officers; and (iv) her

November 15, 2013, statement about her conversation with Hughes.  See Response at 17-24.  The

---

[121]The Court notes that the exception from the public concern requirement for public-employee labor unions with collective bargaining agreements is inconsistent with the language from Merrifield.  See Merrifield, 654 F.3d at 1082 ("It would be ironic, if not unprincipled, if the public-concern requirement derived from freedom-of-association cases did not likewise apply to retaliation for such association.").  The Tenth Circuit noted: "Moreover, to give special status to retaliation claims based on nonreligious instrumental freedom of association -- by eschewing the public-concern requirement in those cases -- would violate the Supreme Court's teaching that the 'political' First Amendment rights should be treated equally, at least in the government-employment context."  Merrifield, 654 F.3d at 1082.  Although cabining the exception to the context of public-employee labor unions with collective bargaining agreements follows Merrifield's reasoning, given this language, that the public concern requirement does not apply only in the narrow context of public-employee labor unions with collective bargaining agreements is "ironic, if not unprincipled."  Merrifield, 654 F.3d at 1082.

Court discusses each action in turn. The Court concludes that Sinfuego's actions touched public concerns only when the actions involved safety at Curry Detention. These actions include her conversations with sergeants and lieutenants, and with Pyle in the December 3, 2012, meeting. Sinfuego's other actions do not rise to public concerns.

First, Sinfuego contends that she expressed concerns to her superior sergeants and lieutenants about conditions, including safety and sanitation issues, at Curry Detention. See Memo. at 17. Speech addresses a public matter when it is "fairly considered as relating to any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146. "Stated differently, 'speech that seeks to expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests.'" Torres v. Pueblo Bd. of Cty. Comm'rs, 229 F.3d 1165, 2000 WL 1346347, at *4 (quoting Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d at 1212). Safety and sanitation issues in a detention center concern "the failure of a governmental entity to properly carry out its public responsibilities." Eisenhour v. Weber Cty., 744 F.3d 1220, 1229 (10th Cir. 2014). Sinfuego addressed the speech to sergeants and lieutenants who had a better "ability to take action on" her concerns. Sanchez v. Matta, 2004 WL 3426405, at *11, and no evidence suggests that she acted from a purely personal motive. Her action sought to "expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests.'" Torres v. Pueblo Bd. of Cty. Comm'rs, 229 F.3d 1165, 2000 WL 1346347, at *4 (quoting Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d at 1212). Accordingly, Sinfuego acted on matters of public concern in such comments.

Sinfuego also cites the Petition from Curry Officers to Sandoval as expressing her concerns about Curry Detention's conditions.  See Response at 21.  The Petition from Curry Officers to Sandoval focuses on "grievances of a purely personal nature," Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205, because it focuses on the "current scheduling process," Petition from Curry Officers to Sandoval at 1.  The Curry Officers complain: "Shift bids are the only way to ensure that favoritism and other outside influences don't interfere with the scheduling process for officers.  Shift biding will ensure that officers cannot complain about what shift or days they have off."  Petition from Curry Officers to Sandoval at 1.  As such speech pertains "to the [employee's] management and working conditions," it does not raise a matter of public concern. Torres v. Pueblo Bd. of Cty. Comm'rs, 229 F.3d 1165, 2000 WL 1346347, at *5.

Second, Sinfuego, in meeting with Pyle, joined Curry Officers in voicing complaints about staffing, pay, unionizing, and safety.  See Response ¶¶ 3(ii)-(iii) (citing Conf. Tr. at 4:17, id. at 5:15-17; id. at 6:15-18; id. at 8:4-12); Response at 18-19.  Matters of pay, staffing, and unionizing are "grievances of a purely personal nature."  Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205.  In Torres v. Pueblo Board of County Commissioners, the Tenth Circuit concluded that speech "pertain[ing] specifically to the [employee's] management and working conditions," like Torres' speech in organizing a union, did not raise a matter of public concern.  Torres v. Pueblo Bd. of Cty. Comm'rs, 229 F.3d 1165, 2000 WL 1346347, at *5.  The December 3, 2012, meeting focused mainly on concerns about pay, unionizing, and staff related solely to "management and working conditions."  Torres v. Pueblo Bd. of Cty. Comm'rs, 229 F.3d 1165, 2000 WL 1346347, at *5.  To the extent Sinfuego acted in response to such concerns, therefore, she did not address public concerns.

The meeting with Pyle was not limited, however, to discussions about personal grievances. See Response ¶ 3(ii)-(iii), at 2 (citing Conf. Tr. at 4:17, id. at 5:15-17; id. at 6:15-18; id. at 8:4-12); Response at 18-19. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147. At the meeting, statements such as: "[T]he facility [was] not accommodating for safety and security," Reply at 3 (quoting Conf. Tr. at 6:15); and "[T]here have been a number of attacks on us once again because there is understaff[ing]," Reply at 3 (quoting Conf. Tr. at 8:3-12), were made. By bringing safety concerns to Pyle's attention, Garcia and Sinfuego raised the matters to an individual in a position to act on the issues. See Sanchez v. Matta, 2004 WL 3426405, at *11. While Garcia and Sinfuego had personal stakes in speaking with Pyle, "the speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern." Eisenhour v. Weber Cty., 744 F.3d 1220, 1229 (10th Cir. 2014)(internal quotation marks omitted)(quoting Deutsch v. Jordan, 618 F.3d 1093, 1100 (10th Cir. 2010). Safety in a detention center is "fairly considered as relating to [a] matter of political, social, or other concern to the community." Connick, 461 U.S. at 146. Accordingly, the Court concludes to the extent that Sinfuego addressed safety conditions within Curry Detention, her actions touch public concerns.

Third, the December 6, 2012, text message notified Curry Officers about steps in the union's formation, including Pyle's offer to speak individually with Curry Officers. See Memo. ¶ 10, at 4-5 (citing Pyle Email at 1). While Sinfuego is correct that "the First Amendment protects the right of a public employee to join and participate in a labor union," Cillo v. City of Greenwood Village, 739 F.3d at 460, actions do not touch a matter of public concern "merely because [they

are] union-related," Torres v. Pueblo Bd. of Cty. Comm'rs, 229 F.3d 1165, 2000 WL 1346347, at *5. Sinfuego argues that, because, in her text, she accuses Pyle of acting illegally when he offered to meet individually with Curry Officers, the December 6, 2012, text message exposes a matter of public concern. See Response at 19-20. Sinfuego did not direct, however, the statement about Pyle to an individual who would address the illegality. The December 6, 2012, text message notified Curry Officers about steps in organizing the union; the information about Pyle's offer is relevant to this union formation. See Memo. ¶ 10, at 4-5 (citing Pyle Email at 1). Logistics for forming a union at Curry Detention address personal workplace concerns, which do not relate to a "matter of political, social, or other concern to the community." Connick, 461 U.S. at 146.

Finally, Sinfuego suggests that her statement about Hughes' comments resulted in her termination. See Response at 23. Complaints about personal experiences with sexual harassment do not rise to public concerns. See David v. City & Cty. of Denver, 101 F.3d 1344, 1356 (10th Cir. 1996). Accord Gerald v. Locksley, 785 F. Supp. 2d at 1129-31 (concluding that EEOC complaint about one incident experienced by employee did not touch a public concern). Accordingly, Sinfuego's statement about the potential sexual harassment does not discuss a public concern.

### C.   SINFUEGO'S ACTIVITIES DID NOT MOTIVATE CURRY COUNTY TO ENGAGE IN ADVERSE EMPLOYMENT ACTIONS.

Even if Sinfuego's activities involved matters of public concern, she must show a genuine issue of fact whether "the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment." Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cty., 587 F.3d at 1236 (internal quotation marks omitted)(quoting Maestas v. Segura, 416 F.3d at 1188 & n.5). Sinfuego argues that Curry County

took adverse actions against her when Curry County changed her duties after Sandoval's appointment as Curry Detention Administrator and when Curry County terminated Sinfuego's employment. <u>See</u> Response at 20-24. The Court concludes that only Sinfuego's termination constitutes an adverse employment action and that a question of fact exists whether Sinfuego's removal from S.O.R.T. is an adverse employment action. The Court, however, further holds that Sinfuego cannot show a genuine factual question whether her actions motivated Curry County to retaliate against her. The Court thus concludes that Sinfuego's claims fail at the <u>Garcetti/Pickering</u> test's step four, and that summary judgment is appropriate for Counts I, II, and III.

<b>1.</b>

> **1. <u>Terminating Sinfuego Constitutes an Adverse Employment Action, and a Genuine Factual Question Exists Whether Removing Sinfuego from S.O.R.T. is an Adverse Employment Action, but Sinfuego has Established No Other Genuine Factual Questions Whether Curry County Engaged in Adverse Employment Actions</u>.**

Sinfuego contends that Curry County retaliated against her by terminating her employment, removing her from S.O.R.T., putting her on the night shift, assigning her to the women's annex, ignoring her seniority, and stripping her of other duties. <u>See</u> Response at 22. Curry County argues that no genuine factual question exists whether any action which Sinfuego suffered short of termination is not an "adverse employment action." Memo. at 20 n.8. Sinfuego does not respond to Curry County's argument; Sinfuego focuses on Curry County's arguments about its motivations. <u>See</u> Response at 20-24. The Court need not decide the Motion on this issue, but the Court will briefly address Curry County's contention. The Court agrees with Curry County that Sinfuego's termination constitutes an adverse employment action, but the Court concludes that Sinfuego

demonstrates a genuine factual question whether her removal from S.O.R.T. constitutes an adverse employment action.[122]

The standard for determining whether an employer subjected an employee to an adverse employment action is the same for retaliation claims under the First Amendment and Title VII. See Hook v. Regents of Univ. of Cal., 394 F. App'x at 353. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (internal quotation marks omitted)(quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 68). In Title VII claims, an adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 64. "'Reassignment of job duties is not automatically actionable.' . . . An adverse employment action is a '*significant* change in employment status, such as a hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits.'" Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 635 (10th Cir. 2012)(emphasis in original)(quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 71; Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007)). See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 ("We construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.'" (quoting Annett v. Univ. of Kan., 371 F.3d at

---

[122]Whether an action is an adverse employment action is a factual question for the jury; the inquiry is not a question of law for the Court. See Baca v. Sklar, 398 F.3d at 1219 (citing Bass v. Richards, 308 F.3d 1081, 1088 (10th Cir. 2002)).

1239)).  In analyzing whether an adverse employment action occurred, the Tenth Circuit takes "a case-by-case approach, examining the 'unique factors relevant to the situation at hand.'"  Dick v. Phone Directories Co., 397 F.3d 1256, 1268 (10th Cir. 2005)(quoting Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004) and citing Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003)).  "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  Daniels v. United Parcel Serv., Inc., 701 F.3d at 635 (internal quotation marks omitted)(quoting Burlington N. and Santa Fe Ry. v. White, 548 U.S. at 71).  The Tenth Circuit "will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action."  Dick v. Phone Directories Co., 397 F.3d at 1268 (internal quotation marks omitted)(quoting Sanchez v. Denver Pub. Sch., 164 F.3d at 532).  "Acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects' may be considered adverse actions, although 'a mere inconvenience or an alteration of job responsibilities will not suffice.'"  Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp. 2d 1136, 1206 (D.N.M. 2013)(Browning, J.)(internal quotation marks and citation omitted)(quoting Annett v. Univ. of Kan., 371 F.3d at 1239).

The Court notes that the termination is an adverse employment action.  Sinfuego's termination, a "firing," constitutes an adverse employment action.  Daniels v. United Parcel Serv., Inc., 701 F.3d at 635 (quoting Piercy v. Maketa, 480 F.3d at 1203).  Curry County does not dispute this conclusion.

When changes in salary, seniority, job classification, or significant changes in responsibilities accompany reassignments and transfers, the reassignments and transfers are

adverse employment actions.[123]  See, e.g., Thompson v. City of Waco, 764 F.3d 500, 505 (5th Cir.

2014)(concluding that a change to job duties such that a detective could act only as an assistant

detective could constitute an adverse employment action); Wheeler v. BNSF Ry., 418 F. App'x

738, 746 (10th Cir. 2011)(unpublished)(concluding that an adverse employment action had not

occurred where the plaintiff desired a job in another city "for personal reasons," and the jobs

involved the same salary, benefits and duties); Nagle v. Vill. of Calumet Park, 554 F.3d 1106,

1116 (7th Cir. 2009)(deeming no adverse employment action where "[n]either the evidence locker,

senior liaison, or strip mall duties involved a change in the terms or conditions of employment nor

has Nagle shown that any of these positions significantly reduced his career prospects."); Wells v.

Colo. Dep't of Transp., 325 F.3d 1205, 1215-16 (10th Cir. 2003)(deeming a transfer an adverse

employment action when the plaintiff's work duties "changed dramatically" and she performed no

project engineering work in the new position); Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217-18

(10th Cir. 2003)(concluding that reassignment to a position requiring less responsibility and skill

was an adverse employment action even though the employee retained her salary, seniority, and

---

[123]In Baca v. Sklar, the Tenth Circuit held that removing an employee from "supervisory responsibilities," "encouraging" his subordinate employees to bypass him to receive supervision from another individual, "reprimanding" the employee "in contravention of university protocol, and filing an OEO charge against [the employee] and then using that charge to demand [his] resignation" constitute adverse employment actions.  398 F.3d at 1220.  In Baca v. Sklar, the Tenth Circuit noted that "we have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII," 398 F.3d at 1220 but, since Baca v. Sklar, the Tenth Circuit has described that an adverse employment action is an action that "would deter a reasonable person from exercising his First Amendment rights."  Hook v. Regents of Univ. of Cal., 394 F. App'x at 353 (quoting Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1238).  According to the Tenth Circuit, "[t]his test is identical to the test which is applied in Title VII retaliation claims."  Hook v. Regents of Univ. of Cal., 394 F. App'x at 353.  The Court decides this summary judgment motion under the standard identical to the Title VII standard.  This standard differs from the test that the Tenth Circuit employed in Baca v. Sklar.

previous job title); <u>McCrary v. Aurora Pub. Sch.</u>, 57 F. App'x 362, 369 (10th Cir. 2003)(unpublished)(deeming a transfer with no change in salary, benefits, or seniority not an adverse employment action, and noting that the plaintiff made "only conclusory allegations about the differences between the" jobs' duties "and the evidence did not establish that the responsibilities of the two jobs were significantly different"); <u>Sanchez v. Denver Pub. Sch.</u>, 164 F.3d 527, 532 (10th Cir. 1998)(concluding that a teacher's transfer to a different school was not an adverse employment action merely because the teacher's commute increased); <u>de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.</u>, 82 F.3d 16, 21 (2d Cir. 1996)(deeming a transfer to a unit with "little opportunity for professional growth" satisfied the prima facie requirement for an adverse employment action); <u>Collins v. Illinois</u>, 830 F.2d 692, 704 (7th Cir. 1987)(concluding that the plaintiff established sufficient evidence to show an adverse employment action where her job transfer resulted in the plaintiff losing her own office, telephone, business cards, and listing in professional publications and her new desk was located such that she appeared to be a receptionist); <u>Benavidez v. Sandia Nat'l Labs.</u>, 212 F. Supp. 3d 1039, 1083-84 (D.N.M. 2016)(Browning, J.)(determining that a plaintiff pled an adverse employment action where she alleged that the employer demoted to a lower pay grade, froze her pay, and reassigned her to different, more strenuous tasks). An inability to obtain a desired shift without a showing of substantial differences between the desired and assigned shift is not adverse employment actions. <u>See</u>, <u>e.g.</u>, <u>Piercy v. Maketa</u>, 480 F.3d at 1203-04 (concluding that inability to obtain desired shifts through shift-bidding was not an adverse employment action, and noting that the employer's "policies that required certain numbers of female and male guards to be available at . . . did not constitute an adverse employment action."); <u>McGowan v. City of Eufala</u>, 472 F.3d 736, 742-43

(10th Cir. 2006)(holding that an inability to obtain a different shift desired for personal reasons, when the shift desired included no pay, benefit, or differences in difficulty level, was not an adverse employment action); Rogers v. Apria Healthcare, Inc., No. 12-CV-2116, 2013 WL 3773838, at *6 (D. Kan. July 17, 2013)(Lungstrum, J.)(determining that an inability to obtain shifts desired for personal reasons, without a showing that the shifts differed in duties or difficulty, was not an adverse employment action). In Hunt v. Central Consolidated School District, the Court noted:

> The Tenth Circuit has held that reassigning an employee from a "cover shift," meaning that she filled in for absences or vacancies during the defendant company's three different shifts, to a permanent night shift, was not an adverse employment action for Title VII purposes, because the plaintiff's "job classification did not change . . . nor was her salary decreased," and she did not "introduce any evidence showing the dispatch duties differed significantly" from her previous position. Daniels v. United Parcel Serv., Inc., 701 F.3d at 636. The Tenth Circuit noted that the plaintiff proved the night shift was a less desirable shift than the day or the twilight shift, but concluded that was not sufficient to find that the reassignment was an adverse employment action. See 701 F.3d at 635-36. In Jones v. Oklahoma City Public Schools,[ 617 F.3d 1273 (10th Cir. 2010),] on the other hand, the Tenth Circuit held that a reassignment from director of curriculum and instruction within a school district to an elementary school principal, along with a "$17,000 decrease in salary" to take place one year following a teacher's reassignment, the "lost professional prestige," and falling to "a lower position in the district's organizational hierarchy," constituted an adverse employment action even though the teacher was not technically demoted. 617 F.3d at 1279-80.

Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp. 2d at 1206-07. In concluding that the plaintiffs in Hunt v. Central Consolidated School District plausibly experienced adverse employment actions, the Court emphasizes the significant changes in the plaintiffs' responsibilities and the plaintiffs' future decreased pay. See 951 F. Supp. 2d at 1207 ("The Plaintiffs' changes in titles, changes in job responsibilities, and the promise that [Central Consolidated School District] would reduce their salaries dramatically, makes plausible that they were subject to an adverse employment action.").

Regarding the 2013 changes to Sinfuego's position, Sinfuego has offered no evidence showing a pay deduction with her shift changes or changes to the duties that she would otherwise be performing. With her transfer to night shifts, assignments to the women's annex, and inability to choose the day shift, Response at 22, Sinfuego may have received "less desirable" assignments, but she has not illustrated that her duties differed significantly from her earlier duties. E.g., Daniels v. United Parcel Serv., Inc., 701 F.3d at 636; Piercy v. Maketa, 480 F.3d at 1203-04; McGowan v. City of Eufala, 472 F.3d at 742-43; Rogers v. Apria Healthcare, Inc., 2013 WL 3773838, at *6. Although Sinfuego alleges that her seniority "was thrown to the window," Sinfuego Depo. Doc. 125-7 at 154:21-22, Sinfuego has provided no description of her job duties and responsibilities or how the night shift differed from the work that she would have performed, and this evidence allows for no reasonable inference that she received a "reassignment with *significantly* different responsibilities." Daniels v. United Parcel Serv., Inc., 701 F.3d at 635(emphasis in original). See Liberty Lobby, 477 U.S. at 255; Hunt v. Cromartie, 526 U.S. at 550-55. Daniels v. United Parcel Service, Inc., Piercy v. Maketa, and McGowan v. City of Eufala, are on point and controlling. For all of these alleged adverse employment actions, Sinfuego, like the plaintiffs in Daniels v. United Parcel Service, Inc., Piercy v. Maketa, McGowan v. City of Eufala, and Rogers v. Apria Healthcare, Inc., has offered evidence showing changes in shifts only, without more, like changes in duties or pay. Sinfuego, thus, has not demonstrated a genuine factual question whether those actions constituted adverse employment action. Sinfuego similarly has not adequately evidenced the "other duties stripped" mentioned in the Response, see Response at 22, to establish genuine factual questions whether those changes constitute adverse employment actions.

Sinfuego's removal from S.O.R.T. differs from the other changes to her responsibilities, because, in removing Sinfuego from S.O.R.T., Curry County changed her job duties. Although Sinfuego has not shown a reduction in pay, see Wheeler v. BNSF Ry., 418 F. App'x at 746; Jones v. Okla. City Pub. Sch., 617 F.3d at 1279-80; Benavidez v. Sandia Nat'l Labs., 212 F. Supp. 3d at 1083-84; Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp. 2d at 1207, she has offered evidence showing that Curry County stopped contacting her for S.O.R.T. duties and for S.O.R.T. training, see Sinfuego Depo. Doc. 125-7 at 157:9-15. The change in Sinfuego's duties after her removal from S.O.R.T. might not be as extreme a duties' change as those in Thompson v. City of Waco; Wells v. Colorado Department of Transportation; Stinnett v. Safeway, Inc.; Collins v. State of Illinois, but Sinfuego was, like the plaintiffs in those cases, deprived the opportunity to perform tasks in which she had previously engaged. The Court concludes that this showing is sufficient to establish a genuine question of fact whether Sinfuego's removal from S.O.R.T. tasks constitutes an adverse employment action. Accordingly, the Court concludes that Sinfuego has demonstrated a genuine factual question whether Sinfuego suffered an adverse employment action when Curry County removed her from involvement with S.O.R.T. but not when Curry County undertook other actions short of termination.

### 2. Sinfuego's Activities Did Not Motivate Curry County's Actions.

Even if all of Curry County's actions constituted adverse employment actions, Sinfuego has not demonstrated a genuine issue of fact whether Curry County acted from an improper motive, as required by the Garcetti/Pickering test's step four. As noted in sub-part B of the Analysis above, Sinfuego contends that Curry County retaliated against her for: (i) her comments on Curry Detention's conditions; (ii) her union-related activities, i.e., her involvement in the December 3,

2012, meeting with Pyle, and the December 6, 2012, text message about a union and Pyle's invitation to meet individually with Curry Officers;[124] and (iii) her November 15, 2013, statement about Hughes' comments. See Response at 17-24. Curry County explains Sinfuego's actions did not motivate it to terminate her employment. See Memo. at 14. The Court concludes that Sinfuego has not demonstrated a genuine issue of fact whether Sinfuego's activities motivated Curry County's actions.

First, Sinfuego contends that she demonstrates a genuine issue of fact about Curry County retaliating for her complaints about Curry Detention's conditions, because she spoke with Pyle at the December 3, 2012, meeting, an anonymous letter was sent, and she signed the Petition from Curry Officers to Sandoval. See Response at 21-22. The Court agrees with Curry County that "[t]he causation threshold that all retaliation plaintiffs must cross at this step is to show that the employer knew about the plaintiff's protected activity before taking the adverse employment action." Dillon v. Twin Peaks Charter Acad., No. CIVA 99-cv-02462-CMA-BNB, 2009 WL 2982008, at *2 (D. Colo. Sept. 11, 2009)(Arguello, J.)(citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1235 (10th Cir. 2000)). The Court is unconvinced that Sinfuego has demonstrated such a genuine issue of fact, because Sinfuego has no evidence that Pyle or Sandoval knew about her complaints. Sinfuego never spoke with Sandoval about safety and sanitation issues at Curry Detention, and no sergeants with whom Sinfuego discussed such concerns passed the information to Pyle or Sandoval. See Memo. ¶ 39, at 15. Sinfuego has not provided evidence that she sent an anonymous letter, see Sinfuego Depo. 122-1 at 90:15-24, and that the letter was

_____

[124]For the public-concern analysis, the Court listed the December 3, 2012, meeting and December 6, 2012, text individually. However, for the causation requirement's purposes, the Court concludes that clarity requires discussing these events jointly as union-related activities.

anonymous means that Pyle or Sandoval were unaware who was complaining about Curry Detention's conditions. The Petition from the Curry Officers does not discuss "poor conditions" at Curry Detention, Response at 21; many other officers signed the Petition from Curry Officers to Sandoval, <u>see</u> Petition from Curry Officers to Sandoval at 1-2, and Sinfuego has no evidence connecting her signature on the Petition from Curry Officers to Sandoval to Curry County's actions, such as evidence that Curry County opposed the Petition from Curry Officers to Sandoval, <u>see</u> <u>Maestas v. Segura</u>, 416 F.3d at 1189, disfavored such complaints, harassed those who signed such documents, or mentioned the Petition from Curry Officers to Sandoval to Sinfuego.[125]

Further, Sinfuego has no evidence to show that Pyle, with whom she had the December 3, 2012, meeting, was involved in determining shift assignments or her role in S.O.R.T., <u>see</u> Memo. ¶ 19, at 7-8, and Sinfuego's termination on January 7, 2014, occurred more than one year after the December 3, 2012, meeting, <u>see</u> Memo. ¶ 10, at 4-5; Response ¶ 8, at 5; Memo. ¶ 32, at 11-12 "[E]vidence such as a long delay between the employee's speech and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link." <u>Maestas v. Segura</u>, 416 F.3d at 1189 (internal citations omitted)(citing <u>McGuire v. City of Springfield</u>, 280 F.3d 794, 796 (7th Cir. 2002); <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 33 (2d Cir. 1998)). <u>See</u> <u>Stover v. Martinez</u>, 382 F.3d 1064, 1074 (10th Cir. 2004)("[T]he lapse of over two years between her participation in the Dellera suit and the alleged adverse actions of which she complains is too attenuated to support an inference of causation."); <u>Robbins v. Jefferson Cty. Sch. Dist.</u>, 186 F.3d 1253, 1258-59 (10th Cir. 1999)(finding, in the Title VII context, that a nine-

---

[125]Although Sandoval knew about Sinfuego's signature on this Petition from the Curry Officers to Administrator Sandoval, as discussed in sub-part B, the contents of the Petition from the Curry Officers to Administrator Sandoval did not address a public concern.

month delay was too remote to establish prima facie case (citing <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d at 1395)); <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997)(finding, in a Title VII case, that a three-month period by itself was insufficient to establish a causal connection); <u>Serrano v. Veneman</u>, 410 F. Supp. 2d 1049, 1067 (D.N.M. 2005)(Browning, J.)(concluding, in a Title VII case, that a seven-month break between the protected activity and adverse action was insufficient to establish prima facie case).

Sinfuego has not proffered evidence to overcome the weak link between the 2012, events and the 2014, termination and strengthen her claim. Sinfuego cites heavily to the Spear Notes. <u>See</u> Response at 21-22. This report, which contains Curry Detention employees' out-of-court complaints about Curry Detention, is inadmissible hearsay, because Sinfuego seeks to introduce it for the truth of the statements the employees make about Curry Detention's leadership, such as the Sandoval's relationship to Pyle. <u>See</u> Fed. R. Evid. 801(c); Response at 21. Sinfuego also speculates as to Morrison's and Farkas' transfers from the main Curry Detention facility, <u>see</u> Response at 22, but she cannot produce more than speculation for the reasons behind their transfers. Even if Curry County transferred Morrison and Farkas because they were "associated with Mr. Billy," Response at 20, such an assertion does not bolster Sinfuego's unrelated contention that Curry County acted against her because she complained about Curry Detention's conditions, and it particularly does not do so when she has no other evidence to support her allegation. Further, Sinfuego cites Sandoval's awareness of the conditions at Curry Detention, and of Borjas' and Benavidez' sexual conduct. <u>See</u> Response at 22. Sinfuego presumably references such evidence to suggest that Curry County's alleged reasons for terminating Sinfuego are pretextual and that other concerns motivated Curry County's actions. "When an employer disciplines an employee

who has engaged in protected activity more harshly than it treats similarly situated employees who commit comparable or more serious offenses, an inference of improper motive may be drawn." Cillo v. City of Greenwood Vill., 739 F.3d at 462 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1232). Sinfuego has no evidence that Curry County hired Benavidez after learning about the pornographic materials, see Sandoval Depo. Doc. at 59:25, or what action Curry County took toward Borjas, see Sandoval Depo. Doc. 125-12 at 56:8-57:9. These assertions, therefore, do not further Sinfuego's argument. Further, that Sandoval knew about Curry Detention's poor conditions does not mean that Sandoval knew that Sinfuego had complained about the conditions. Sinfuego has not demonstrated that a material issue of fact exists whether her complaints about Curry Detention's conditions led Curry County to terminate her employment.

Second, Sinfuego argues that her employment termination was in retaliation for her union-related activities. See Response at 20-21. Sinfuego has no evidence that Sandoval had knowledge of any of Sinfuego's union-related activities. See Dillon v. Twin Peaks Charter Acad., 2009 WL 2982008, at *2 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1235). Sinfuego did not at any time discuss her union activities with Sandoval, and Sandoval was not aware of the activities until this lawsuit. See Memo. ¶ 19, at 7 (citing Sinfuego Depo. Doc. 122-2 at 134:23-135:5; Sandoval Depo. Doc. 122-2 at 16:14-24). Sinfuego has also not established that Pyle, with whom she had the December 3, 2012, meeting, was involved in determining shift assignments or her role in S.O.R.T. and, given the year between Sinfuego's union-related activities and her termination, the causal connection between those events is weak. Maestas v. Segura, 416 F.3d at 1189 (internal citations omitted)(citing McGuire v. City of Springfield, 280 F.3d at 796; Gubitosi v. Kapica, 154 F.3d at 33).

Sinfuego attempts to overcome this lack of evidence by citing again the employees' statements in the Spear Notes about Sandoval and Pyle, Billy's speculation that Curry County retaliated against Sinfuego, and Morrison's and Farkas' transfers. See Response at 20-21. The evidence from the Spear Notes is inadmissible for the truth of the matter asserted, which is the purpose for which Sinfuego offers the evidence. See Fed. R. Evid. 801(c). Billy has no basis in personal knowledge for his statement; he left Curry Detention before Sinfuego's termination. See Deposition of Gerry Billy at 173:1-25; (taken April 29, 2018), filed July 13, 2018 (Doc. 127-1); id. at 174:1-177:8 (Billy Depo. Doc. 127-1). For the reasons discussed in the paragraph above, Morrison's and Farkas' transfers do not aid Sinfuego as much as she hopes; their unrelated and non-union-related transfers are not evidence that Curry County terminated Sinfuego for her union activities.

Sinfuego tries to argue that her removal from S.O.R.T., her shift to night duties, her disrespected seniority, and her other changes in responsibilities indicate that Curry County disfavored her, so the time between the 2012, text, and the 2014, termination is not as significant as Curry County would have it. See Response at 22. Sinfuego cites Cillo v. City of Greenwood Village, 739 F.3d at 465, for the proposition that moving an employee between units "could be construed as disfavored treatment," Response at 22, and seems to suggest that such disfavored treatment implies an improper motive. Sinfuego's reliance on this argument is misplaced, because the argument does not overcome Pyle's lack of involvement in changing Sinfuego's duties and Sandoval's lack of knowledge about Sinfuego's activities. Sinfuego, therefore, has presented no evidence establishing a genuine factual question whether Curry County terminated her for her allegedly protected union activities.

Third, Sinfuego alleges that Curry County retaliated against her for reporting Hughes' sexual comment. Sinfuego has not demonstrated a genuine issue of fact regarding this question. Sinfuego supports this contention with Billy's speculation whether Curry County retaliated against her for collective bargaining, see Response at 23 (citing Billy Depo. Doc. 185-11 at 169:7-171:8). Such evidence is not only speculation, because Billy has no personal knowledge of Curry County's motivations for acting against Sinfuego, see Billy Depo. Doc. 127-1 at 173:1-25; id. at 174:1-177:8, it also does not support that Curry County terminated Sinfuego for reporting Hughes' sexual conduct. Sinfuego also cites Sandoval's answers to hypothetical situations involving sexual conduct of which Sinfuego has no evidence whether Sandoval was aware. See Response at 23 (citing Sandoval Depo. Doc. 125-12 at 20:20-23; id. at 21:1-4). By citing Sandoval Deposition statements about crude language heard at Curry Detention, and Borjas' and Benavidez' sexual conduct, see Response at 23 (citing Sandoval Depo. Doc. 125-12 at 53:21-25; id. at 56:2-7; id. at 59:10-25), Sinfuego again suggests that Curry County treated her differently from other employees, which implies an improper motive, see Cillo v. City of Greenwood Vill., 739 F.3d at 462 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1232). The record does not show that Curry County hired Benavidez after learning about the pornographic materials in his locker, see Sandoval Depo. Doc. at 59:25, or the actions that Curry County took against Borjas after learning about his sexual relationship, see Sandoval Depo. Doc. 125-12 at 56:8-57:9. Comparing Sinfuego's termination to the actions that Curry County took against Borjas and Benavidez, thus, does not show whether Curry County treated Sinfuego differently and that factors other than Sinfuego's sexual conduct motivated Curry County's actions. Sinfuego also has not provided sufficient evidence demonstrating how or whether Curry County reacted to other instances of

sexual conduct or crude language, or any evidence linking her statement about Hughes' comments to her termination.  Sinfuego looks to her recounting of the events from 2012, and 2013, before her statement about Hughes' sexual comments, see Response at 23 (citing Plaintiff Amanda Sinfuego's Answers to "Defendant Curry County's First Set of Interrogatories and Requests for Production to Plaintiff Amanda Sinfuego" at 14-15 (dated November 18, 2016), filed June 27, 2018 (Doc. 125-13); her own speculation, see Response at 23 (citing Sinfuego Depo. Doc. 125-12 at 156:9-16); and the Spear Notes, see Response at 23 (citing Spear Notes at 135-48).  The Spear Notes are inadmissible for the purposes for which Sinfuego seeks to introduce them -- the truth of the employees' statements about Sandoval and Pyle, see Fed. R. Evid. 801(c); Sinfuego's speculations are only that -- speculation -- and not evidence based on personal knowledge; and Sinfuego must put forth more evidence than her allegations to show a genuine issue of material fact.

Although Sinfuego generally divides her Response section on causation into paragraphs on Sinfuego's complaints about Curry Detention's conditions, union activities, and sexual harassment statement, the various theories' evidence overlaps.  See Response at 20-23.  No matter, however, how the evidence is organized, it does not show a genuine dispute of material fact.  Sinfuego has not pointed to evidence that shows Curry County treating her differently and acted from improper motivations.

Even when viewed in the light most favorable to Sinfuego, Sinfuego does not establish a causation element for the adverse employment actions that Curry County took.  It is Sinfuego's burden under the Garcetti/Pickering test's step four to show that Curry County engaged in

retaliation through the adverse employment decisions.  See Brammer-Hoelter, 492 F.3d at 1207.

Sinfuego has not met her burden to this point.

### D.  CURRY COUNTY TERMINATED SINFUEGO'S EMPLOYMENT, BECAUSE SHE ENGAGED IN INAPPROPRIATE SEX-ORIENTED ACTIONS.

At the Garcetti/Pickering test's step five, the Court determines whether the defendant would have reached the same employment decision in the absence of the protected conduct.  See Dixon v. Kirkpatrick, 553 F.3d 1294, 1302 (10th Cir. 2009).  At this stage, the burden of proof shifts from the plaintiff to the movant.  See Brammer-Hoelter v. Twin Peaks Charter, Acad., 492 F.3d at 1203.  The movant must show by a preponderance of the evidence that it would have reached the same decision as to the employment termination even in the absence of the protected conduct.  See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977).  Curry County asserts that Sinfuego's termination resulted from her engaging in inappropriate sexual activity and, thus, her violating Curry County sexual harassment policy.  See Memo. at 23-25.  The Court concludes that Curry County has demonstrated that no genuine issue of fact exists whether it would have reached the same decision as to Sinfuego's employment termination even without Sinfuego's speech, and thus, summary judgment for Counts I, II, and III is appropriate at this stage.

In Sandoval's December 17, 2013, Letter of Intent to Terminate, Sandoval states that she recommends terminating Sinfuego, and cites that Sinfuego acknowledges that she violated the Curry County sexual harassment policy.  See Memo. ¶ 27, at 10.  At the pre-determination hearing on December 30, 2013, Sinfuego admitted to engaging in a sexually charged discussion with her coworker on November 13, 2013, and that she sent Snapchat images featuring crude drawings to her coworkers during the "Toxic Talk" training event.  Memo. ¶¶ 29-30, at 11 (quoting Pre-

Determination Hearing at 10:14-21 and citing Sinfuego Depo. Doc. 122-2 at 234:6-235:23); id. ¶¶ 29-30, at 11 (quoting Pre-Determination Hearing at 15:9-12 and citing Sinfuego Depo. Doc. 122-2 at 235:24-237:24). Further, Sinfuego admitted at the pre-determination hearing that these actions were inappropriate, but did not acknowledge that they were violative of the Curry County sexual harassment policy. See Memo. ¶¶ 29-30, at 11 (citing Pre-Determination Hearing at 10:22-24; id. at 16:15-16); Response ¶ 21(i) (citing Sinfuego Depo. Doc. 125-7 at 57:20-25). When Pyle terminated Sinfuego's employment on January 7, 2014, Pyle concluded that Sinfuego had violated several sections of the Curry County Personnel Policy #10-03, including the section pertaining to violating the Curry County Workplace Harassment Policy, i.e., Curry County sexual harassment policy. See Memo. ¶ 32, at 12 (citing Letter from Lance Pyle to Amanda Sinfuego at 3-4). A posttermination hearing was held on February 19, 2016, and the hearing officer affirmed Sinfuego's termination and concluded that "ample basis exists for affirmance of the termination of Mrs. Sinfuego's employment with the County," because of Sinfuego's admitted infractions while on duty. See Memo. ¶ 35, at 13 (citing Findings of Fact and Conclusions of Law at 5). Sinfuego appealed this decision, and the Ninth Judicial District of the State of New Mexico upheld the termination, concluding that "[t]he decision was based on substantial evidence." Sinfuego v. Bd. of Cty. Comm'rs for Curry Cty., N.M., D-905-CV-206-112, Decision and Order on Writ of Certiorari at 5.

Sinfuego argues that her actions do not violate the Curry County sexual harassment policy. See Response ¶ 21, at 11. Regarding the workplace discussion on November 13, 2013, Sinfuego argues that the conversation "did not interfere with anyone's ability to do their jobs." Response ¶ 1, at 26. As to the Snapchat images that Sinfuego sent her coworkers, Sinfuego characterizes

them as crude humor that did not offend or interfere with job performances.  See Response ¶ 2, at

26.  The Tenth Circuit has heard similar arguments in the past and has summarily rejected them.

See Trant v. Oklahoma, 754 F.3d 1158 (10th Cir. 2014).  In Trant v. Oklahoma, the plaintiff had

his employment terminated, and brought suit against the employer, alleging numerous claims

regarding the termination, including the claim that his employer retaliated against him, in violation

of his First Amendment rights.  See 754 F.3d 1158 (10th Cir. 2014).  The Tenth Circuit employed

the Garcetti/Pickering test and affirmed the District Court's summary judgment award for the

defendant, holding that the employer would have fired the plaintiff regardless his protected speech,

because of the allegations that he engaged in sexual harassment.  See 754 F.3d at 1167.  Similar to

Sinfuego, the plaintiff in Trant v. Oklahoma acknowledged the behavior, but disputed that the

actions amount to sexual harassment.  See 754 F.3d at 1167.  The Tenth Circuit held:

> The board was justified in firing Trant for his misconduct even if it did not result
> in an actionable sexual harassment claim. . . . Even though there may not have
> been an actionable claim of sexual harassment, there was an interest in eliminating
> the appearance of impropriety.  Because "the lawful reason alone would have
> sufficed to justify the firing,"  Trant cannot succeed on his claim.

754 F.3d at 1168 (quoting McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 359 (1995)).

Similarly, it is reasonable for Curry County to have an interest in eliminating an appearance of

impropriety, even if Sinfuego's contention that her actions do not violate Curry County sexual

harassment policy is taken to be true.  In the present matter, the hearing officer determined Curry

County had "ample basis" for Sinfuego's termination, and the reviewing court affirmed this

determination. Memo. ¶ 35, at 13 (citing Findings of Fact and Conclusions of Law at 5); Sinfuego

v. Bd. of Cty. Comm'rs for Curry Cty., D-905-CV-206-112, Decision and Order on Writ of

Certiorari at 5.  "Summary judgment is appropriate on the fifth step when any reasonable jury

would [find] that [the plaintiff] would have been terminated even absent any desire on the Defendants' part to punish him in retaliation for his allegedly protected speech." Trant v. Oklahoma, 754 F.3d at 1167 (internal citations omitted and second alteration maintained from original).

Sinfuego tries to demonstrate a genuine issue of fact by explaining that Curry County treated differently other employees who engaged in sexual conduct. See Response at 26-28. Sinfuego, however, does not proffer admissible evidence to support these contentions, and, even if she offers such evidence, she does not show that Pyle or Sandoval were aware of these activities. To support her arguments, Sinfuego relies on the Spear Notes for the truth of employees' statements about sexual conduct. See Response at 27. Such evidence is inadmissible hearsay, and Sinfuego has not presented an admissible alternative or a non-hearsay purpose. See Fed. R. Evid. 801(c). Sinfuego seeks to introduce the Spear Notes for the employees' allegations against Pyle and Sandoval's truth. Sinfuego also cites assertions that she made in the Sinfuego Deposition about her coworkers' conduct; according to Sinfuego, Hughes came to work intoxicated, grabbed a female officer, and swore at Sinfuego and co-workers, and, Sinfuego argues, a "female officer was caught performing fellatio on another officer in a pod booth were [sic] inmates can see them." Response ¶ 27(vi), at 14-15 (citing Sinfuego Depo. Doc. 125-7 at 261:24-25; id. at 262:7-14). Further, Sinfuego alleges that Borjas stalked Chavez. See Response ¶ 27(vi), at 14 (citing Sinfuego Depo. Doc. 125-7 at 263:4-6). Allegedly, Borjas, and others, came to work intoxicated, and Curry Officer Banda had intimate relations with an inmate. See Response ¶ 27(vi), at 14-15 (citing Sinfuego Depo. Doc. 125-7 at 265:5-18). Further, Sinfuego contends that Curry County did not terminate a booking officer who had sexual relations with an inmate. See Response

¶ 27(viii), at 15 (citing Sinfuego Depo. Doc. 125-7 at 267:8-12).  The Court cannot determine from where Sinfuego learned all such information.  Sinfuego may have personal knowledge about some such events, like Curry Officers intoxicated at Curry Detention, but the Court suspects that Sinfuego draws other assertions from inadmissible hearsay.  See Fed. R. Evid. 801(c).  Sinfuego acknowledges that she lacks personal knowledge of all the alleged events.   At the Sinfuego Deposition, Sinfuego admitted that she does know personally that a "female officer was caught performing fellatio on another officer," Response at 27; rather, Sinfuego heard about the event through coworkers.  See Sinfuego Depo. Doc. 125-7 at 262:15-21.  To support the assertion about the inmate's relationship with Banda, Sinfuego cites letters from the inmate.  See Sinfuego Depo. Doc. 125-7 at 265:22-24.  As Sinfuego relies on third-parties' out-of-court statements to support her assertions' truths, the statements are inadmissible hearsay.  See Fed. R. Evid. 801(c).  Even if Sinfuego could introduce the evidence, Sinfuego has not shown that Pyle or Sandoval were aware of these sexual activities.  See Sinfuego Depo. Doc. § 125-7 at 267:2-4; id. at 267:13-22.  Sinfuego cannot show that Curry County hired Benavidez knowing about his sexual conduct.  See Sandoval Depo. Doc. at 59:25.  Although Sandoval knew that Borjas had a relationship with an inmate, see Response ¶ 27(xi), at 15 (citing Sandoval. Depo. Doc. 125-12 at 56:2-7), Sinfuego has not established what actions or lack of actions Curry County took after an investigation into the relationship, see Sandoval Depo. Doc. 125-12 at 56:8-57:9.  Further, Curry County terminated Hughes' employment.  See Memo. ¶ 28, at 10-11 (citing Termination of Probationary Employee at 1; Response ¶ 1, at 1.  Accordingly, the Court is unconvinced that Sinfuego, through these assertions, has established a genuine issue of fact whether Curry County would have terminated Sinfuego's employment absent a desire to retaliate against her for union-related activities.  The

Court, thus, concludes that summary judgment is appropriate at this fifth Garcetti/Pickering test step.

## II.      CURRY COUNTY DID NOT HAVE A POLICY OR CUSTOM OF RETALIATING AGAINST EMPLOYEES FOR UNION-RELATED ACTIVITY.

Were Sinfuego able to establish a genuine factual question whether retaliation motivated her termination, she would also need to demonstrate a genuine issue of fact whether Curry County had a policy or custom of retaliation to survive summary judgment on her First Amendment retaliation claims. To establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged. See Graves v. Thomas, 450 F.3d at 1218. The Court concludes that Sinfuego has not demonstrated a genuine factual question whether Curry County had or has such a policy or custom.

As noted above, Sinfuego does not demonstrate a genuine issue of material fact whether an officer committed an underlying constitutional violation. Without an individual employee's or agent of Curry County's constitutional violation, Curry County could not have violated the Constitution. See, e.g., Graves v. Thomas, 450 F.3d at 1218. If Sinfuego had established a genuine factual question regarding this fact, she would then need to demonstrate that there exists a genuine factual question whether Curry County had a municipal custom or policy of retaliation. To establish an informal policy or custom, the plaintiff must show that the conduct was "widespread" -- i.e., that it involved a "series of decisions." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). In her Response, Sinfuego alleges: "[Curry] County had a policy and custom of retaliating against individuals involved in collateral bargaining or were perceived to be in support of collective bargaining." Response at 28. Sinfuego then describes what she perceived as a "de

facto" policy. Response at 29. To support her assertion, Sinfuego references the jury's finding in

<u>Billy v. Curry County Board of Commissioners</u> that Billy's "refusal to discipline [Sinfuego] [was]

a motivating factor in the decision to not renew [his] contract" and that two other employees were

transitioned to different position after Billy's departure. Response at 28 (alteration in

original)(quoting <u>Billy v. Curry Cty. Bd. of Cty. Comm'rs</u>, D-905-CV-2014-00420, Special

Verdict at 1).

Sinfuego also cites Morrison's and Farkas' transfers from the Curry Detention's main

detention facility, and Curry Detention's leaders' reputation for vengefulness. <u>See</u> Response at

28. These assertions do not demonstrate a genuine factual question whether Curry County had a

policy encouraging retaliation. In arguing about the reputation and vengefulness of Curry

Detention's leaders, Sinfuego relies on the truth of the employees' statements in the Spear Notes.

Such evidence is inadmissible hearsay, and Sinfuego has not demonstrated how she would

introduce the evidence in an admissible form. <u>See</u> Fed. R. Evid. 801(c). Sinfuego's contentions

regarding the two other Curry officers, Morrison and Farkas, are conclusory at best, as she only

can guess to Sandoval's motivation in assigning them to different positions. That Billy's refusal

to discipline Sinfuego motivated Curry County to terminate his employment is not sufficient, on

its own, to establish that there was a widespread practice of endorsing retaliation. Billy's

employment status, plus Sinfuego's employment termination, is not sufficient for a reasonable jury

to conclude that Curry County has a policy that rises to the level of "persistent and widespread,"

which the Tenth Circuit has mandated for plaintiffs to establish a customary practice of retaliation.

<u>Lankford v. City of Hobart</u>, 73 F.3d at 286. The Court, therefore, concludes that Sinfuego has not

established a genuine factual question whether Curry County has a policy or custom for retaliation against employees engaged in union-related activity.

### III.     AFTER THE COURT DISMISSES SINFUEGO'S FEDERAL CLAIMS, ONLY SINFUEGO'S STATE LAW, NMWPA CLAIM REMAINS, AND SO THE COURT WILL DISMISS THE NMPWA CLAIM WITHOUT PREJUDICE.

Sinfuego's Count IV alleges that Curry County violated the NMWPA.  See Complaint ¶¶ 53-60, at 13.  United States District Courts are courts of limited jurisdiction, but they may exercise supplemental jurisdiction.  See 28 U.S.C. 1367.  Because Court has dismissed the federal claims, the Court declines to exercise its supplemental jurisdiction over the remaining state law claim and will dismiss Count IV without prejudice.

The Court will not exercise supplemental jurisdiction over the remaining state-law claim. The supplemental jurisdiction statute enumerates four factors that the Court should consider in determining whether to exercise supplemental jurisdiction:

    (1)        the claim raises a novel or complex issue of State law,

    (2)        the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)        the district court has dismissed all claims over which it has original jurisdiction, or

    (4)        in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Tenth Circuit has held that district courts should presumptively decline jurisdiction over state claims when federal claims no longer remain in a case: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, 660 F.3d at 1248.  The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise

supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction." Muller v. Culbertson, 408 F. App'x at 197 (internal quotation marks omitted).

Here, the Court has dismissed all of the federal claims. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. See Koch v. City of Del City, 660 F.3d at 1248 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). In the interest of "comity and to promote justice between the parties," the Court will dismiss Sinfuego's Count IV without prejudice, and she may pursue the claim in the appropriate state venue that may provide a "surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. at 726.

**IT IS ORDERED** that: (i) Defendant Curry County's Motion for Summary Judgment, filed June 12, 2018 (Doc. 121), is granted. Plaintiff Amanda Sinfuego's federal claims against Defendant Curry County Board of County Commissioners are dismissed with prejudice, and Sinfuego's remaining state-law claim is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Eric D. Dixon
Attorney & Counselor at Law, P.A.
Portales, New Mexico

    *Attorney for the Plaintiff*

Quentin Smith
Eleanor C. Werenko
Sheehan & Sheehan, P.A.
Albuquerque, New Mexico

--and--

Bryan D. Evans
Barbara Evans
Carla A. Neusch Williams
Atwood, Malone, Turner & Sabin, P.A.
Roswell, New Mexico

> *Attorneys for the Defendants Curry County Board of Commissioners, Lance Pyle, and Tori Sandoval*

Dennis K. Wallin
Brandon Huss
Wallin, Huss & Associates, LLC
Moriarty, New Mexico

> *Attorneys for the Defendant Lance Pyle*

P. Scott Eaton
James P. Barrett
Eaton Law Office, P.C.
Albuquerque, New Mexico

> *Attorneys for the Defendant Tori Sandoval*